1  HOGAN LOVELLS US LLP
   Robert B. Hawk (Bar No. 118054)
2  Stacy R. Hovan (Bar No. 271485)
   4085 Campbell Avenue, Suite 100
3  Menlo Park, California  94025
   Telephone:      (650) 463-4000
4  Facsimile:      (650) 463-4199
   robert.hawk@hoganlovells.com
5  stacy.hovan@hoganlovells.com

6  Attorneys for Defendant
   FERRARA CANDY CO.
7

8

9                    UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                    SAN FRANCISCO DIVISION

12

13  THOMAS IGLESIAS, individually and on       Case No.  17-cv-849-VC
    behalf of all others similarly situated,
14                                              **DEFENDANT FERRARA CANDY CO.'S**
                         Plaintiff,             **NOTICE OF MOTION AND MOTION TO**
15                                              **DISMISS PLAINTIFF'S FIRST AMENDED**
           v.                                   **COMPLAINT**
16
    FERRARA CANDY CO. and                       The Honorable Vince Chhabria
17  DOES 1 through 10, inclusive,
                                                Date: July 27, 2017
18                       Defendants.            Time: 10:00 a.m.
                                                Courtroom:  4, 17th Floor
19

20

21

22

23

24

25

26

27

28

1   TO THE COURT AND ALL PARTIES OF RECORD:

2   **PLEASE TAKE NOTICE THAT** on July 27, 2017, at 10:00 a.m., or as soon thereafter

3   as this matter may be heard, before the Honorable Vince Chhabria in Courtroom 4 of this Court,

4   located on the 17th Floor of the Philip Burton Federal Building, 450 Golden Gate, San Francisco,

5   California 94102, Defendant Ferrara Candy Co. will, and hereby does, move the Court for an

6   order granting its Motion to Dismiss.  This Motion is made based on Federal Rules of Civil

7   Procedure 8 and 12(b)(6) on the grounds that Plaintiffs have failed to state a claim and that the

8   Court should decline to adjudicate the case under the Primary Jurisdiction Doctrine.  This Motion

9   also will be based upon this Notice; the accompanying Memorandum of Points and Authorities;

10  the complete files and records of this action; and such other matters and arguments as may come

11  before the Court, including those raised in connection with reply briefing and oral argument

12  relating to this Motion.

13  Dated:  May 24, 2017                              HOGAN LOVELLS US LLP

14                                                    By: /s/ Robert B. Hawk

15                                                        Robert B. Hawk
                                                          *Attorneys for Defendant*
16                                                        Ferrara Candy Co.

DEF. FERRARA'S MOTION TO DISMISS
Case No. 4:17-CV-00849-VC

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................1

II.    BACKGROUND ................................................................3

    A.    The Food and Drug Administration Regulates Slack-Fill.......................3

    B.    The Complaint Lacks Factual Allegations to Support Claims Concerning Deceptive or Unlawful Conduct. ............................4

III.    ARGUMENT ................................................................6

    A.    Plaintiff's Claims Should Be Dismissed Under the Primary Jurisdiction Doctrine. ............................6

    B.    The Complaint Does Not Comply With *Twombly* and *Iqbal* Pleading Standards. ............................8

        1.    Plaintiff Fails to Adequately Allege That Ferrara Packaging Contained Nonfunctional Slack-Fill. ............................9

        2.    Plaintiff Fails to Satisfy the "Reasonable Consumer" Standard for Consumer Protection Claims......................15

IV.    CONCLUSION ................................................................20

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page**

3

**Cases**

4

*Ashcroft v. Iqbal*,
5
   556 U.S. 662 (2009) ........................................................................................................2

6

*Astiana v. Hain Celestial Grp., Inc.*,
7
   783 F.3d 753 (9th Cir. 2015) ..........................................................................................6

8

*Bautista v. Cytosport, Inc.*,
   No. 15-CV-9081 (CS), 2016 WL 7192109 (S.D.N.Y. Dec. 12, 2016) .......................14

9

*Bell Atlantic Corp. v. Twombly*,
10
   550 U.S. 544 (2007) ........................................................................................................2

11

*Bobo v. Optimum Nutrition, Inc.*,
   No. 14CV2408 BEN (KSC), 2015 WL 13102417 (S.D. Cal. Sept. 11, 2015) ..........18
12

13

*Bratton v. Hershey Co.*,
   No. 2:16-CV-4322-C-NKL, 2017 WL 2126864 (W.D. Mo. May 16, 2017)..............15

14

*Bush v. Mondelez Int'l, Inc.*,
15
   No. 16-cv-2460-RS, 2016 WL 5886886 (N.D. Cal. Oct. 7, 2016) ..................14, 16, 17, 18

16

*Bush v. Mondelez Int'l, Inc.*,
   No. 16-cv-02460-RS, 2016 WL 7324990 (N.D. Cal. Dec. 16, 2016) ....................3, 11
17

18

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
   No. C 10-01044 JSW, 2011 WL 159380 (N.D. Cal. Jan. 10, 2011)...........................18

19

*Clark v. Time Warner Cable*,
20
   523 F.3d 1110 (9th Cir. 2008).........................................................................................6

21

*Cullen v. Netflix, Inc.*,
   No. 5:11-CV-01199-EJD, 2013 WL 140103 (N.D. Cal. Jan. 10, 2013)....................19

22

*Cutler v. Hayes*,
23
   818 F.2d 879 (D.C. Cir. 1987) ........................................................................................8

24

*Dvora v. Gen. Mills, Inc.*,
25
   2011 F. Supp. 2d 1897349 (C.D. Cal. May 16, 2011) ...............................................18

26

*Ebner v. Fresh, Inc.*,
   No. SACV 13-00477 JVS (RNBX),
27
   2013 WL 9760035 (C.D. Cal. Sept. 11, 2013).........................................................16

28

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016)......................................................................3, 16, 17, 18

*Far East Conf. v. United States*,
   342 U.S. 570 (1952) .....................................................................................................5

*Fermin v. Pfizer Inc.*,
   No. 15 CV 2133 (SJ) (ST), 2016 WL 6208291 (E.D.N.Y. Oct. 18, 2016)........................14, 18

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995)..........................................................................15, 16, 18

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008)......................................................................................9

*Heckler v. Chaney*,
   470 U.S. 821 (1985)......................................................................................................8

*Heller v. Coca-Cola Co.*,
   230 A.D.2d 768 (N.Y. 1996).........................................................................................7

*Hemy v. Perdue Farms, Inc.*,
   No. 11-888 (FLW), 2011 WL 6002463 (D.N.J. Nov. 30, 2011) ...................................19

*Kane v. Chobani, LLC*,
   645 F. App'x 593 (9th Cir. 2016) ................................................................................6

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (2003)........................................................................................15

*Lever Bros. Co. v. Mauer*,
   712 F. Supp. 645 (S.D. Ohio 1989) .............................................................................6

