**CLARKSON LAW FIRM, P.C**.
Ryan J. Clarkson (SBN 257074)
rclarkson@clarksonlawfirm.com
Shireen M. Clarkson (SBN 237882)
sclarkson@clarksonlawfirm.com
Bahar Sodaify (SBN 289730)
bsodaify@clarksonlawfirm.com
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiff Thomas Iglesias*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS IGLESIAS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>FERRARA CANDY CO., and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 3:17-cv-00849-VC<br><br>**[CLASS ACTION]**<br><br>**REDACTED VERSION**<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION UNDER RULES 23(b)(2) AND (b)(3)**<br><br>Hon. Judge Vince Chabbria<br><br>Complaint filed:  February 21, 2017<br><br>Hearing Date:  May 31, 2018<br>Hearing Time:  10:00 AM<br>Hearing Location:  Courtroom E |

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

# TABLE OF CONTENTS

**Page(s)**

I.     INTRODUCTION ...................................................................................................1

II.    FACTS AND PROCEDURAL BACKGROUND.................................................1

    A.     The Parties. ...............................................................................................1

    B.     Plaintiff's Claims .....................................................................................2

    C.     The Proposed Class...................................................................................4

    D.     Procedural History ....................................................................................4

    E.     The Products' Packaging at Issue ............................................................4

    F.     Sales and Distribution of the Products.....................................................5

III.   LEGAL STANDARD FOR CLASS CERTIFICATION .................................5

IV.    CERTIFICATION HERE MEETS THE INTENT AND OBJECTIVE OF RULE 23 .........6

V.     PLAINTIFF SATISFIES ALL REQUIREMENTS UNDER RULE 23 ..............7

    A.     Plaintiff Satisfies the Prerequisites of Rule 23(a) ...................................7

        1.     Numerosity.......................................................................................7

        2.     Commonality....................................................................................8

        3.     Typicality.......................................................................................12

        4.     Adequate Representation ...............................................................13

    B.     THE REQUIREMENTS OF RULE 23(B)(2) ARE SATISFIED ...........14

        1.     Plaintiff Has Article III Standing ..................................................14

        2.     Plaintiff and the Class Complain of Standardized Uniform Conduct Applicable to the Entire Class...........................................16

        3.     Plaintiff Seeks Injunctive Relief That Would Benefit Each Class Member ......17

    C.     THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED ...........18

        1.     Common Issues of Law or Fact Predominate ................................18

            a.    Common Legal and Factual Issues Predominate Plaintiff's UCL and FAL Claims........................................20

            b.    Common Legal and Factual Issues Predominate Plaintiff's CLRA Claim ........21

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

c.     Class-wide Method of Awarding Relief ..................................................22

2.     Class Litigation is Superior to Other Methods of Application ........................24

VI.     CONCLUSION........................................................................................................25

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

1

**TABLE OF AUTHORITIES**

2
                                                                                              **Page(s)**

3
**CASES**

4
*Amchem Prods. v. Windsor,*

5
    521 U.S. 591 (1997)..................................................................................6, 18

6
*Armstrong v. Davis,*
    275 F.3d 849 (9th Cir. 2001) ...........................................................................12

7
*Astiana v. Kashi Co.,*

8
    291 F.R.D. 493 (S.D. Cal. 2013) .....................................................................12

9
*Bates v. United Parcel Svc., Inc.,*

10
    511 F.3d 974 (9th Cir. 2007) ...........................................................................14

11
*Blackie v. Barrack,*
    524 F.2d 891 (9th Cir.1975)   ..........................................................................21

12
*Bruno v. Eckhart Corp.,*

13
    280 F.R.D. 540 (C.D.Cal.2012) ..................................................................... 11

14
*Bruno v. Quten Research Inst., LLC,*
    280 F.R.D. 524 (C.D.Cal.2011) ..................................................................... 11

15

16
*California Rural Legal Assistance, Inc. v. Legal Servs. Corp.,*
    917 F.2d 1171 (9th Cir. 1990) .........................................................................12

17

18
*Chavez v. Blue Sky Natural Beverage Co.,*
    268 F.R.D. 365 (N.D. Cal. 2010).............................................................11, 19, 22

19

20
*Comcast Corp. v. Behrend,*
    133 S.Ct. 1426 (2013)......................................................................................22

21
*Cortez v. Purolator,*
    23 Cal. 4th 163 (2000) .....................................................................................23

22
*Cruz v. PacifiCare Health Systems, Inc.,*

23
    30 Cal.4th 303 (2003) ......................................................................................18

24
*Davidson v. Kimberly-Clark Corp.,*

25
    873 F.3d 1103 (9th Cir. 2017) ...........................................................14, 15, 16

26
*Datta v. Asset Recovery Sols., LLC,*
    U.S. Dist. LEXIS 36446 (N.D. Cal. Mar. 18, 2016)..........................................6

27

28

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

*Delarosa v. Boiron, Inc.,*
   275 F.R.D. 582 (C.D. Cal. 2011) ..................................................................17

*Ellis v. Costco Wholesale Corp.,*
   657 F.3d 970 (9th Cir. 2011) ......................................................................13

*Eisen v. Carlisle & Jacquelin,*
   417 U.S. 156 (1974)......................................................................................5

*Gartin v. S&M NuTec, LLC,*
   245 F.R.D. 429 (C.D. Cal. 2007) ................................................................18

*Guido v. L'Oreal, USA, Inc.,*
   2014 WL 6603730 (C.D. Cal. 2014)............................................................23

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir.1998) .......................................................... *passim*

*Hanon v. Dataprods. Corp.,*
   976 F.2d 497 (9th Cir. 1992) ...................................................................5, 7

*Harris v. Palm Springs Alpine Estates, Inc.,*
   329 F.2d 909 (9th Cir. 1964) ....................................................................6, 7

*Hinojos v. Kohl's Corp.,*
   718 F.3d 1098 (9th Cir. 2013) ...................................................................11

*In re Abbott Laboratories Norvir Antitrust Litig.,*
   No. C 04-1511 CW, 2007 WL 1689899 (N.D. Cal. June 11, 2007)..................20

*In re Ferrero Litig.,*
   2011 U.S. Dist. LEXIS 131533 (S.D. Cal. Nov. 15, 2011) ...........................20, 22

*In re Hyundai & Kia Fuel Econ. Litig.,*
   881 F.3d 679 (9th Cir. 2018) .....................................................................19

*In re Steroid Hormone Product Cases,*
   181 Cal.App.4th 145 (2010) .......................................................................22

*In re Tobacco II Cases,*
   46 Cal. 4th 298 (2009) ......................................................................9, 20, 21

*In re Yahoo Mail Litigation.,*
   308 F.R.D. 577 (N.D. Cal. 2015).................................................................16

*Jaclyn Waters v. Ferrara Candy Co.,*
   Case No. 4:17-cv-00197, Missouri Eastern District Court (Jan. 11, 2017) .......................25

v

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

*Jordan v. County of Los Angeles*,
    669 F.2d 1311 (9th Cir.1982) ............................................................................8

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) ..........................................................................6

*Khasin v. R. C. Bigelow, Inc.*,
    Case No. 12-cv-02204-WHO (N.D. Cal. Aug. 29, 2016)..................................15

*Keegan v. Am. Honda Motor Co., Inc.*,
    284 F.R.D. 504 (C.D. Cal 2012) .................................................................11, 19

*Kim v. Space Pencil, Inc.*,
    2012 WL 5948951 (N.D. Cal. November 28, 2012) .........................................16

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal.4th 1134 (2003) .....................................................................................23

*Lavie v. Procter & Gamble Co.*,
    105 Cal.App.4th 496 (2003) ..............................................................................20

*Lewis v. Robinson Ford Sales, Inc.*,
    156 Cal.App.4th 359 (2007) ................................................................................9

*Leyva v. Medline Industries, Inc.*,
    716 F.3d 510 (9th Cir.2013) ..............................................................................22

*Linder v. Thrifty Oil Co.*,
    23 Cal. 4th 429 (2000) ........................................................................................6

*Local Joint Exec. Bd. Of Culi-nary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) ...........................................................................18

*Lozano v. AT&T Wireless Servs.*,
    504 F.3d 718 (9th Cir. 2007) .............................................................................13

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) .............................................................................14

*Negrete v. Allianz Life Ins. Co. of North America*,
    238 F.R.D. 482 (C.D. Cal. 2006) .......................................................................25

*Pinon v. Tristar Prods., Inc.*,
    Case No. 1:16-cv-00331-DAD-SAB (E.D. Cal. Sept. 1, 2016)..........................14