*Manchouck v. Mondelez Int'l Inc.*,
   No. C 13-02148 WHA, 2013 WL 5400285 (N.D. Cal. Sept. 26, 2013)...................18

*Manchouck v. Mondelez Int'l Inc.*,
   603 F. App'x 632 (9th Cir. 2015) ...............................................................................18

*McKinnis v. Kellogg USA*,
   No. CV 07-2611 ABC, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007)..................15, 18

*McKinniss v. Gen. Mills, Inc.*,
   No. CV 07-2521 GAF, 2007 WL 4762172 (C.D. Cal. Sept. 18, 2007).......................18

*Moss v. U.S. Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009)........................................................................................8

*Nader v. Allegheny Airlines*,
   426 U.S. 290 (1976)......................................................................................................7

*Oklevueha Native Am. Church of Haw., Inc. v. Holder*,
  676 F.3d 829 (9th Cir. 2012)...............................................................................8

*Rael v. Dooney & Bourke, Inc.*,
  No. 16CV0371 JM(DHB), 2016 WL 3952219 (S.D. Cal. July 22, 2016)................................12

*Red v. Kraft Foods, Inc.*,
  No. CV 10-1028-GW AGRX, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012).........................18

*Rooney v. Cumberland Packing Corp.*,
  No. 12-cv-0033-H (DHB), 2012 WL 1512106 (S.D. Cal. Apr. 16, 2012) ...............................19

*Ross v. Sioux Honey Ass'n Coop.*,
  No. C-12-1645 EMC, 2013 WL 146367 (N.D. Cal. Jan. 14, 2013) .......................................19

*Skilstaf, Inc. v. CVS Caremark Corp.*,
  669 F.3d 1005 (9th Cir. 2012).............................................................................................13

*Sugawara v. Pepsico, Inc.*,
  2009 WL 1439115 (E.D. Cal. May 21, 2009)......................................................................18

*Syntek Semiconductor Co. v. Microchip Tech., Inc.*,
  307 F.3d 775 (9th Cir. 2002)...............................................................................................6

*Taradejna v. Gen. Mills, Inc.*,
  909 F. Supp. 2d 1128 (D. Minn. 2012) ...............................................................................6

*United States v. Sullivan*,
  332 U.S. 689 (1948) ...........................................................................................................8

*Viggiano v. Hansen Nat. Corp.*,
  944 F. Supp. 2d 877 (C.D. Cal. 2013)................................................................................18

**Statutes**

21 U.S.C. § 343-1(a)(3)............................................................................................................8

21 U.S.C. § 343(d)(3)..............................................................................................................8

**Other Authorities**

21 C.F.R.
  § 100.100(a) ...............................................................................................2, 3, 4, 7, 9
  § 100.100(a)(1)....................................................................................................3, 7
  § 100.100(a)(2)...................................................................................................3, 11
  § 100.100(a)(3)...................................................................................................3, 10
  § 100.100(a)(4)...........................................................................................4, 7, 9, 10
  § 100.100(a)(6)....................................................................................................4, 7
  § 101.105..............................................................................................................18
  § 101.9.................................................................................................................18

FDA Investigations Operations Manual
    Section 5.4.6.6.1 ......................................................................................................7

*Misleading Containers; Nonfunctional Slack-Fill,*
    58 FR 2957-01 (Jan. 6, 1993) .............................................................................3, 7

1

## I.    INTRODUCTION

2      The weight of recent, relevant authority supports dismissal of this action—one of a recent

3 outpouring of lawsuits asserting that food products violate the FDA's regulation on nonfunctional

4 "slack-fill."  A number of courts, including this court in a decision by Judge Seeborg, have

5 dismissed at the pleadings stage slack-fill claims like the ones asserted here.  Those courts have

6 found that plaintiffs' essential slack-fill allegations—that empty space in various products was

7 "nonfunctional" under the FDA's detailed regulation and therefore impermissible—were based

8 on legal conclusions rather than fact allegations that logically and plausibly support those

9 conclusions.  Those essential allegations are absent in this case, too; it should be dismissed.

10      Plaintiff Thomas Iglesias attempts now for a second time to plead class claims based on

11 his surmise that Defendant Ferrara's products violate the Food and Drug Administration's slack-

12 fill regulation.  Plaintiff alleges that in 2016 he "made a one-time purchase" of a box of Ferrara's

13 Jujyfruits candy for approximately $4.00 from a California movie theater.  According to Plaintiff,

14 upon opening the box, he discovered it was not as full as he had expected—that it had empty

15 space or slack-fill in the box.  Plaintiff nonetheless does not dispute that the product packaging

16 accurately states the net weight and quantity of its candy contents on both the front and back.

17 Rather, he asserts—without the benefit of proper or plausible supporting factual allegations—that

18 "nearly all" of the empty space in the box was "nonfunctional" as defined by the FDA's slack-fill

19 regulation.

20      On these grounds, he claims the product packaging violates slack-fill laws and is

21 deceptive, giving rise to claims under the California Consumers Legal Remedies Act, False

22 Advertising Law, and Unfair Competition Law.  Notably, however, Plaintiff never explains what

23 specific amount of slack-fill is allegedly excessive, why that particular amount is nonfunctional,

24 or whether that amount of slack-fill is excessive only for Jujyfruits, for all candies made by

25 Ferrara, or for all candies on the market.  Instead, he would have this Court become the final

26 arbiter of all of these issues and decide exactly how much slack-fill should be permitted in candy

27 boxes across the U.S.

28

Hogan Lovells US
LLP
Attorneys At Law

DEF. FERRARA'S MOTION TO DISMISS
Case No. 4:17-CV-00849-VC

As a preliminary matter, Plaintiff's claims should be dismissed under the doctrine of primary jurisdiction, pursuant to which courts defer to federal agencies on matters calling for the agencies' unique experience, expertise and resources.  Plaintiff's claims are all premised on an FDA regulation that preempts any conflicting state law slack-fill standard.  That FDA regulation prohibits slack-fill in product packaging if—*and only if*—it is *nonfunctional* as defined by the regulation, 21 C.F.R. § 100.100(a).  In determining whether slack-fill is functional or nonfunctional, the FDA has prescribed multiple factors that justify slack-fill in a given product—such as to accommodate the machines used to fill the products, to allow for functional features of the packaging, and to facilitate handling, among other reasons.  Critically, it is the FDA that is in the best position to construe and apply the slack-fill regulation, including determining whether slack-fill in a particular food product is properly deemed functional.  The primary jurisdiction doctrine allows this Court to refer to the FDA such specialized regulatory issues and to dismiss this case.

But even if the Court were inclined to consider Plaintiff's claims further, the Court should still dismiss Plaintiff's First Amended Complaint.  *First*, Plaintiff's allegation that the slack-fill in Ferrara's products is "nonfunctional" is nothing more than a legal conclusion, supported only by speculative and facially unfounded allegations.  For that reason, Plaintiff's Complaint fails to satisfy the basic pleading standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  As noted, other federal district courts recently presented with complaints lacking factual support for conclusory slack-fill allegations have dismissed them for precisely that reason.