*Ries v. Arizona Beverages USA LLC*,
    287 F.R.D. 523 (N.D. Cal 2012).........................................................................17

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

1

*Rodriguez v. Hayes,*
    591 F.3d 1105 (9th Cir. 2010) ........................................................................8

2

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) ........................................................................5

3

4

*Stearns v. Ticketmaster Corp.,*
    655 F.3d 1013 (9th Cir.2011) ........................................................18, 21, 22

5

6

*Turcios v. Carma Labs., Inc.,*
    296 F.R.D. 638 (C.D. Cal. 2014) ...............................................................7

7

*Valentino v. Carter-Wallace, Inc.,*
    97 F.3d 1227 (9th Cir. 1996) ........................................................................6

8

9

*Vasquez v. Superior Court,*
    4 Cal.3d 800 (1971) ................................................................................6, 9

10

11

*Victor v. R.C. Bigelow, Inc.,*
    Case No. 13-cv-02976-WHO (N.D. Cal. Aug. 29, 2016)........................15

12

*Victor v. R.C. Bigelow, Inc.,*
    708 F. App'x 333 (9th Cir. 2017) ................................................14, 15, 16

13

14

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011) ....................................................................... *passim*

15

16

*Walters v. Reno,*
    145 F.3d 1032 (9th Cir. 1998) ..............................................................8, 16

17

18

*Wiener v. Dannon Co.,*
    255 F.R.D. 658 (C.D. Cal 2009) ......................................................20, 22, 25

19

20

*Wolin v. Jaguar Land Rover N. Am., LLC,*
    617 F.3d 1168 (9th Cir. 2010) ........................................................................6

21

22

*Yoko-yama v. Midland Nat'l Life Ins. Co.,*
    594 F.3d 1087 (9th Cir.2010) ........................................................................22

23

*Yumul v. Smart Balance, Inc.,*
    733 F.Supp.2d 1117 (C.D.Cal.2010) ...........................................................11

24

25

*Zinser v. Accufix Research Inst., Inc.,*
    253 F.3d 1180 (9th Cir. 2001) ........................................................................24

26

27

28

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

## OTHER AUTHORITIES

7A Charles Alan Wright et al., Federal Practice & Procedure § 1775 (2d ed. 1986) ....................16

21 C.F.R. § 100.100 ............................................................................................ *passim*

Cal. Bus. & Prof. Code §17200 ...........................................................................2

Cal. Bus. & Prof. Code §17500 ...........................................................................2

Cal. Bus. & Prof. Code §12606.2 ......................................................... *passim*

Cal. Civ. Code §1750 .............................................................................................2

Cal. Civ. Code §1770 ..............................................................................21, 23

Cal. Civ. Code §1782 .............................................................................................4

Fed.R.Civ.P.12 ........................................................................................................4

Fed.R.Civ.P.15 ........................................................................................................4

Fed.R.Civ.P.23 .......................................................................... *passim*

Fed.R.Civ.P.30 ........................................................................................................4

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

## I.      INTRODUCTION

This is a consumer class action brought on behalf of purchasers of various "theater box" candy products sold at retail outlets and movie theaters throughout California; specifically, 5-oz. Jujyfruits, 5-oz. Lemonhead, 5.5-oz. Redhots, and 3.5-oz. Trolli (the "Products"). Plaintiff Thomas Iglesias ("Plaintiff") contends that Defendant Ferrara Candy Company ("Defendant" or "Ferrara") unlawfully packages each of the Products in opaque boxes too large for the amount of candy contained therein. The oversized boxes render much of the volume in these nontransparent boxes nonfunctional empty space, or "slack-fill," in violation of California and federal packaging laws, as well as California's consumer protection laws. Plaintiff contends that Defendant's oversized packaging falsely represents to consumers the quantity of candy and is a material issue to consumers that can be proven with common evidence. The fix is simple: shrink the box, fill the box, or add additional features to the box that eliminate the consumer deception. Plaintiff moves to certify an injunctive relief class and a damages class under Rules[1] 23(b)(2) and (b)(3).

## II.     FACTS AND PROCEDURAL BACKGROUND

The average consumer spends roughly 12 seconds to make an in-store purchasing decision, a decision which is heavily dependent on a product's package dimensions.[2] In fact, most consumers do not bother to look at label information, no less the net weight. *Id*. Faced with a larger box and a smaller box, both with the same amount of product inside, consumers are apt to choose the larger box because they perceive it is a better value. *Id*. at ¶¶ 5, 18.

### A.      The Parties

For the past 20 years, since completing his military service as a U.S. marine, Plaintiff Thomas Iglesias has worked at the facilities department of the City of San Francisco Parks and Recreation.[3] He resides in San Francisco with his wife, two kids, and his elderly father. *Id*. In 2016, he paid about $4.00 for a 5-oz. box of Jujyfruits at a movie theater in San Francisco to share

---

[1] References to any "Rule(s)" means the Federal Rules of Civil Procedure unless otherwise stated.
[2] See Expert Report of Dr. Forrest V. Morgeson at ¶ 17, Exhibit ("Ex.") B to the Declaration of Dr. Forrest V. Morgeson ("Morgeson Decl.").
[3] See Deposition Transcript of Thomas Iglesias ("Iglesias Tr.") 10:6-11:24, Ex. 1 to the Declaration of Ryan J. Clarkson ("RJC Decl.").

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

with his kids. Iglesias Decl. ¶¶ 4, 5. Plaintiff relied upon the size of the opaque box as part of his

purchase decision and expected to receive a quantity of candy proportionate to the size of the box.

*Id.* at ¶¶ 9-13. Instead, he received a roughly half-empty box of candy. RJC Decl. Ex. 1 (Iglesias

Tr.) at 63:5-20. Defendant manufactures the Products and is one of the largest confectionary

companies in the world with annual gross sales of ███████.[4]

### B.   Plaintiff's Claims

Plaintiff's first amended complaint ("FAC") (Dkt. 18) asserts three causes of action under

Business and Professions Code Section 17200, *et seq.*, the Unfair Competition Law ("UCL");

Business and Professions Code Section 17500, *et seq.*, the False Advertising Law ("FAL"); and

Civil Code Section 1750, *et seq.*, the Consumers Legal Remedies Act ("CLRA"). Plaintiff's

claims arise out of Defendant's deceptive Product packaging and the presence of nonfunctional

slack-fill contained therein. FAC (Dkt. 18) ¶¶ 99, 115, 169. Plaintiff contends the following:

California and federal law prohibit food containers from being "made, formed, or filled as

to be misleading." FAC ¶ 136; Cal. Bus. & Prof. Code § 12606.2; 21 C.F.R. § 100.100. An

opaque, or non-transparent, container "shall be considered to be filled as to be misleading if it

contains nonfunctional slack-fill." FAC ¶ 101. "Slack-fill is the difference between the actual

capacity of a container and the volume of product contained therein." FAC ¶ 16. Nonfunctional

slack-fill is the empty space in a package that is filled substantially less for reasons other than six

enumerated reasons permitted under these statutes. FAC ¶ 17. Here, each respective Product

throughout the Class Period[5] has been packaged in identical opaque cardboard theater boxes, and

has been made, formed, and filled in the exact same way.[6] Each respective Product therefore

contains a uniform amount of slack-fill and, more specifically, uniform amounts of functional and

nonfunctional slack-fill, respectively. FAC ¶ 38. Thus, proof that one unit of a Product (e.g., 5-oz.

Jujyfruits) contains nonfunctional slack-fill shall constitute proof as to all units of that Product.

**Count I (Violation of the CLRA).** Defendant's business practice of manufacturing and

selling the Products in oversized, opaque packaging with substantial nonfunctional slack-fill

---

[4] See Michael Sayles Deposition Transcript ("Sayles Tr.") 70:7-71:3, Ex. 2 to RJC Decl.
[5] The "Class Period" is February 21, 2013 through the present.
[6] See Deposition Transcript of Michael Murray ("Murray Tr.") 69:14-73:20; Ex. 3 to RJC Decl.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

violates the CLRA by, among other things, misrepresenting the approval of the Products as compliant with 21 C.F.R. Section 100.100 and California Business and Professions Code Section 12606.2 and using deceptive representations in connection with the Products. FAC ¶ 99.

**Count II (Violation of the FAL).** Defendant's business practice of manufacturing and selling the Products in oversized, opaque packaging with substantial nonfunctional slack-fill violates the FAL as a misleading dissemination of an advertising device. FAC ¶ 115.