*Second*, Plaintiff fails the "reasonable consumer" standard that governs the consumer deception claims he asserts.  Specifically, Plaintiff fails plausibly to allege that a "significant portion" of the public would be deceived by Ferrara's packaging.  Plaintiff does not (and cannot) point to anything on Ferrara labels, on Ferrara packaging, or otherwise, which suggests the boxes at issue are filled to the top.  To the contrary, reasonable consumers understand based on life experience that many food products, including snack food and candy, contain some empty space.  If consumers seek specifics about the actual quantity of candy in Ferrara's candy boxes, they need

DEF. FERRARA'S MOTION TO DISMISS
Case No. 4:17-CV-00849-VC

look no further than the front or back of the package itself, where standard, legally required disclosures state the product's net weight and servings per container. Truly concerned consumers, obviously, can also—with little investment of their time—pick up the box, handle it, and feel its weight. A recent decision in the Ninth Circuit, *Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016), and one in this District, *Bush v. Mondelez International, Inc.*, No. 16-cv-02460-RS, 2016 WL 7324990 (N.D. Cal. Dec. 16, 2016), confirm that reasonable consumers would likely not be deceived by the products as alleged in this case. Plaintiff's First Amended Complaint should thus be dismissed for failure to state a claim.

## II.    BACKGROUND

### A.    The Food and Drug Administration Regulates Slack-Fill.

The FDA permits justified amounts of slack-fill in packaged foods. "Slack-fill" is "the difference between the actual capacity of a container and the volume of product contained therein." 21 C.F.R. § 100.100(a). According to the FDA, it is only the presence of *nonfunctional*[1] slack-fill in food packaging that is prohibited and may be deemed "misleading." *Id.* Citing data obtained from a study conducted by the National Academy of Sciences, the FDA has recognized that that many consumer commodities may have "large levels" of justified slack-fill. *See Misleading Containers; Nonfunctional Slack-Fill*, 58 FR 2957-01, at *2957-59 (Jan. 6, 1993). FDA regulations permit slack-fill if it serves legitimate purposes, including one or more of any of the following reasons:

- "Protection of the contents of the package." 21 C.F.R. § 100.100(a)(1).
- "The requirements of the machines used for enclosing the contents in such package." 21 C.F.R. § 100.100(a)(2).
- "Unavoidable product settling during shipping and handling." 21 C.F.R. § 100.100(a)(3). The FDA has acknowledged that "settling" of contents—especially those products that are shaped in unique ways such that they take varying amounts of space depending on how

---

[1] The regulation's definition of "functional" also includes slack-fill that does not serve a function per se, such as slack-fill due to unavoidable product settling. *See* 21 C.F.R. § 100.100(a)(3).

they "settle"—"is a normal, unavoidable process" for varieties of food.  58 Fed. Reg. at 2961.

- "The need for the package to perform a specific function."  21 C.F.R. § 100.100(a)(4). The FDA has recognized that "consumer demand for convenience has led to the development of food products that may be cooked in, or eaten out of, the containers in which they are purchased," and that such packaging may contain functional slack-fill related to the method of consumption.  58 Fed. Reg. at 2961.

- Inability to increase level of fill or to further reduce the size of the package (e.g., where some minimum package size is necessary to accommodate required food labeling, discourage pilfering, or facilitate handling).  21 C.F.R. § 100.100(a)(6).

**B.    The Complaint Lacks Factual Allegations to Support Claims Concerning Deceptive or Unlawful Conduct.**

Plaintiff's claims are all premised on the FDA regulation addressed to nonfunctional slack-fill in product packaging under 21 C.F.R. § 100.100(a).  *See* First Amended Complaint ("Compl.") at ¶ 82.  Plaintiff Thomas Iglesias alleges he is a California citizen who made a one-time purchase of Ferrara's Jujyfruits candy at a San Francisco movie theater in 2016.  *See id.* at ¶¶ 4, 23.  He purportedly "made [his] purchase decisions based upon a visual observation of the Product's packaging through the showcase window of a movie theater concession stand . . . ."  *Id.* at ¶ 20.  He alleges that he discovered "nonfunctional slack-fill" in the packaging of the product at issue, *id.* at ¶ 32, and that had he known "the Product contained slack-fill which serves no functional or lawful purpose," he would not have purchased it.  *Id.* at ¶ 37.  Notably, Plaintiff does not allege how much candy he thought he was purchasing or why he believed that the box would be completely full.  Although the Complaint acknowledges that the Jujyfruits package labeling states the candy's net weight (on the front of the package), serving size, and number of pieces in the package (*id.* at ¶ 35), Plaintiff does not allege whether he saw or cared about any of this information before purchasing the product.  And Plaintiff never alleges the source of his disappointment over his purchase—why he presumably concluded that the space in the box he observed upon opening was "nonfunctional" slack-fill.  He likewise fails to explain whether he

ever sought to view the product labeling, handle the product, or inspect it more closely before he purchased it, whether he made any inquiries to the retailer to determine the quantity of product, or whether the actual quantity of candy in the box was or was not relevant to his purchasing decision at the time of purchase.

Plaintiff's essential claim, that the product contains "nonfunctional slack-fill," rests on his allegations that "Defendant uniformly and substantially under-fills the opaque boxes by 41%," and that the resulting empty space "serves no legitimate or lawful function." *Id.* at ¶ 3.  The Complaint, however, contains *no plausible allegation of fact* reasonably supporting the essential conclusion that all or any of the slack-fill in Ferrara's products is nonfunctional, or unjustified, under the FDA's controlling slack-fill regulation.

Instead, the Plaintiff alleges, in conclusory fashion, only that certain of the FDA's justifications for slack-fill, *supra* at Part II.A, do not apply to Jujyfruits boxes.  He asserts, with no plausible supporting facts or explanation, that (i) Ferrara's sealing equipment does not "require slack-fill," *id.* at ¶ 47, (ii) no "additional product settling occurs during subsequent shipping and handling," *id.* at ¶ 48, and (iii) a "reasonable consumer does not actually use" the perforated tab on the product box to dispense the candy product, *id.* at ¶¶ 50-55.  Though he says he has consulted an "expert" and states his intention to proffer expert testimony at a later stage in the case, Plaintiff nowhere alleges facts—based on expert testimony or otherwise—supporting the bare conclusion that Jujyfruits or Ferrara's packaging equipment for Jujyfruits (or the other challenged products) do not require some degree of slack-fill.  Specifically, there is *no allegation* to suggest that any *test results* exist to support his assertions or any statement in Plaintiff's pleadings as applied to the actual products, packaging, and plant equipment at issue here.  Indeed, Plaintiff makes no allegation even to support an inference that he would have knowledge of the type of packaging/filling equipment Ferrara uses, how the filling process works at Ferrara, or the extent to which Jujyfruits settle after they are packaged.  And—aside from a less than precise reference to "nearly all"—Plaintiff does not allege *how much* of the alleged 41% slack-fill in Jujyfruits is not justified under the FDA rules.  Nor does he allege any basis to support an inference that his personally-observed degree of fill is "uniform."  *Id.* at ¶ 3.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## III.    ARGUMENT

### A.    Plaintiff's Claims Should Be Dismissed Under the Primary Jurisdiction Doctrine.

This Court should dismiss the complaint under the primary jurisdiction doctrine, leaving enforcement of FDA's slack-fill standard to the agency which created it and which has unique expertise and resources suited to enforcing the standard.  Under the primary jurisdiction doctrine, when a case raises issues of fact outside the "conventional experience" of judges, or a case requires the exercise of administrative discretion, it may be referred to "agencies created by Congress for regulating [that] subject matter."  *Far East Conf. v. United States*, 342 U.S. 570, 574 (1952); *accord Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008) (primary jurisdiction "allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency"). The doctrine is based, among other things, on concern for promoting and maintaining the proper relationship between courts and administrative agencies:

> [D]eference to an agency is appropriate where there is "(1) a need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration."