**Count III (Violation of the UCL).** Defendant's business practice of manufacturing and selling the Products in oversized, opaque packaging with substantial nonfunctional slack-fill violates the UCL as follows: First, in violation of the "unlawful" prong, Defendant's inclusion of substantial nonfunctional slack-fill in the Products' opaque packaging violates federal and California slack-fill laws. FAC ¶ 136. Second, in violation of the "unfair" prong, the financial injury caused by Defendant's packaging outweighs any benefits provided to consumers, and said injury is one that consumers could not reasonably avoid. FAC ¶ 139. Third, in violation of the "fraudulent" prong, Defendant's conduct is likely to deceive members of the public. FAC ¶ 158.

Expectedly, Defendant's primary focus is sales—adherence to California and federal consumer protection and slack-fill laws is a mere after-thought. Defendant ███████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████

While the reasonable consumer expects the Products to contain only about 33% slack-fill,[8] Defendant's Products contain substantially more than that: 57.4% in Jujyfruits; 55.8% in Lemonhead, 47.5% in Redhots, and a whopping 72.2% in Trolli.[9]

---

[7] RJC Decl. Ex. 3 (Murray Tr.) 240:13-241:12 ███████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████ ).

[8] Drs. Justin Lenzo & Michael Bechtel Expert Report ¶ 25, Lenzo Decl. Ex. B.

[9] Dr. Claire Sand Expert Report at 28, Tbl. 11, Sand Decl. Ex. B.

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

### C.     The Proposed Class

Plaintiff moves to certify an injunctive relief class and a damages class under Rules 23(b)(2) and (b)(3) defined below (the "Class"):

> All persons who purchased opaque boxes of 5-oz. Jujyfruits, 5-oz. Lemonhead, 5.5-oz. Redhots, and 3.5-oz. Trolli in California for personal use and not for resale during the time period February 21, 2013, through the present. Excluded from the Class are Defendants' officers, directors, and employees, and any individual who received remuneration from Defendants in connection with that individual's use or endorsement of the Product. See FAC (Dkt. 18) ¶ 78.

### D.     Procedural History

On February 21, 2017, Plaintiff filed his class action complaint in the U.S. District Court for the Northern District of California (Dkt. 1). Prior thereto, Plaintiff provided notice to Defendant pursuant to Civil Code Section 1782(a). RJC Decl. ¶ 3. On April 19, 2017, Defendant filed a Rule 12(b)(6) motion to dismiss Plaintiff's complaint (Dkt. 14). On May 10, 2017, Plaintiff filed his FAC pursuant to Rule 15(a) (Dkt. 18). On May 24, 2017, Defendant filed a Rule 12(b)(6) motion to dismiss the FAC (Dkt. 28), which Plaintiff opposed on June 7, 2017 (Dkt. 34), and to which Defendant replied on June 14, 2017 (Dkt. 37). On July 25, 2017, the Court denied Defendant's motion to dismiss (Dkt. 40). On August 8, 2017, Defendant answered Plaintiff's FAC (Dkt. 41). In the ensuing months, the parties engaged in substantial discovery. RJC Decl. ¶ 4. On October 10, 2017, the parties attended a mediation in San Francisco, California. *Id.* ¶ 5. On November 13, 2017, Defendant took Plaintiff's deposition. *Id.* ¶ 6. On November 15, 2017, the parties briefed Plaintiff's motion to compel information and documents in a joint letter (Dkt. 47), which the Court granted on November 29, 2017 (Dkt. 48). On December 19-21, 2017, Plaintiff traveled to Chicago, Illinois to take Defendant's Rule 30(b)(6) depositions. RJC Decl. ¶ 8. On February 7, 2017, the parties attended a second mediation in San Francisco, California. *Id.* ¶ 11.

### E.     The Products' Packaging at Issue

The following chart represents that key measurements[10] of the Products at issue:

---

[10] See Sand Decl. Ex. B, pp. 24, 28, 42, 43, Tbls. 6, 11, 18, 20. Plaintiff's FAC (Dkt. 18) avers the amount of nonfunctional slack-fill in the Products is 41%; however, where that number differs from Dr. Sand's calculations, Plaintiff defers to her. Plaintiff shall amend the pleadings to conform to the evidence, if and/or when necessary. RJC Decl. ¶ 12.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

| Product | Length (cm) | Width (cm) | Depth (cm) | Net Weight (oz.) | Candy Volume (%) | Slack-Fill (%) | Nonfunctional Slack-Fill (%) |
|---|---|---|---|---|---|---|---|
| **Jujyfruits** | 8.2 | 1.9 | 13.7 | 5.0 | 42.6 | **57.4** | **20.8** |
| **Lemonheads** | 8.2 | 1.9 | 13.7 | 5.0 | 44.2 | **55.8** | **19.5** |
| **Redhots** | 8 | 1.9 | 13.7 | 5.5 | 52.5 | **47.5** | **12.3** |
| **Trolli** | 9.2 | 2.2 | 15.1 | 3.5 | 27.8 | **72.2** | **41.3** |

### F.    Sales and Distribution of the Products

As of August 2017, Defendant had grossed over $⬛ in California alone based on its sales of the Products during the Class Period at multi outlets and convenience stores only. [11] This figure does not even include movie theater sales, and discovery continues on that issue. *Id*. Defendant's net sales figures for its theater box candy sold during the Class Period nationwide is over $⬛. RJC Decl. Ex. 2 (Sayles Tr.) 46:7-47:12. The suggested retail price ("SRP") for the Products is around $⬛ per unit, equating roughly to ⬛ units purchased by likely millions of California consumers during the Class Period. *Id*. at 113:3-114:11.

## III.   LEGAL STANDARD FOR CLASS CERTIFICATION

Rule 23 provides the standard for certification of a class action. *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508-09 (9th Cir. 1992). Rule 23 has two sets of requirements: plaintiffs must meet all of the requirements under Rule 23(a) and must also satisfy at least one of the Rule 23(b) prongs. *Id.* Class certification presents a procedural issue and not a merits determination. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.") The court may consider evidence which goes to the requirements of Rule 23, but should not weigh competing evidence. *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003). Consumer protection claims are ideal for class certification and any doubt as to the propriety of certification should be resolved in favor of

---

[11] Defendant produced a sales spreadsheet bates stamped FERRARA0000232 in discovery, which indicates ⬛ RJC Decl. ¶ 13. ⬛ *Id*.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

certifying the class. See, e.g., *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997); *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913 (9th Cir. 1964); *Vasquez v. Superior Court*, 4 Cal.3d 800, 808 (1971).

## IV.   CERTIFICATION HERE MEETS THE INTENT AND OBJECTIVE OF RULE 23.

In crafting Rule 23, the U.S. Supreme Court explained that "the Advisory Committee had in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem Prods., Inc*, 521 U.S. at 617. Indeed, "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Datta v. Asset Recovery Sols., LLC*, No. 15-CV-00188-LHK, 2016 U.S. Dist. LEXIS 36446, at *24 (N.D. Cal. Mar. 18, 2016); *Just Film, Inc. v. Buono,* 847 F.3d 1108, 1123–1124 (9th Cir. 2017) (citing to *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)) ("The court concluded that the 'risks, small recovery, and relatively high costs of litigation' make it unlikely that plaintiffs would individually pursue their claims. These considerations are at the heart of why the Federal Rules of Civil Procedure allow class actions in cases where Rule 23's requirements are satisfied. This case vividly points to the need for class treatment. The individual damages of each merchant are too small to make litigation cost effective in a case against funded defenses and with a likely need for expert testimony. The district court also found that class action was superior because litigation on a class wide basis would promote greater efficiency in resolving the classes' claim."); *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."). Furthermore, it is the express judicial policy of California to encourage the use of the class action device. See *Vasquez,* 4 Cal.3d at 807; Courts are to resolve any doubt whether to certify a class in favor of certification due to California's strong policy in favor of the class action procedure. *Id*. at 821; see *Linder v. Thrifty Oil Co*., 23 Cal. 4th 429, 434 (2000). Class actions are particularly favored and encouraged in the area of consumer law. *Vasquez*, 4 Cal.3d at 808.

///

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

Here, class certification will meet the Ninth Circuit's and Rule 23's objective of vindicating the rights of consumers who have been misled and financially harmed by large corporations like Defendant, but separately lack the necessary resources to pursue an individual action. In the instant resource-intensive, expert-driven case, each consumer's individual damages would not justify the time and expense of bringing separate actions.