*Clark*, 523 F.3d at 1115 (internal quotation marks omitted); *accord Syntek Semiconductor Co. v. Microchip Tech., Inc.*, 307 F.3d 775, 780-81 (9th Cir. 2002).

In the area of food labeling in particular, the Ninth Circuit recently recognized both the importance of the FDA's enforcement discretion and the compelling reasons for leaving it intact. *See, e.g.*, *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 761 (9th Cir. 2015) ("Obtaining expert advice from [the FDA] would help ensure uniformity in administration of the comprehensive regulatory regime established by the FDCA.").  Multiple courts have found issues of food labeling and packaging sufficiently complex that they "are best left to the FDA for consideration prior to judicial review."  *Lever Bros. Co. v. Mauer*, 712 F. Supp. 645, 651 (S.D. Ohio 1989); *see also Kane v. Chobani, LLC*, 645 F. App'x 593, 594 (9th Cir. 2016) (vacating and remanding because "judicial resources will be conserved" by awaiting FDA guidance); *Taradejna*

1    *v. Gen. Mills, Inc.*, 909 F. Supp. 2d 1128, 1135 (D. Minn. 2012); *Heller v. Coca-Cola Co.*, 230

2    A.D.2d 768, 769-70 (N.Y. 1996).

3        A strong basis exists here to apply the primary jurisdiction doctrine.  As noted above, the

4    FDA has promulgated detailed, technical regulations regarding slack-fill, based on its extensive

5    knowledge and long experience with different food manufacturers and their respective food

6    packaging and filling techniques and capabilities.  The FDA, moreover, enforces its slack-fill

7    regulations during food manufacturing facility inspections.  *See* "FDA Investigations Operations

8    Manual" Section 5.4.6.6.1 - QUANTITY OF CONTENTS ("If slack fill is suspected, weigh a

9    representative number of finished packages.")

10   http://www.fda.gov/downloads/iceci/inspections/iom/ucm150576.pdf (last visited May 24, 2017).

11   Key to determining whether the alleged empty space in Ferrara's products is nonfunctional are

12   factors such as (1) the requirements of the specific machines used for filling the container;

13   (2) protecting the contents of the package; (3) product settling after packing; (4) the function of

14   the package; and (5) other factors going to an inability to increase the level of fill or facilitate

15   handling.  *See* 21 C.F.R. § 100.100(a)(1)-(4), (6).  FDA has the administrative mandate and the

16   experience to analyze and apply these factors, which the Agency conceived of and articulated in

17   promulgating the regulation.  FDA is in an inherently superior position to a jury or court to

18   resolve technical questions of fact and to apply the regulations as intended *with consistency*.  *See,*

19   *e.g.*, *Nader v. Allegheny Airlines*, 426 U.S. 290, 303 (1976).

20       Indeed, the FDA previously concluded "it is possible to distinguish between functional

21   and nonfunctional slack-fill *on a plant-by-plant basis for specific products in given container*

22   *sizes*."  *Misleading Containers; Nonfunctional Slack-Fill*, 58 FR 2957-01, at *2959 (emphasis

23   added).  According to FDA, "differences in the physical characteristics of a given product,

24   including the need to protect the product from breakage, and precision of filling equipment result

25   in a *high degree of variability in the level of functional slack-fill* within commodity classes."  *Id.*

26   (emphasis added).  With its experience and expertise in authoring and enforcing the regulations,

27   the FDA is best situated to make determinations regarding the requirements of packaging and

28   filling machinery, and to understand trade-offs between factors that may affect the amount of

DEF. FERRARA'S MOTION TO DISMISS
                                                                      Case No. 4:17-CV-00849-VC

1  slack-fill in a product, including product characteristics, packing line speed, and packaging
2  dimensions and features.

3      The Supreme Court has noted the importance of FDA's enforcement discretion with
4  respect to deciding whether and how to enforce its regulations, given differing degrees of possible
5  FDCA violations: "[T]he Administrator of the Act is given rather broad discretion—broad
6  enough undoubtedly to enable him to perform his duties fairly without wasting his efforts on what
7  may be no more than technical infractions of law. . . . The provisions of [section] 405 with regard
8  to food apparently are broad enough to permit the relaxation of some of the labeling requirements
9  which might otherwise impose a burden on retailers out of proportion to their value to the
10  consumer." *United States v. Sullivan*, 332 U.S. 689, 694-95 (1948); *accord Heckler v. Chaney*,
11  470 U.S. 821, 835 (1985) (discussing FDA's "complete discretion" with respect to enforcement);
12  *Cutler v. Hayes*, 818 F.2d 879, 893 (D.C. Cir. 1987) ("Congress has not given FDA an inflexible
13  mandate to bring enforcement actions against all violators of the Act."). The FDA's broad
14  authority to prosecute and, no less importantly, to decline enforcement in particular
15  circumstances, is instrumental to the nationwide regulatory regime.[2]

16      Accordingly, this Court should defer to FDA's primary jurisdiction to resolve technical
17  fact issues and enforce the slack-fill regulation consistently.

18  **B.    The Complaint Does Not Comply With *Twombly* and *Iqbal* Pleading**
    **Standards.**

19      Independent of the FDA's primary jurisdiction, Plaintiff's Complaint suffers from fatal
20  pleading defects requiring its dismissal. A plaintiff must allege "sufficient factual matter . . . to
21  state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation
22  marks omitted); *accord Twombly*, 550 U.S. at 570. A court is free to ignore allegations that "do
23  nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual
24  allegation." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009); *accord Oklevueha*

26  _____
[2] Plaintiff's claims necessarily depend, in their entirety, on whether the products at issue comply
27  with FDA's slack-fill regulation. To the extent that Plaintiff's claims are premised on a
nonfunctional slack-fill standard different from that set forth by federal law, his claims are
28  preempted. *See* 21 U.S.C. § 343-1(a)(3), 343(d)(3).