## V.     PLAINTIFF SATISFIES ALL REQUIREMENTS UNDER RULE 23.

### A.     Plaintiff Satisfies the Prerequisites of Rule 23(a).

"[Rule] 23(a) states four threshold requirements applicable to all class actions: (1) numerosity (a class so large that joinder of all members is impracticable); (2) commonality (questions of law or fact common to the class); (3) typicality (named parties' claims or defenses are typical of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class)." Fed. R. Civ. P. 23; *Hanon,* 976 F.2d at 508.

#### 1.     *Numerosity*

Rule 23(a)(1) requires the class to be so numerous that joinder of individual class members is impracticable. Fed. R. Civ. P. 23(a)(1). "Impracticability does not mean impossibility, [however,] ... only ... difficulty or inconvenience in joining all members of the class." *Harris*, 329 F.2d at 913–14. There is no set numerical cutoff used to determine whether a class is sufficiently numerous. *Turcios v. Carma Labs., Inc.*, 296 F.R.D. 638, 641 (C.D. Cal. 2014) (numerosity satisfied with only 39 potential class members).

As of August 2017, Defendant had grossed over $███████ in California alone based on its sales of the Products during the Class Period at multi outlets and convenience stores only—this figure does not even include movie theater sales, and discovery is ongoing.[12] Defendant's net sales figures for its theater box candy sold during the Class Period nationwide is over $██████. RJC Decl. Ex. 2 (Sayles Tr.) 46:7-47:12. ███████████████████████████████ ███████████, equating roughly to ██████ units purchased by likely millions of California consumers during the Class Period. *Id*. at 113:3-114:11. Thus, the Class is sufficiently numerous. ///

---

[12] RJC Decl. ¶ 14.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

2.    *Commonality*

The commonality requirement "serves chiefly two purposes: (1) ensuring that absentee members are fairly and adequately represented; and (2) ensuring practical and efficient case management." *Walters v. Reno*, 145 F.3d 1032, 1045 (9th Cir. 1998); *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010). Commonality requires "questions of law or fact common to the class." Fed. R. Civ. Proc. 23(a)(2). The commonality requirement is construed liberally and permissively, and the existence of some common legal and factual issues is sufficient. *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1320 (9th Cir.1982). As the Ninth Circuit has noted: "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998) (emphasis added). The putative class' "claims must depend upon a common contention.... That common contention, moreover, must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Although for purposes of Rule 23(a)(2) even a single common question is sufficient. *Id*. at 2556. "What matters to class certification ... is not the raising of common 'questions'— even in droves—but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id*. at 2551.

Here, the commonality element is satisfied because the claims pose a few key common questions: (1) whether the Products' opaque packaging is unlawful, unfair, fraudulent, or likely to deceive the reasonable consumer, where it contains less candy (and more empty space) than consumers expected; (2) whether the size of the Products' boxes is material to Plaintiff and class members in deciding to purchase the Products; (3) whether the Products contain nonfunctional slack-fill in violation of California Business and Professions Code Section 12606.2 or 21 C.F.R. Section 100.100; and (4) whether Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole.

///

8

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

Because all class members purchased the same Products, were exposed to the same packaging, and received the same amount of candy (and slack-fill), there is "a common core of salient facts." *Hanlon*, 150 F.3d at 1019. Further, the six exceptions used to determine when slack-fill is functional uniformly applies across all units of each respective Product. As such, if Plaintiff proves that one unit of a 5-oz. box of Jujyfruits contains substantial nonfunctional slack-fill, then that will be true of every 5-oz. box of Jujyfruits. This will resolve "in one stroke" an issue that is "central to the validity" of each class member's claims, i.e., whether the Products' packaging violated California and federal packaging laws and, by extension, California's consumer protection laws. *Wal-Mart Stores*, 131 S. Ct. at 2551.

Common legal issues include such basic questions such as whether the misrepresentations are material as required by the CLRA. *Lewis v. Robinson Ford Sales, Inc.*, 156 Cal.App.4th 359, 368 (2007); *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009) ("[A] presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material" only to named plaintiffs, and not to all class members. Thus, only a named plaintiff is required to show that "the defendant's misrepresentation is an 'immediate cause' of the plaintiff's conduct."); *Vasquez,* 4 Cal. 3d at 814 ("[I]f the trial court finds material misrepresentations were made to the class members, at least an inference of reliance would arise as to the entire class.").

Plaintiff is one of numerous consumers who has materially relied on the Products' packaging to his detriment as confirmed by the numerous ███████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ████████████████████████████████████████. According to Plaintiff's marketing expert, Dr. Forrest Morgeson, consumers of perishable low-priced products are less likely to complain to the manufacturer of the products, despite being misled and damaged. Morgeson Report ¶¶ 6-16. In fact, "…research has indicated that only one dissatisfied customer in 20 – or only 5% of unhappy customers – formally complain (Downton 2002; TARP 1986)." *Id.* ¶

---

[13] Defendant produced a spreadsheet in discovery bates stamped FERRARA0005689 detailing the ███████████████ during the Class Period regarding ███████████████. RJC Decl. ¶ 15.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

6. Thus, ███████████████████████████████████████

█████████████████████████ do not accurately depict the true number of consumers who

considered the Products' packaging size and the amount of nonfunctional slack-fill therein

material—the actual number is likely more than 20 times greater. *Id.*

According to Dr. Morgeson, consumers rely on the size of the Products' packaging and

consider it material to their purchasing decisions.[14] Dr. Morgeson also confirms that consumers

rely on the size of a product's packaging to accurately reflect the amount of product contained

therein and would not expect nonfunctional slack-fill. *Id.* In fact, Plaintiff's experts found that

consumers on average expect the Products to be filled 67% based on the size of the Products'

box.[15] However, the actual fill level is much less. For instance, the volume of candy in a 5-oz box

of Jujyfruits is only 42.6%.[16] This establishes that consumers are deceived by the Products' size

because they receive far less then what they expect to receive. *Id.*; Morgeson Decl. Ex. B ¶ 18.

Moreover, through Plaintiff's economist and conjoint analysis experts, Plaintiff has

*already* proven that the oversized packaging and nonfunctional slack-fill within the Products

constitutes a material misrepresentation to the Class.[17] Defendant sold the Products in oversized,

opaque packaging which included substantial nonfunctional slack-fill.[18] Plaintiff and class

members expected more candy than they received. See Lenzo Decl. Ex. B ¶ 25.

---

[14] Morgeson Decl. Ex. B ¶ 18 ("Specifically, consumers have consistently been found to rely on the dominant human sense (vision) and 'visual heuristics' to estimate the expected volume of a product (a process that, to complete accurately, would require measurement instruments and geometry), and more particularly to assume that a product will have a larger volume if a package is taller (height) and/or elongated. Moreover, consumers expect package size to accurately represent the quantity of the good being purchased. In a recent study highly applicable to the current context – focused on similar consumer goods (chocolate confections) in a similar market (the United Kingdom) – researchers found that 'slack fill' was generally not something consumers knew about prior to experiencing it (Wilkins et al. 2016)."); Lenzo Decl. Ex. B ¶¶ 24-25, 69.
[15] Lenzo Decl. Ex. B ¶¶ 25, 99.
[16] Sand Decl. Ex. B p. 28, Tbl. 11 (The actual slack-fill in 5-oz box of Jujyfruits is 57.4%. The actual volume of product in the box is calculated by subtracting .426 from 1).
[17] See Lenzo Decl. Ex. B ¶¶ 24-25 (Based on survey of 3,788 participants, "[w]hen showing respondents a box of candy, three out of four consumers expect a fill-level that exceeds the box's actual fill-level."); *Id.* ¶ 69 ("As box size increases, the consumer expects to receive a larger amount of the product, thereby increasing the likelihood of the product being purchased); *Id.* ¶ 27 ("…[C]onsumers prefer candy that have higher fill-levels even when other product attributes such as price or amount are fully specified and kept constant. . . . [I]nforming consumers that a box of candy is less than full at the point of sale would reduce the willingness to buy.")
[18] Dr. Sand opines that the slack-fill in the Products is nonfunctional under the six exceptions in 21 C.F.R. § 100.100 & Cal. Bus. & Prof. Code § 12606.2. Sand Decl. Ex. B at 30-52.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

1    This material misrepresentation (and deception) was consistent across California

2    throughout the Class Period. RJC Decl. Ex. 3 (Murray Tr.) at 69:14-73:20. Accordingly, the

3    claims of all class members "stem from the same source." *Hanlon*, 150 F.3d at 1019-1120. As a

4    result, certifying this case as a class action "will generate common *answers* apt to drive the

5    resolution of the litigation" and address questions common to Plaintiff and the Class. *Wal-Mart*

6    *Stores*, 131 S. Ct. at 2551. For instance, adding more candy to, shrinking, or adding features to the

7    boxes would eliminate consumer deception and, in turn, resolve questions common to the Class.