1   *Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 834 (9th Cir. 2012) ("[C]onclusory

2   allegations and unwarranted inferences are insufficient to defeat a motion to dismiss."); *In re*

3   *Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1056-57 (9th Cir. 2008).  In ruling on a motion to dismiss

4   and determining whether Plaintiff has plausibly stated a claim, a court must "draw on its judicial

5   experience and common sense." *Iqbal*, 556 U.S. at 679.  This Plaintiff's claims fail any common

6   sense test and fall far short of controlling pleading standards.

7           1.      **Plaintiff Fails to Adequately Allege That Ferrara Packaging Contained**
                    **Nonfunctional Slack-Fill.**

8

9           Plaintiff's claims are all premised on the assertion that the Jujyfruits product he purchased

10   (and multiple other Ferrara products) contain nonfunctional slack-fill as defined by federal law

11   (and as adopted by the parallel California law).  *See, e.g.*, Compl. at ¶¶ 100-108, 127-137.  As

12   noted, under federal law, a container is not misleading merely because it contains slack-fill or

13   empty space.  Rather, in order for a product to be considered misleading and misbranded due to

14   slack-fill, the slack-fill must be "nonfunctional" (i.e., the slack-fill must exist for a reason other

15   than one of the six reasons set forth in the regulation).  21 C.F.R. § 100.100(a).  In this case,

16   Plaintiff's allegations that Jujyfruits slack-fill does not serve a functional purpose are premised on

17   nothing more than Plaintiff's legal conclusions.

18           Although the Complaint asserts that certain of FDA's specified reasons justifying the

19   presence of slack-fill do not apply to Jujyfruits, those allegations are insufficient on their face.

20   *First*, the FDA recognizes that slack-fill may serve a "specific function," such as allowing

21   consumption on-the-go and preventing spillage when someone reaches into a container filled with

22   snacks to the brim.  *See* 21 C.F.R. § 100.100(a)(4).  As the FDA has explained, "consumer

23   demand for convenience has led to the development of food products that may be . . . eaten out of

24   [] the containers in which they are purchased," and that such packaging may accordingly contain

25   slack-fill.  58 Fed. Reg. at 2961.  Apparently recognizing that the alleged slack-fill in Jujyfruits

26   may be permitted under federal law based on this "function," Plaintiff makes various assertions

27   over five paragraphs of his Amended Complaint apparently intended to lend support to his raw

28   conclusion that "a reasonable consumer" would not use the perforated tab opening on the side of

the Jujyfruits box to dispense the candy.  *See* Compl. at ¶¶ 50-55.  But Plaintiff's extended discussion is little more than a series of *non sequitur* assertions, none of which logically support the inference that the perforated dispenser on the box is not intended to be used (and actually is used) by consumers.  For example, Plaintiff's assertions that a consumer "could" dispense candy by tearing open the ends of the packaging (*id.* at ¶¶ 50, 54), that the tab "is not completely perforated" (whatever that means) (*id.* at ¶¶ 53, 55), or that "a reasonable consumer will opt against using the Product's partially perforated tab while watching a movie in a dark theater" (*id.* at ¶ 53), do not logically support Plaintiff's broad conclusion that Ferrara "does not genuinely intend for the side tab to be used, and that the reasonable consumer does not actually use it."  *Id.* at ¶ 55.

In sum, the Complaint's assertions concerning and arguments against applicability of 21 C.F.R. § 100.100(a)(4) make no sense on their face.  It is not enough under controlling federal pleading standards simply to recite assorted factual assertions related to Ferrara packaging and then state an ultimate conclusion.  There must be some conceivable, plausible basis for making those assertions, and they must lend logical support to Plaintiff's ultimate conclusion about Ferrara's packaging of (and intent in packaging) its candy.  Here Plaintiff's allegations are rank speculation, providing no support for his broad conclusions.  In this Amended Complaint, therefore, Plaintiff pleads *no fact* that would render the referenced slack-fill functional justification inapplicable to Jujyfruits.

*Second*, the FDA has also held that a container may contain empty space because of the way that the individual pieces of the product may "settle" in it, which could affect how much of the container the product occupies.  *See* 21 C.F.R. § 100.100(a)(3).  "Settling" occurs when the shape of the food items may lead to varying amounts of container space taken, depending on how the items stack and settle on top of each other.  Lacking factual support for his conclusions concerning the function of slack-fill in Ferrara products, Plaintiff blithely asserts that "[n]o additional product settling occurs during subsequent shipping and handling" of Jujyfruits.  *Id.* at ¶ 48.  But again, his conclusion—that Jujyfruits, chewy candies of various shapes and sizes, do not settle—is speculation and defies common experience and reality.  Similar conclusory

1   assertions were recently found "illogical and implausible" by this court faced with in a similar

2   context. *Bush v. Mondelez Int'l, Inc.*, 2016 WL 7324990, at *4 (N.D. Cal. Dec. 16, 2016)

3   (finding "illogical and implausible" plaintiff's allegation that any slack-fill present in Nabisco

4   Go-Paks "is not a result of the cookies settling during shipping and handling"). In addressing a

5   point that is so obviously susceptible of empirical support, Plaintiff should not be permitted to

6   evade the commands of *Twombly* and *Iqbal* by simply declaring something to be true—

7   particularly when the declared fact is counter to apparent reality, unsupported by specific cited

8   facts, and thus implausible.

9          *Third*, the FDA may deem slack-fill functional based on the "requirements of the

10  machines used for enclosing the contents in such package." 21 C.F.R. § 100.100(a)(2). In that

11  connection, the FDA has noted that enforcement of slack-fill regulations is "based on the

12  capabilities of individual processing and packaging facilities and on the specific physical

13  properties (e.g., bulk density, uniformity, tendency to settle, and need for protection) of individual

14  products." 58 Fed. Reg. at 2960. In attempting to plead around this justification, Plaintiff asserts

15  that "[e]ven if there were no slack-fill present in the Product's boxes, the machines used for

16  enclosing the contents in the package would work without disrupting the packaging process."

17  Compl. at ¶ 47. Plaintiff, however, fails to explain how he or his attorneys have (or could have)

18  any knowledge about Ferrara's manufacturing, packaging, or filling processes, or the specific

19  equipment used in those processes. Plaintiff's sweeping, speculative contentions fly in the face of

20  the FDA's guidance on plant-by-plant, product-specific enforcement of the slack-fill regulation—

21  and ultimately of *Twombly/Iqbal* pleading standards.[3]

22

23

24  [3] Contrary to Plaintiff's assertions, his comparisons to another Ferrara product, Boston Baked
    Beans ("Boston Beans"), are not evidence that the Jujyfruits slack-fill is nonfunctional. *See*

25  Compl. at ¶¶ 61-70. Plaintiff's claim that "Boston Beans are coated candies of nearly identical
    size, shape, and density of that of the Product," *id.* at ¶ 64, is demonstrably inaccurate. Boston

26  Beans are candy coated *peanuts*, *id.* at ¶ 61, while Jujyfruits are "*chewy*" candy, *id.* at ¶ 1. The
    shape of the Boston Beans peanuts are far more uniform, *see id.* at ¶ 65, than the various fruit-

27  shaped Jujyfruits, *id.* at ¶ 35. And Plaintiff does not allege that Boston Beans are filled with the

28  same or different equipment, line speeds, and other packaging considerations as Jujyfruits.