8    Claims under the UCL, FAL, and CLRA are ideal for class certification because they will

9    not require the court to investigate "class members' individual interaction with the product."

10   *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 535 (C.D.Cal.2011); *Yumul v. Smart*

11   *Balance, Inc*., 733 F.Supp.2d 1117, 1125 (C.D.Cal.2010) ("California courts have held that

12   reasonable reliance is not an element of claims under the UCL, FAL, and CLRA."). For this

13   reason, district courts in California routinely certify consumer class actions arising from alleged

14   violations of the UCL, FAL, and CLRA.[19] Therefore, since Plaintiff relied on Defendant's Product

15   packaging in making his purchase, then that reliance is true of all class members, thereby

16   satisfying the commonality requirement.[20]

17   According to the Ninth Circuit, another way to establish material misrepresentations is to

18   show "the maker of the representation knows or has reason to know that its recipient regards or is

19   likely to regard the matter as important in determining his choice of action." *Hinojos v. Kohl's*

20   *Corp*., 718 F.3d 1098, 1107 (9th Cir. 2013). Here, Defendant has █████████████████████

21   ████████████████████████████████████████████████████████████████████████

22   ████████████████. RJC Decl. Ex. 3 (Murray Tr.) 52:9-53:10, 60:13-61:2, 135:5-137:16. Yet,

23   ████████████████████████████████████████████████████

24   ─────────────────────

25   [19] See e.g., *Keegan v. Am. Honda Motor Co., Inc*., 284 F.R.D. 504 (C.D. Cal 2012) (certifying "a
     California UCL/CLRA class of purchasers" of vehicles); *Bruno v. Eckhart Corp*., 280 F.R.D. 540,
26   547 (C.D.Cal.2012) (denying reconsideration of class certified under California's UCL, FAL, and
     CLRA); *Chavez v. Blue Sky Natural Beverage Co*., 268 F.R.D. 365, 375–80 (N.D.Cal.2010)
27   (Walker, J.) (certifying class under California's CLRA and UCL).
     [20] Iglesias Decl. ¶¶12, 13 ("I was misled by the size of the box and lost money because I did not
28   receive the amount of candy I expected based on the size of the box. In reliance upon Defendant's
     false, misleading, and deceptive Product packaging, I lost money that I would otherwise have not
     spent.")

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION



and continues to manufacture the Products in the same way. *Id*. at 135:5-137:2. Defendant also continues to claim that its slack-fill is functional based on its ▮▮▮▮▮ which requires Defendant to ▮▮▮▮▮ *Id*. at 141:21-142:14 ("Q: ▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮."). Defendant further admits that it ▮▮▮▮▮. *Id*. at 183:8-21 ("Q: Mr. Murray, for the current ▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮.").

3.   *Typicality*

The typicality requirement looks to whether "the claims of the class representatives [are] typical of those of the class, and [is] 'satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). "Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive' with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. In other words, typicality is established where the class was injured through an alleged common practice. *Id*.; *California Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990). Plaintiff need only show that defendant made a misrepresentation or engaged in an unfair practice that was typical across the class, and that Plaintiff and class members were injured. See *Astiana v. Kashi Co*., 291 F.R.D. 493, 502 (S.D. Cal. 2013) ("Defendant argues that the differences in Plaintiffs'

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

perceptions and knowledge about Kashi products, as well as differences in their preferences and reasons for purchasing Kashi products, render them atypical of the proposed classes. 'In determining whether typicality is met, the focus should be 'on the defendants' conduct and the plaintiffs' legal theory,' not the injury caused to the plaintiff.'") (internal citation omitted).

Typicality is satisfied here, as Plaintiff's and Class members' claims are similarly based on Defendant's use of oversized, opaque candy boxes containing substantial nonfunctional slack-fill. RJC Decl. Ex 3 (Murray Tr.) 69:14-73:20. As such, Plaintiff and all Class members suffered the same harm. Iglesias Decl. ¶¶ 12, 13; Lenzo Decl. Ex. B ¶ 29. Therefore, since the issues in this case arise from the same course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory, Plaintiff's claims are typical. *Lozano v. AT&T Wireless Servs.*, 504 F.3d 718, 721 (9th Cir. 2007).

### 4.    *Adequate Representation*

The adequacy of representation requirement set forth in Rule 23(a)(4) involves a two-part inquiry: "(1) do the named plaintiff [ ] and [her] counsel have any conflicts of interest with other class members and (2) will the named plaintiff[ ] and [her] counsel prosecute the action vigorously on behalf of the class?" *Hanlon,* 150 F.3d at 1020. "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).

The interests of Plaintiff and the Class are fully aligned in determining whether Defendant deceived reasonable consumers with its oversized Product packaging and confirming that said packaging contains nonfunctional slack-fill. Plaintiff has worked with her counsel and fully understands the responsibilities and obligations that go along with serving as class representatives in this matter. Iglesias Decl. ¶ 15. To date, Plaintiff has actively participated in every step of this case, including responding to discovery, reviewing and approving relevant documents, and appearing for deposition. *Id*. Further, Plaintiff retained counsel with significant experience in prosecuting large consumer fraud class actions who should be appointed Class Counsel. See Firm Resume, RJC Decl. Ex. 4. Plaintiff meets the adequacy requirement.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

**B.      THE REQUIREMENTS OF RULE 23(B)(2) ARE SATISFIED.**

In addition to the prerequisites set forth in Rule 23(a), a class must also constitute one of the types of classes under Rule 23(b). Under Rule 23(b)(2), "[a] class action may be maintained if Rule 23(a) is satisfied and if … the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Plaintiff meets this standard.

**1.      Plaintiff Has Article III Standing.**

"[S]tanding requires that (1) the plaintiff suffered an injury in fact ... (2) the injury is fairly traceable to the challenged conduct, and (3) the injury is likely to be redressed by a favorable decision." *Mazza v. Am. Honda Motor Co*., 666 F.3d 581, 594-95 (9th Cir. 2012) (quoting *Bates v. United Parcel Svc., Inc*., 511 F.3d 974, 985 (9th Cir. 2007)). Although there was a split[21] in the Ninth Circuit as to when Article III standing is satisfied to award injunctive relief, two recent Ninth Circuit cases, *Davidson* and *Bigelow*, discussed *infra*, work in tandem to help resolve this split and confirm that Plaintiff has standing to seek injunctive relief under Rule 23(b)(2). *Davidson v. Kimberly-Clark Corp*., 873 F.3d 1103, 1116 (9th Cir. 2017); *Victor v. R.C. Bigelow, Inc*., ("*Bigelow*") 708 F. App'x 333 (9th Cir. 2017).

In *Davidson*, the plaintiff filed a false advertising suit seeking injunctive relief under the UCL, CLRA, and FAL against a hygiene product manufacturer who advertised its wipes as "flushable" when they actually were not. *Davidson,* 873 F.3d at 1103. The court looked to plaintiff's allegations to determine whether she had Article III standing to seek injunctive relief. *Id*. The court noted that, "Davidson alleged that she 'continues to desire to purchase wipes that are suitable for disposal in a household toilet'; 'would purchase truly flushable wipes manufactured by [Kimberly-Clark] if it were possible'; 'regularly visits stores . . . where [Kimberly-Clark's] 'flushable' wipes are sold'; and is continually presented with Kimberly-Clark's flushable wipes packaging but has 'no way of determining whether the representation 'flushable' is in fact true.'"

---

[21] See *Pinon v. Tristar Prods., Inc*., No. 1:16-cv-00331-DAD-SAB, 2016 U.S. Dist. LEXIS 118611, 2016 WL 4548766, at *4 (E.D. Cal. Sept. 1, 2016) ("The Ninth Circuit has not addressed the specific question . . . [and] district courts within this circuit are divided about whether a plaintiff seeking to bring injunctive relief claims over deceptive labeling can establish Article III standing once they are already aware of an alleged misrepresentation.").