**Plaintiff's counsel's allegations in this case and in other slack-fill complaints confirm that these claims should be dismissed.**  Ferrara made the foregoing arguments in its prior Motion to Dismiss Plaintiff's original complaint, pointing out how Plaintiff had no conceivable factual basis to allege that Ferrara candy products contain *nonfunctional* slack-fill and how the few assertions of fact in the complaint provided no logical support for Plaintiff's key conclusions about the function of slack-fill.  *See* ECF No. 14 at 8-9.  Rather than oppose that motion, however, Plaintiff amended his complaint, focusing in large part on supplementing the allegations discussed immediately above.  Ultimately, however, Plaintiff's amendments add nothing of substance.

Specifically, Plaintiff's changes to his complaint consist of alleging that he had conducted "an investigation," had "consult[ed] an expert in packaging design", and had "survey[ed] [] comparator boxed candy products available in the marketplace."  Compl. ¶ 3.  He then simply added references to the "survey," the "expert," or the "investigation" immediately before repeating the same broad, factually unsupported conclusions he made in his original complaint.  *See id.* at ¶ 38 ("During Plaintiff's investigation, Plaintiff confirmed . . . ."), ¶ 47 ("As confirmed during Plaintiff's survey . . . ."), ¶ 48 ("As confirmed by Plaintiff's expert in packaging design . . . .").

Nowhere, however, does Plaintiff provide even the most basic description of his "investigation" or his "survey."  As such, the allegations are meaningless and provide no factual basis for Plaintiff's conclusions about the existence of non-functional slack-fill.  *E.g.*, *Rael v. Dooney & Bourke, Inc.*, No. 16CV0371 JM(DHB), 2016 WL 3952219, at *3 (S.D. Cal. July 22, 2016) ("[T]his declaration [describing counsel's investigation] simply reiterates the conclusions set forth in Plaintiff's complaint as his own, which cannot serve as the *factual basis* for Plaintiff's claims." (emphasis added)).  Ferrara has little doubt that in furtherance of his "survey" and "investigation," Plaintiff's counsel may have walked the aisle of retailers selling candy products, purchased some undisclosed number of different products, and then recruited a named plaintiff or plaintiffs to bring this suit.  But allusions to an unspecified investigation and survey provide no logical or factual support for Plaintiff's assertions about the packaging equipment used in

Ferrara's plant, consumers' use or nonuse of a perforated opening on Jujyfruits, or how Jujyfruits settle or do not settle after packaging.

Nor does the Complaint's reference to an "expert"—who purportedly "*shall offer* expert testimony . . . once the case reaches the merits"—save the day for Plaintiff. The merits are precisely what the Plaintiff must plead, factually, in his Complaint. The Amended Complaint, however, recites no relevant facts—provided by this supposed expert or anyone else—supporting Plaintiff's key conclusory assertions. Most critically, Plaintiff never suggests that he or his expert knows the characteristics of particular Ferrara candies or of the packaging and filling machinery used by Ferrara. Plaintiff's amendments of his Complaint only confirm that he has no support, consistent with Rule 11, for his conclusory allegations that Ferrara candy products contain *nonfunctional* slack-fill.

Notably, Plaintiff's counsel has filed multiple other slack-fill lawsuits in California, asserting the same basic legal and factual theories asserted in this case.[4] Apparently facing or anticipating the same kind of arguments Ferrara makes on this Motion, counsel has, in these other complaints, made similar or identical, supposedly fact-based assertions concerning how slack-fill in other products cannot be justified under the FDA regulation and about counsel's "investigations" and reliance on a packaging "expert." *E.g.*, *Escobar* Compl. at ¶¶ 34 ("During Plaintiff's investigation, Plaintiff confirmed that Defendant uniformly under-fills the Products' boxes, rendering a whopping 46% of each box slack-fill, nearly all of which serves no functional or lawful purpose."), 36-51 (alleging the slack-fill is not due to settling or other functional reasons); *Gordon* Compl. at ¶¶ 3 ("Defendant uniformly under-fills the opaque boxes of Products by 45%. . . . [which] 'slack-fill' . . . serves no legitimate or lawful function. During Plaintiff's investigation into the reason for Defendant's under-filling of the boxes, which included consultation with an expert in packaging design and a survey of comparator boxed candy

---

[4] *See Escobar v. Just Born, Inc.*, No. 2:17-cv-1826, ECF No. 1-1 (C.D. Cal.; originally filed in Los Angeles Superior Court); *Gordon v. Tootsie Roll Industries, Inc.*, No. 17-cv-2664, ECF No. 17 (C.D. Cal.; originally filed in Los Angeles Superior Court); *see also Bush v. Mondelez Int'l, Inc.*, No. 16-cv-2460-RS, ECF No. 37 (N.D. Cal.). On a motion to dismiss, this Court may properly take judicial notice of filings in other litigation. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012).

products available in the marketplace, Plaintiff discovered that nearly all of the 45% balance of empty space, or 'slack-fill,' serves no legitimate or lawful function"), 40 ("During Plaintiff's investigation, Plaintiff confirmed that Defendant uniformly under-fills the Products' boxes, rendering a whopping 45% of each box slack-fill, none of which serves a functional or lawful purpose."), 43 ("As confirmed during Plaintiff's investigation, including consultation with an expert in packaging design, the slack-fill contained in the Product does not protect the contents of the packages.  Plaintiff shall proffer expert testimony to establish this fact once this case reaches the merits."), 44-54 (asserting slack-fill is not due to settling or other functional reasons); *see also Bush* Compl. at ¶ 2, 9-33, 60.  These rote allegations—virtually identical though they pertain to different candies (Mike & Ike, Hot Tamales, Junior Mints, Sugar Babies), with different consistencies and different shapes, produced in different plants, packaged on different equipment lines, by different manufacturers—add nothing of substance to the complaint here.