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

*Id.* at 1116. The court held that it is "required at this stage of the proceedings to presume the truth of plaintiff's allegations and to construe all of the allegations in her favor" and ruled "that Davidson's allegation that she has "no way of determining whether the representation 'flushable' is in fact true" when she "regularly visits stores …where Defendants' 'flushable' wipes are sold'" constitutes a 'threatened injury [that is] certainly impending,' thereby establishing Article III standing to assert a claim for injunctive relief." *Id.*

*Bigelow* expands on *Davidson*. There, the plaintiffs asserted causes of actions under the UCL, FAL, and CLRA seeking injunctive relief because defendant allegedly mislabeled its tea products by including phrases like "healthy antioxidants."[22] However, the court held that the plaintiffs do not have standing to seek injunctive relief because they do not face a threat of future harm. *Victor, supra*, 708 F. App'x 333, 334 (9th Cir. 2017). The court's holding was based on plaintiffs only buying "Bigelow tea again *only if they receive an injunction first*" and that "[t]hey will not consider purchasing *even those teas with updated packaging that they acknowledge is accurate and resolves their concerns*." *Id.* (emphasis added). Accordingly, "[b]ecause they will not consider buying even properly labeled tea until they receive an injunction, [plaintiffs] will not be harmed by wondering if the tea is still mislabeled or by buying the tea without knowing if it is still mislabeled. [Plaintiffs] do not face a real or immediate risk of being harmed again in the same manner and so lack Article III standing to seek injunctive relief." *Id.*

This case mirrors *Davidson* and is distinguishable from *Bigelow*. Here, Plaintiff declared that he purchased the Product at the movies to eat with his kids and that he's seen Defendant's products on sale at the movies every time he is there. Iglesias Decl. ¶¶ 4-10. Plaintiff was misled by the size of the Product's opaque packaging and was economically injured because he did not receive an amount of candy he expected to receive based on the size of the packaging. *Id.* at ¶¶ 11-13. Plaintiff further testified to the *opposite* of the *Bigelow* plaintiffs: that he *would buy* the Products again if Defendant were to decrease the size of the box or include more candy in the current box. RJC Decl. Ex.1, 108: 20-109:8. Regardless, Plaintiff foresees purchasing Defendant's

---

[22] See *Victor v. R.C. Bigelow, Inc.*, No. 13-cv-02976-WHO, 2016 U.S. Dist. LEXIS 115845, at *1 (N.D. Cal. Aug. 29, 2016); *Khasin v. R. C. Bigelow, Inc.*, No. 12-cv-02204-WHO, 2016 U.S. Dist. LEXIS 115850, at *1 (N.D. Cal. Aug. 29, 2016).

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

1  Products again when he goes to the movies with his kids but will not know how much empty

2  space is in the opaque packaging, let alone how much of that space is nonfunctional, by just

3  looking at the packaging alone and will always have to wonder whether the package is filled with

4  candy that's commensurate to the size of the box. Iglesias Decl. ¶ 14. This mirrors the plaintiff in

5  *Davidson* who wants to purchase the wipes but has "no way of determining whether the

6  representation 'flushable' is in fact true" when she "regularly visits stores …where Defendants'

7  'flushable' wipes are sold." *Davidson, supra*, 873 F.3d at 1116. Therefore, like the plaintiff in

8  *Davidson*, and unlike in *Bigelow*, Plaintiff faces a "real or immediate risk of being harmed again"

9  because he has no way of knowing the amount of slack-fill in Defendant's Products from the

10  Products' opaque packaging until he purchases and opens the Product, and therefore, a "threatened

11  injury [is] certainly impending." *Id.*; *Victor,* 708 F. App'x at 333, 334. Accordingly, in line with

12  the Ninth Circuit and the objective[23] of California's consumer protection laws, Plaintiff has the

13  requisite Article III standing for injunctive relief.

14

15              2.    *Plaintiff and the Class Complain of Standardized Uniform Conduct
                       Applicable to the Entire Class.*

16        The Ninth Circuit has held that for a Rule 23(b)(2) class to be certified, it is sufficient if

17  class members complain of a practice that is generally applicable to the class as a whole. *Walters*,

18  145 F.3d at 1047 (9th Cir. 1998); See 7A Charles Alan Wright et al., Federal Practice & Procedure

19  § 1775 (2d ed. 1986) ("All the Class members need not be aggrieved by or desire to challenge the

20  defendant's conduct in order for some of them to seek relief under Rule 23(b)(2)."); *In re Yahoo*

21  *Mail Litigation* (N.D. Cal. 2015) 308 F.R.D. 577, 599; *Kim v. Space Pencil, Inc*., 2012 WL

22  5948951, at *2 (N.D. Cal. November 28, 2012).

23  _____

24  [23] "Were injunctive relief unavailable to a consumer who learns after purchasing a product that the
    product's label is false, California's consumer protection laws would be effectively gutted, as
    defendants could remove any such case. *Machlan*, 77 F. Supp. 3d at 961. As the district court in

25  *Machlan* explained, by finding that these plaintiffs fail to allege Article III standing for injunctive
    relief, we risk creating a 'perpetual loop' of plaintiffs filing their state law consumer protection

26  claims in California state court, defendants removing the case to federal court, and the federal
    court dismissing the injunctive relief claims for failure to meet Article III's standing requirements.

27  *Id*. On our Article III standing analysis, fully supported for the reasons we have explained by
    established standing principles, this 'perpetual loop' will not occur." *Davidson v. Kimberly-Clark*

28  *Corp*., 873 F.3d 1103, 1115-16 (9th Cir. 2017)

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

As discussed *supra*, Plaintiff and Class members complain of standard and uniform practices in the form of unfair, unlawful, and deceptive conduct by Defendant that is generally applicable to the Class as a whole.

> 3.     *Plaintiff Seeks Injunctive Relief That Would Benefit Each Class Member.*

"The key to the (b)(2) class is 'the indivisible nature of the injunctive…remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart Stores*, 131 S. Ct. at 2557 (citation omitted). "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id.*; *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 591-92 (C.D. Cal. 2011) (Rule 23(b)(2) class certified where commonality as to representations about medicine's efficacy and injunction prohibiting such representations would "provide relief to each member of the class") (citing *Wal-Mart*, 131 S.Ct. at 2557); see also, *Ries v. Arizona Beverages USA*, 2012 WL 5975247, at *17-18 (N.D. Cal 2012) (granting (b)(2) certification of UCL and CLRA claims where class sought injunctive relief to rectify false advertising on packaging).

Plaintiff seeks injunctive relief prohibiting Defendant from continuing to engage in deceptive, misleading, unlawful, unfair practices, by either increasing the amount of candy pieces in each Product's box, shrinking the box, or adding features to the box to eliminate the consumer deception as to the nonfunctional slack-fill contained therein. Plaintiff also seeks punitive damages which are sufficiently "incidental" and do not turn on the individual circumstances of class members. *Ries,* 287 F.R.D. at 541. Such equitable relief will benefit every class member.

Defendant is capable of adding more candy product, changing the dimensions of its Product packaging, and/or adding features to the boxes to account for the nonfunctional slack-fill therein and cease its misleading and unlawful conduct. RJC Decl. Ex. 3 (Murray Tr.) 240:13-241:12 (███████████████); *Id.* at 176:13-176:19 ("Q: █████████████████████████████████████████████████████████████████ ██████████████████████████████████████.") Accordingly, injunctive relief is necessary to prevent any future harm to consumers who purchase the Products. Absent injunctive

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

1    relief, Defendant will continue to sell its deceptively packaged Products with impunity. As

2    confirmed by the court in *Cruz v. PacifiCare Health Systems, Inc*., 30 Cal.4th 303 (2003), the

3    statutory remedies available for a violation of the CLRA, UCL, and FAL include public injunctive

4    relief, i.e., injunctive relief whose primary purpose and effect is prohibiting unlawful acts that

5    threaten future injury to the general public. *Id*. at 315-16. Therefore, certification pursuant to Rule

6    23(b)(2) is appropriate here.

7         **C.     THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED.**

8         Rule 23(b)(3) certification is appropriate here because: (i) questions of law or fact common

9    to the members of the class predominate over any questions affecting only individual members;

10   and (ii) a class action is superior to other available methods for the fair and efficient adjudication

11   of the controversy. *Local Joint Exec. Bd. Of Culi-nary/Bartender Trust Fund v. Las Vegas Sands,*

12   *Inc.*, 244 F.3d 1152, 1162-63 (9th Cir. 2001).

13             *1.     Common Issues of Law or Fact Predominate.*

14        "Predominance is a test readily met in certain cases alleging consumer [fraud]." *Amchem*,

15   521 U.S. at 625. In evaluating whether common issues predominate over individual issues, the

16   class-wide issues should constitute a significant aspect of the case. The requirement demands only

17   predominance of common questions, not exclusivity or unanimity of them. Rule 23(b)(3); see also

18   *Gartin v. S&M NuTec, LLC*, 245 F.R.D. 429, 435 (C.D. Cal. 2007) ("When one or more of the

19   central issues in the action are common to the class and can be said to predominate, [a class

20   action] will be considered proper ... even though other matters will have to be tried separately.").