   **The weight of authority supports dismissal.**  Other courts have dismissed similar complaints where a plaintiff has asserted factually unsupported conclusions that slack-fill in a product was nonfunctional.  In *Bautista v. Cytosport, Inc.*, No. 15-CV-9081 (CS), 2016 WL 7192109, at *4-5 (S.D.N.Y. Dec. 12, 2016), the court granted the defendant's motion to dismiss where the plaintiff asserted in conclusory fashion that slack-fill in the products at issue did not exist for any of the permissible reasons set forth in the federal regulation—e.g., that "the empty space was not used to protect the product, necessary for enclosing the product, or because of settling." *Id*. at *4.  The court found that "[s]uch wholly conclusory allegations are insufficient to state a nonfunctional slack fill claim." *Id*. at *4 (citing cases where conclusory allegations that the defendant violated federal regulations were insufficient to state a claim).  Similarly, in *Bush v. Mondelez*, No. 16-cv-2460-RS, 2016 WL 5886886, at *4 (N.D. Cal. Oct. 7, 2016), the court dismissed a complaint that recited the six circumstances in which slack-fill is functional and asserted that none of the circumstances applied.  The court found that such allegations were supported only "by mere conclusory statements." *Id*. (quoting *Iqbal*, 556 U.S. at 678); *see also Fermin v. Pfizer Inc.*, 215 F. Supp. 3d 209, 211 (E.D.N.Y. 2016) ("'Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of

action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable.' The Court is not required to credit conclusory allegations or legal conclusions couched as factual allegations.").[5] Here, given the absence of non-conclusory, non-speculative factual allegations, it is just as possible—and much more plausible—that slack-fill in Ferrara products has a functional purpose or purposes instead of one that violates the FDA standard. Because Plaintiff does not articulate any non-conclusory, fact-based reasons why the alleged slack-fill is not permissible under one or more of the FDA's articulated functions, he has failed to "nudge" his claim "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 683. Courts should not open the costly doors of discovery where, as here, a plaintiff pleads conclusions rather than plausible evidentiary facts.

### 2. Plaintiff Fails to Satisfy the "Reasonable Consumer" Standard for Consumer Protection Claims.

A plaintiff asserting the CLRA, UCL and FAL claims set forth in this Complaint must plead facts supporting the inference that a ***reasonable*** consumer is ***likely*** to be deceived by the challenged statement or conduct. *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995). This standard has real teeth. Under it, courts look beyond a plaintiff's own alleged experiences to the beliefs and behaviors of the public at large. Deception must more likely than not be the result, which raises the standard to one of probability, not mere possibility. *McKinnis v. Kellogg USA*, No. CV 07-2611 ABC (RCx), 2007 WL 4766060, at *3 (C.D. Cal. Sept. 19, 2007). The challenged statement or conduct must be "such that it is probable that a *significant portion* of the general consuming public" would be misled. *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th

---

[5] During the May 23, 2017 Case Management Conference in this case (ECF No. 27), Plaintiff's counsel referenced a slack-fill case filed in Missouri that recently survived a motion to dismiss. *Bratton v. Hershey Co.*, No. 2:16-CV-4322-C-NKL, 2017 WL 2126864, at *3 (W.D. Mo. May 16, 2017). With respect, the decision from that court is not persuasive in light of the contrary decisions from courts in this District and Circuit cited in text, and is distinguishable in all events. There, the court observed that Missouri law is "at odds" with cases from other jurisdictions, like *Ebner* and *Bush*. *See id.* at *6. Indeed, under Missouri's consumer protection statute, "A plaintiff need not even allege or prove reliance on an unlawful practice to state a claim under the act," and Missouri courts view reasonable consumer determinations as requiring a factual inquiry. *Id.* at *4. Here, of course, California substantive law applies to Plaintiff's claims, as it did to the claims in *Ebner* and *Bush*.

496, 508 (2003) (emphasis added).  And there must be a probability of deception with respect to "consumers acting reasonably in the circumstances, not just any consumers."  *Freeman*, 68 F.3d at 289.  Only by alleging facts sufficient to meet this requirement can a plaintiff plausibly state a claim for relief under controlling pleading standards.

The Ninth Circuit has held that the bar for making out a case of consumer deception based on container size or shape is very high indeed.  *Ebner*, 838 F.3d at 967.  In granting the defendant's motion to dismiss in *Ebner*, the district court held that "in light of [the lip balm's] label, which accurately states the net quantity of product in the tube, it is not reasonable to infer that the oversized packaging and metallic weight would mislead reasonable consumers as to the quantity they are receiving."  *Ebner v. Fresh, Inc.,* No. SACV 13-00477 JVS(RNBx), 2013 WL 9760035, at *7 (C.D. Cal. Sept. 11, 2013).  The Ninth Circuit affirmed, finding that "[b]ecause Plaintiff cannot plausibly allege that [the lip balm's] design and packaging is deceptive, the district court did not err in dismissing the packaging-based claims."  *Ebner*, 838 F.3d at 967.

Citing *Ebner*, a court in this District applied the same reasoning and reached the same result with respect to snack foods:

> Bush alleges that Go-Pak containers are misleading because consumers expect more cookies or crackers than are actually included.
>
> *           *           *
>
> The Ninth Circuit recently affirmed the dismissal of a slack-fill lawsuit on the ground that the plaintiff failed to state a plausible claim for consumer deception. *See Ebner* . . . .
>
> *           *           *
>
> Here, as in *Ebner*, it is undisputed that the Go-Pak product labels disclose the net weight of included product, as well as the number of cookies or crackers per container.  Opaque containers with slack-fill at the top are common in the snack market.  "Targeted consumers" thus expect some slack-fill.  No reasonable consumer expects the overall size of the packaging to reflect precisely the quantity of product contained therein.

*Bush*, 2016 WL 5886886, at *2-3 (granting motion to dismiss).

*Bush* is on all fours with this case.  There, the court found it implausible that "'a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled' into thinking the container would be packed to the brim with

1    snack." 2016 WL 5886886, at *3.  Here, too, Plaintiff's expectation that the package would be

2    devoid of empty space does not square with consumers' common experience that candy and other

3    food packaging have slack-fill.

4         Because Plaintiff's claimed expectations about the level of fill—deduced solely from the

5    packaging size (Compl. at ¶¶ 16-17, 27)—are not shared by reasonable consumers, his deception

6    claims are not plausible.  As the Ninth Circuit explained: "Apart from the accurate weight label,

7    there are no other words, pictures, or diagrams adorning the packaging . . . from which *any*

8    inference could be drawn or on which *any* reasonable belief could be based . . . ." *Ebner*, 838

9    F.3d at 966.  The Ninth Circuit concluded: "In the absence of any statement or other depiction

10   anywhere on the package . . . , we conclude that it is not plausible that 'a significant portion of the

11   general consuming public or of targeted consumers, acting reasonably in the circumstances, could

12   be misled . . . .'" *Id.*

13        Plaintiff's efforts to plead around the reasonable consumer standard are to no avail.  In an

14   effort to justify his asserted expectation of a full candy package, Plaintiff alleges that "the

15   Product's packaging does not allow for a visual or audial confirmation of the contents of the

16   Product.  The Product's opaque packaging prevents a consumer from observing the contents

17   before opening."  Compl. at ¶ 33.  Of course, that is why the statements of net weight and

18   servings per container are set forth on the exterior packaging.  Though he complains that the

19   product was located in a glass display case behind the counter at the movie theater, these facts do

20   not support an inference that it was somehow impractical for him to make any effort, beyond

21   viewing the box "from a distance through the showcase window," to inform his expectations

22   about the amount of candy in the package.  *Id.* at ¶ 28.[6]

23

24   _____

25   [6] Plaintiff appears to suggest that the movie theater's sales practices excuse him from acting
     reasonably under the circumstances (e.g. by asking to view or handle the package before
26   purchase, or to open the package immediately after purchase and request a refund if not filled to
     his expectation).  The alleged facts support no such inference.  Plaintiff's allegation that
27   "consumers rarely read details beyond the final price of the product, and often, not even that"
     likewise does not support an inference that a reasonable consumer would not consider statements
28   of quantity of product purchased, let alone not consider the price.  *See* Compl. ¶ 14.