21   Where, as here, "common questions present a significant aspect of the case and they can be

22   resolved for all members of the class in a single adjudication, there is clear justification for

23   handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at

24   122 (internal quotations omitted).

25        Indeed, liability pursuant to California's UCL, FAL, and CLRA all require a determination

26   of whether the reasonable consumer is likely to be deceived, not whether any individual was

27   actually deceived—a common issue that does not require individualized inquiry. See *Stearns v.*

28   *Ticketmaster Corp*., 655 F.3d 1013, 1022 (9th Cir.2011) (holding that, under CLRA, "[c]ausation,

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

18

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

1   on a classwide basis, may be established by materiality," meaning that "[i]f the trial court finds

2   that material misrepresentations have been made to the entire class, an inference of reliance arises

3   as to the class"); *Id.* (A misrepresentation is material if "a reasonable man would attach

4   importance to its existence or nonexistence in determining his choice of action in the transaction

5   in question…If the misrepresentation ... is not material as to all class members, the issue of

6   reliance would vary from consumer to consumer and the class should not be certified."). For this

7   reason, district courts in California routinely certify consumer class actions arising from alleged

8   violations of the CLRA, FAL, and UCL. See e.g., *Keegan v. Am. Honda Motor Co., Inc*., 284

9   F.R.D. 504 (certifying "a California UCL/CLRA class of purchasers" of vehicles); *Bruno,* 280

10  F.R.D. at 547 (C.D. Cal. 2012) (denying reconsideration of nationwide class certified under

11  California's UCL, FAL, and CLRA and noting that "[d]istrict courts routinely apply the ...

12  California Consumers Legal Remedies Act (CLRA) and Unfair Competition Law (UCL) ... to

13  nationwide classes"*); Chavez v. Blue Sky Natural Beverage Co*., 268 F.R.D. 365, 375–80 (N.D.

14  Cal. 2010) (certifying class under California's CLRA and UCL).

15          As detailed *supra*, questions of law and fact common to all class members are central to

16  this litigation—every class member was equally exposed to Defendant's uniformly oversized

17  Product packaging, as well as received the same amount of candy (and empty space) therein.

18  These common questions predominate over any individual issues Defendant may assert. Unlike

19  the recent case of *In re Hyundai & Kia Fuel Econ. Litig*., 881 F.3d 679 (9th Cir. 2018), wherein

20  the court held that a nationwide class with variations in state law defeated common issues and

21  predominance, here, the Class is limited only to a California class alleging violations of California

22  law—common issues and predominance is satisfied. Moreover, in the same way Plaintiff can

23  establish liability by common evidence which demonstrates that Defendant's Products' packaging

24  is uniformly misleading and the slack-fill therein is nonfunctional, Defendant can defend itself

25  with common evidence to the contrary. As such, common questions of law and fact predominate

26  over any alleged individual issues.

27  ///

28  ///

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

a.     Common Legal and Factual Issues Predominate Plaintiff's UCL and FAL Claims.

Common issues of fact and law predominate as to Plaintiff's claims under the UCL and FAL. *In re Tobacco II*, 46 Cal.4th 298, 312 n.8 (2009) ("A violation of the UCL's fraud prong is also a violation of the false advertising law."). When Plaintiff and members of the class are exposed to a common misrepresentation, common issues predominate. See, e.g., *In re Ferrero Litig.*, No. 11-205, 2011 U.S. Dist. LEXIS 131533, at *16-*17 (S.D. Cal. Nov. 15, 2011) (predominance satisfied whether class members had "common contention" that Defendant "made material misrepresentation regarding the nutritious benefits of Nutella that violated the UCL, FAL, and the CLRA" and "any injury suffered by a class member stems from Defendant's common advertising campaign of Nutella"); *Wiener v. Dannon Co.*, 255 F.R.D. 658, 669-670 (C.D. Cal 2009) (predominance satisfied where defendant's misleading claims were explicit and continuous). Claims under the UCL are particularly appropriate for class certification because the *UCL focuses on the defendant's conduct* and not the plaintiff's damages (and individualized proof of deception, reliance and injury are not required). *Tobacco II*, 46 Cal.4th at 324; see also, *In re Abbott Laboratories Norvir Antitrust Litig.*, No. C 04-1511 CW, 2007 WL 1689899, at *10 (N.D. Cal. June 11, 2007) ("[C]laims brought under the [UCL] are commonly certified for class treatment."). To this end, whether conduct is "misleading" under the UCL and FAL is determined by a "reasonable consumer" standard. *Lavie v. Procter & Gamble Co.,* 105 Cal.App.4th 496, 509-10 (2003).

Each and every class member who purchased the Products was exposed to the same misleading Product packaging and nonfunctional slack-fill.[24] Accordingly, the determination of Defendant's liability under both statutes presents a singular legal issue that is common to the class as a whole: whether "members of the public are likely to be deceived" by the Products' packaging and nonfunctional slack-fill therein. Through common evidence, Plaintiff will prove that (i) the

---

[24] RJC Decl. Ex. 3 (Murray Tr.) 69:14-73:20 [72:21-73:9] ("████████████████████████████████
████████████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████.").

20

1   size of the Product packaging is misleading to the reasonable consumer, and (ii) the slack-fill

2   contained in the Products is nonfunctional and therefore, unlawful.

3                     **b.**     **Common Legal and Factual Issues Predominate Plaintiff's CLRA Claim.**

4

5        The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or

6   practices[.]" Cal. Civ. Code § 1770(a). In general, to bring a CLRA claim, the plaintiff must show

7   that: (1) the defendant's conduct was deceptive; and (2) that the deception caused defendant to be

8   harmed. *Stearns,* 655 F.3d at 1022. In the class context, a CLRA claim "requires each class

9   member to have an actual injury caused by the unlawful practice." *Id*. Plaintiff will prove his

10  CLRA claim through common evidence.

11        First, proving Defendant's conduct is deceptive rests on common evidence because the

12  Product packaging and the nonfunctional slack-fill therein is uniform. See *Blackie v. Barrack*, 524

13  F.2d 891, 902 (9th Cir.1975) ("[C]ourts have taken the common sense approach that the class is

14  united by a common interest in determining whether defendant's course of conduct is in its broad

15  outlines actionable, which is not defeated by slight differences in class members' positions[.]")

16  Plaintiff and the Class have and will establish that the Products packaging is misleading and the

17  slack-fill is nonfunctional (and, thus, that the Product does not have the "characteristics, uses,

18  benefits, or qualities" as advertised by Defendant). [25]

19        Second, the CLRA's causation element also favors class certification. California's CLRA

20  requires that each class member suffer an actual injury. *Stearns,* 655 F.3d at 1022. However,

21  "[c]ausation, on a classwide basis, may be established by *materiality*. If the trial court finds that

22  material misrepresentations have been made to the entire class, an inference of reliance arises to

23  the class." *Id.* at 1022 (9th Cir. 2011) (emphasis in original); *In re Tobacco II*, 46 Cal.4th at 328

24  ("[A] plaintiff ... is not required to necessarily plead and prove individualized reliance on specific

25  misrepresentations or false statements where... those misrepresentations and false statements were

26  part of an extensive and longterm advertising campaign.") Whether a misrepresentation is material

27  is a fact intensive question that asks whether "a reasonable man would attach importance to its

28

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

---

[25] See Morgeson Decl. Ex. B ¶¶ 5, 18; Lenzo Decl. Ex. B ¶¶ 25, 69; Sand Decl. Ex. B pp. 30-50.

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION**

1   existence or nonexistence in determining his choice of action in the transaction in question." *In re*

2   *Steroid Hormone Product Cases*, 181 Cal.App.4th 145, 157 (2010). Thus, at certification, Plaintiff

3   need only present evidence that Defendant made uniform, material misrepresentations to the class

4   as a whole. See *In re Ferrero Litig.,* 2011 U.S. Dist. LEXIS 131533, at \*16-\*17.

5        In purchasing the Products, each and every Class Member was necessarily exposed to

6   Defendant's misleading Product packaging which, throughout the Class Period, was oversized,

7   opaque, and contained nonfunctional slack-fill. *See* Section II, *supra*. Thus, because each class

8   member was exposed to the same material misrepresentations, a presumption of reliance is

9   appropriate, and causation can be determined on the basis of common proof. *Stearns*, 655 F.3d at

10   1022; *Wiener*, 255 F.R.D. at 669.