DEF. FERRARA'S MOTION TO DISMISS
                                                     Case No. 4:17-CV-00849-VC

Even if Plaintiff understood the container size to be a precise indication of quantity, Plaintiff fails to demonstrate that reasonable consumers would not consider the product label.  "A plaintiff cannot pursue a claim based on a statement that can only be misleading when the information surrounding it is ignored."  *Bobo v. Optimum Nutrition, Inc.*, No. 14CV2408 BEN (KSC), 2015 WL 13102417, at *4 (S.D. Cal. Sept. 11, 2015); *see also Freeman*, 68 F.3d at 290; *Fermin v. Pfizer Inc.*, No. 15 CV 2133 (SJ) (ST), 2016 WL 6208291, at *2 (E.D.N.Y. Oct. 18, 2016) ("Plaintiffs seek to be protected under packaging laws but to dispense with reading the package.  The suggestion that such laws should cover their failure to read an unambiguous tablet-count does not pass the proverbial laugh test."); *Bush*, 2016 WL 5886886, at *3.

As mandated by federal law (*see, e.g.*, 21 C.F.R. §§ 101.9, 101.105), food product labels, like those of Jujyfruits, provide a specific, objective information about the net quantity of each product package's contents.  Courts therefore, not surprisingly, have made clear their expectations that a typical consumer would consider information on the label in forming expectations about the product being sold.[7]  Here, there are two prominent, straightforward label statements that affirmatively disclose the amount of product in the box:

- "NET WT 5 OZ (142g)"

- "Serving Size 15 pieces (40g); Servings Per Container About 3.5"

---

[7] *See, e.g.*, *Bush*, 2016 WL 5886886, at *3 ("No reasonable consumer expects the overall size of the packaging to reflect precisely the quantity of product contained therein."); *McKinniss v. Gen. Mills, Inc.*, No. CV 07-2521 GAF (FMOx), 2007 WL 4762172, at *3 (C.D. Cal. Sept. 18, 2007) ("A reasonable consumer would then be expected to peruse the product's contents simply by reading the side of the box . . . . All of these actions . . . would insure that the consumer was not deceived."); *see also Ebner*, 838 F.3d at 967 ("Because of the widespread nature of this practice, no reasonable consumer expects the weight or overall size of the packaging to reflect directly the quantity of product contained therein."); *Manchouck v. Mondelez Int'l Inc.*, No. C 13-02148 WHA, 2013 WL 5400285, at *3 (N.D. Cal. Sept. 26, 2013), *aff'd sub nom. Manchouck v. Mondelez Int'l, Inc.*, 603 F. App'x 632 (9th Cir. 2015); *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 892 (C.D. Cal. 2013); *Red v. Kraft Foods, Inc.*, No. CV 10-1028-GW AGRX, 2012 WL 5504011, at *4 (C.D. Cal. Oct. 25, 2012); *Dvora v. Gen. Mills, Inc*., 2011 F. Supp. 2d 1897349, at *6-7 (C.D. Cal. May 16, 2011); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, No. C 10-01044 JSW, 2011 WL 159380, at *5-6 (N.D. Cal. Jan. 10, 2011); *Sugawara v. Pepsico, Inc.*, 2009 WL 1439115, at *3-4 (E.D. Cal. May 21, 2009); *McKinnis*, 2007 WL 4766060, at *3-4.

DEF. FERRARA'S MOTION TO DISMISS
                                                   Case No. 4:17-CV-00849-VC

Compl. at ¶ 35.  Plaintiff does not allege that either of these representations was false or misleading.  He does not assert either that the Jujyfruits box he bought contained less than five ounces of the product or had fewer than an expected number of candy pieces.  He alleges, "The size of the box in and of itself is a representation by Defendant as to the amount of candy contained in the box" (*id.* at ¶ 19), but he does not explain how the box's *overall* size meant that the *volume of candy versus empty space* was above or below any particular threshold.

Ultimately, Plaintiff pleads no facts showing that his idiosyncratic alleged beliefs or expectations about the quantity of Jujyfruits in a box are shared by reasonable (or any other) consumers.  He *presumes* that consumers disregard (or cannot understand) express statements of weight and quantity printed on the packaging, and he simply assumes that reasonable consumers would opt not to inspect the package (*id.* at ¶ 33) to inform themselves, if faced with uncertainty.  That is not enough for an inference that reasonable consumers would likely be deceived.

In a case like this one, where a plaintiff fails to plead facts supporting an inference that his professed beliefs or expectations are shared by reasonable consumers, courts routinely dismiss consumer protection claims.  *E.g.*, *Ross v. Sioux Honey Ass'n Coop.*, No. C-12-1645 EMC, 2013 WL 146367, at *15-18 (N.D. Cal. Jan. 14, 2013) (dismissing claims where plaintiff alleged she understood "honey" on product label to mean that no pollen had been removed, but alleged no facts showing that reasonable consumers understand the term in the same way); *Hemy v. Perdue Farms, Inc.*, No. 11-888 (FLW), 2011 WL 6002463, at *15-17 (D.N.J. Nov. 30, 2011) (dismissing claims where plaintiffs alleged they understood "humanely raised" on label of chicken products to include humane methods of slaughter, but alleged no facts showing reasonable consumers have same understanding); *Rooney v. Cumberland Packing Corp.*, No. 12-cv-0033-H (DHB), 2012 WL 1512106, at *4-5 (S.D. Cal. Apr. 16, 2012) (dismissing claims where plaintiff pleaded no facts supporting inference that product name would cause reasonable consumers to believe product contains unprocessed sugar); *see also Cullen v. Netflix, Inc.*, No. 5:11-CV-01199-EJD, 2013 WL 140103, at *7 (N.D. Cal. Jan. 10, 2013), *aff'd*, 600 F. App'x 508 (9th Cir. 2015)).  Because this Plaintiff pleads no *facts* showing that a *reasonable* consumer would be likely deceived or harmed by the fill of Jujyfruits, he has failed to state a claim.

1    **IV.    CONCLUSION**

2          For the foregoing reasons, Plaintiff's Complaint should be dismissed in its entirety.

3

4                                        Respectfully submitted,

5    Dated:  May 24, 2017              HOGAN LOVELLS US LLP

6                                      By: /s/ Robert B. Hawk
7                                          Robert B. Hawk
                                           *Attorneys for Defendant*
8                                          Ferrara Candy Co.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEF. FERRARA'S MOTION TO DISMISS
                                        Case No. 4:17-CV-00849-VC