11               c.    Class-wide Method of Awarding Relief.

12        In order to satisfy the "predominance" requirement under FRCP 23(b)(3), plaintiffs must

13   demonstrate the existence of a class-wide method of awarding relief that is consistent with the

14   plaintiffs' theory of liability. *Comcast Corp. v. Behrend* (2013) 133 S.Ct. 1426, 1432–1435. In this

15   circuit, *Leyva v. Medline Industries, Inc.*, 716 F.3d 510 (9th Cir.2013), is the controlling case. In

16   *Leyva*, the Court directed that "[i]n this circuit…damage calculations alone cannot defeat class

17   certification," *Leyva, supra,* 716 F3d at 514. (quoting *Yoko-yama v. Midland Nat'l Life Ins. Co*.,

18   594 F.3d 1087, 1094 (9th Cir.2010)); see also *Jimenez c. Allstate Ins. Co*., 765 F 3d 1161, 1167

19   (9th Cir. 2014). The presence of individualized damages does not defeat certification under FRCP

20   23(b)(3) where damages from uniform policy or practice "could feasibly and efficiently be

21   calculated once the common liability questions are adjudicated." *Leyva,* 716 F.3d at 514.  "At

22   class certification, plaintiff must present a likely method for determining class damages, though it

23   is not necessary to show that his method will work with certainty at this time." *Chavez v. Blue Sky*

24   *Natural Beverage Co*., 268 F.R.D. 365, 379 (N.D. Cal. 2010) (internal quotation marks omitted).

25        The CLRA provides remedies to consumers in the form of actual damages, including

26   punitive damages and attorney fees, for particular kinds of false advertising practices, including

27   "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses,

28   benefits, or quantities that they do not have." Civ. Code § 1770(a)(5). Under the UCL,

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

1  disgorgement is an available remedy in a representative action to the extent that it constitutes

2  restitution. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1145 (2003). With

3  regard to the measure of restitution, the proper measure of restitution is the difference between

4  what the plaintiff paid and the value of what plaintiff received. *Cortez v. Purolator*, 23 Cal. 4th

5  163, 174 (2000).There are multiple methods available to calculate class-wide relief which are

6  consistent with the theories of liability alleged, among them, conjoint analysis. *Guido v. L'Oreal,*

7  *USA, Inc.*, 2014 WL 6603730, 11 (C.D. Cal. 2014).

8      Plaintiff and the Class are pursuing remedies of injunctive relief, restitutionary damages,

9  and an award of attorneys' fees and costs. Further, because Defendant knowingly uses oversized,

10  unlawfully slack-filled packaging for its Products when it has the ability to include more candy,

11  shrink the box, or add features to eliminate consumer deception, an award of punitive damages

12  may be warranted. In order to calculate classwide damages here, there are two questions that need

13  be answered: (1) have consumers been deceived by the Products, and if yes, (2) how does one

14  quantify the financial harm? Plaintiff's experts have reliably conducted a conjoint analysis which

15  answers "yes" to the first question, and which derives a numerical answer to the second

16  question—using common evidence. Lenzo Decl. Ex. B ¶¶ 24-31, 41.

17      First, Plaintiff's experts found that consumers on average expect the Products to contain

18  67% candy. Lenzo Decl. Ex. B ¶ 25. However, the actual volume of candy is significantly less.

19  For instance, the volume of candy in a 5-oz. box of Jujyfruits is only 42.6%.[26] This establishes

20  that consumers are deceived by the size of the Products' boxes. *Id*. This deception is largely based

21  on the size of the Products' box. Lenzo Decl. Ex. B ¶ 69; Morgeson Decl. Ex. B ¶ 18.

22      Second, according to Plaintiff's damages experts, "consumers are harmed similarly by the

23  inclusion of nonfunctional slack-fill." Lenzo Decl. Ex. B ¶ 29. The financial harm is quantified on

24  a classwide basis as follows (*Id.* ¶¶ 23, 30):

25          To the extent that consumers overestimate the extent to which candy boxes are filled,
26      nonfunctional slack-fill generates a *price premium* for the product. This means that
        defendant would not be able to sell a given quantity at a price that exceeds the price at
27      which it would have been able to sell that quantity without the nonfunctional slack-fill.

28  _____

[26] Sand Decl. Ex. B p. 41 (The actual slack-fill in Jujyfruits is 57.4%. The actual volume of
product in the box is calculated by subtracting .574 from 1).

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

* * *

The price premium attributable to slack-fill can be estimated by simulating market demand for the product when the deception is removed, either by revealing the level of actual fill to consumers or by shrinking the box so that it does not exhibit nonfunctional slack-fill. . . . [P]rice premia attributable to nonfunctional slack-fill can be reliably estimated for the products at issue. . . . We estimate a price premium attributable to nonfunctional slack-fill for each product at issue as a function of the market price. This percentage price premium can therefore be multiplied by revenues from the sale of each product at issue to class members to arrive at an estimate of class-wide damages.

In furtherance of this methodology, Plaintiff's damages experts conducted a large-scale survey of 3,788 participants to empirically investigate the extent to which candy consumers have accurate expectations about the level of fill in candy boxes and whether fill and box size have an impact on their willingness to buy. *See id*. ¶ 24. The results showed a large number of candy consumers have fill expectations that exceed the candy boxes' actual fill. *Id*. ¶ 25. Specifically, three out of four consumers expect a fill-level that exceeds the actual fill-level of the box. *Id*.

The price premia for the Products sold at store-based retail outlets[27] was calculated as follows: Jujyfruits = 24.4%; Lemonhead = 19.8%; Redhots = 16.1%; and Trolli = 26.4%. *Id*. ¶ 31.

### 2.    *Class Litigation is Superior to Other Methods of Adjudication.*

The Rule 23(b)(3) "superiority" factors weigh heavily in favor of class certification here. Rule 23(b)(3) sets the following four factors for determining whether a class action is superior to other methods of adjudication: (i) the class members' interest in individually controlling separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability of concentrating the litigation in the particular forum; and (iv) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3). [C]onsideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser v. Accufix Research Inst., Inc*., 253 F.3d 1180, 1190 (9th Cir. 2001).  Liability in this action will turn on whether Defendant's Product packaging and slack-fill therein was misleading and unlawful; meaning judicial efficiency weighs in favor of a class action. Likewise, it is not economically feasible for the many thousands of class members to

---

[27] The price premia for the Products sold at movie theater retail outlets, which represents less than 4% of retail sales, was calculated as follows: Jujyfruits = 12.6%; Lemonhead = 12.3%; Redhots = 9.9%; and Trolli = 16.6%. *Id*. ¶ 31.

24

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

pursue their claims against Defendant on an individual basis given the low cost of the Products as compared to prosecution of a resource-intensive, expert-driven lawsuit. *Dannon*, 255 F.R.D. at 672 ("[T]here is no realistic alternative to a class action in this case, making a class action understandably the superior method of adjudication."). Here, there is no other practical way to adjudicate these claims. Lastly, with respect to other litigation, Plaintiff is aware of only one other case concerning similar claims venued in Missouri on behalf of a Missouri class.[28]

Further, there are no manageability issues. Given that the core claims can be proven through common proof, there is no reason to believe that the prosecution of the claims of the putative Class Members in a single class action will create more management problems than the alternative (i.e., the prosecution of hundreds or thousands of separate lawsuits by each class member). Given the number and importance of the predominating common questions described above, the adjudication of class claims would be significantly less burdensome than if the matter were prosecuted individually. *Negrete v. Allianz Life Ins. Co. of North America*, 238 F.R.D. 482, 494 (C.D. Cal. 2006) ("The individuation of damages in consumer class actions is rarely determinative under Rule 23(b)(3)").

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court **GRANT** his motion for class certification.


DATED: March 5, 2018                              **CLARKSON LAW FIRM, P.C.**

                                                   /s/ Ryan J. Clarkson_____
                                                  Ryan J. Clarkson, Esq.
                                                  Shireen M. Clarkson, Esq.
                                                  Bahar Sodaify, Esq.
                                                  *Counsel for Plaintiff*

---

[28] See *Jaclyn Waters v. Ferrara Candy Co.*, (4:17-cv-00197), Missouri Eastern District Court (Jan. 11, 2017). Per the court's docket, there has been no activity since November's stay was lifted after Ferrara's appeal of the remand order was denied. RJC Decl. ¶ 16.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069