1
2
3
4
5
6
7

**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
rclarkson@clarksonlawfirm.com
Shireen M. Clarkson (SBN 237882)
sclarkson@clarksonlawfirm.com
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069
Telephone: (213) 788-4050
Facsimile:  (213) 788-4070

*Attorneys for Plaintiff Thomas Iglesias*

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS IGLESIAS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>FERRARA CANDY CO., and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 3:17-cv-00849-VC<br><br>**SECOND AMENDED COMPLAINT**<br><br>1. VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CIVIL CODE § 1750, *et. seq.*<br><br>2. VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW, BUSINESS & PROFESSIONS CODE § 17500, *et. seq.*<br><br>3. VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS & PROFESSIONS CODE § 17200, *et. seq.*<br><br>4. UNJUST ENRICHMENT<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Thomas Iglesias, individually and on behalf of all others similarly situated, brings this Second Amended Complaint against Ferrara Candy Co. ("Defendant") and Does 1 through 10, inclusive (collectively referred to herein as "Defendants") and alleges as follows:

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

## SUMMARY OF THE ACTION

1.     California law recognizes that food packaging can be deceptive, even when the information on the label is truthful.   For example, if packaging is substantially larger than necessary to contain the contents, consumers may be deceived into believing that they are buying more of a product than they actually are.

2.     This is a class action lawsuit brought on behalf of all purchasers of Jujyfruits® brand candy products (the "Product") sold at retail outlets and movie theaters throughout California and the United States. A true and correct representation of the Product's front label is set forth below.



3.     Defendant intentionally misleads and shortchanges consumers by falsely and deceptively misrepresenting the amount of candy actually contained in each box of Product. Defendant uniformly and substantially under-fills the opaque boxes by 41%. Every box is filled only 59% full with candy product. During Plaintiff's investigation into the reason for Defendant's under-filling of the boxes, which included consultation with an expert in packaging design and a survey of comparator boxed candy products available in the marketplace, Plaintiff discovered that nearly all of the 41% balance of empty space, or "slack-fill," serves no legitimate or lawful function, as further described herein.

**PARTIES**

4.      Plaintiff is, and at all times relevant hereto was, a citizen of California residing in the County of San Francisco. Plaintiff made a one-time purchase of Jujyfruits® 5 oz. box at a San Francisco-based location of a nationwide movie chain in California in 2016. In making his purchase, Plaintiff relied upon the opaque packaging, including the size of the box, which was prepared and approved by Defendant and its agents and disseminated statewide and nationwide, as well as designed to encourage consumers to purchase the Product. If Plaintiff had known that the box contained nonfunctional slack-fill, he would not have purchased the Product, let alone paid for candy product he never received.

5.      Ferrara Candy Company is a corporation headquartered in Oakbrook Terrace, Illinois.  Ferrara maintains its principal business office at 1 Tower Lane #2700, Oakbrook Terrace, IL, 60181.  Ferrara, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of California.  Ferrara is the owner, manufacturer, and distributor of the Product, and is the company that created and/or authorized the false, misleading, and deceptive packaging for the Product.

6.      The true names and capacities, whether individual, corporate, associate, or otherwise of certain manufacturers, distributors, and/or their alter egos sued herein as DOES 1 through 10 inclusive are presently unknown to Plaintiff who therefore sues these individuals and/or entities by fictitious names.  Plaintiff will seek leave of this Court to amend the Complaint to show their true names and capacities when the same have been ascertained.  Plaintiff is informed and believes and based thereon alleges that DOES 1 through 10 were authorized to do and did business in Los Angeles County.  Plaintiff is further informed and believes and based thereon alleges that DOES 1 through 10 were and/or are, in some manner or way, responsible for and liable to Plaintiff for the events, happenings, and damages hereinafter set forth below.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over all causes of action asserted herein pursuant to the California Constitution, Article VI, Section 10, because this case is a cause not given by statute to other trial courts.

8.     Plaintiff has standing to bring this action pursuant to the California Consumers Legal Remedies Act, Civil Code Section 1750, *et seq*.; California False Advertising Law, Business and Professions Code Section 17500, *et seq*.; and California Unfair Competition Law, Business and Professions Code Section 17200, *et seq*.

9.     This lawsuit includes all candy products manufactured by Defendant and packaged for sale to consumers in an opaque cardboard box (including bag-in-a-box products), including Jujyfruits®, Jujubes®, Now and Later®, Lemonhead®, Applehead®, Cherryhead®, Grapehead®, RedHots®, Trolli®, Chuckles®, Black Forest®, Jawbuster®, Jawbreaker®, Brach's®, Boston Baked Beans®, Super Bubble®, Rainblo®, Atomic Fireball®, and all flavors and varieties of those candies, except for products packaged in individual serving pouches and sold to consumers in opaque cardboard boxes that list the total number of pouches and the net weight of each pouch.

10.     Out-of-state participants can be brought before this Court pursuant to the provisions of California Code of Civil Procedure Section 395.5.

11.     Defendant is subject to personal jurisdiction in California based upon sufficient minimum contacts which exist between it and California.

12.     Venue is proper in this Court because Defendant conducts business in this District, Defendant receives substantial compensation from sales in this District, and Defendant made numerous misrepresentations which had a substantial effect in this District, including, distribution and sale of the Product throughout this District's retail outlets, as well as distribution of print media and internet advertisements.

///

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

## FACTUAL ALLEGATIONS

13.     The average consumer spends only 13 seconds to make an in-store purchasing decision.[1] That decision is heavily dependent on a product's packaging, and particularly the package dimensions: "Most of our studies show that 75 to 80 percent of consumers don't even bother to look at any label information, no less the net weight . . . . Faced with a large box and a smaller box, both with the same amount of product inside . . . consumers are apt to choose the larger box because they think it's a better value."[2]

14.     Research has consistently demonstrated that consumers rarely read details beyond the final price of the product, and often, not even that.[3]

15.     Container size impacts consumer perception and consumer purchase decision-making: "Packages that appear larger will be more likely to be purchased.[4]

16.     Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein.

17.     Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for reasons which are illegitimate or unlawful.

18.     Defendant packages the Product in an opaque rectangular box with the following dimensions: 5.5 inches tall by 3 inches wide by .75 inches deep.

---

[1]     http://www.nielsen.com/us/en/insights/news/2015/make-the-most-of-your-brands-20-second-window.html (citing the Ehrenberg-Bass Institute of Marketing Science's report "Shopping Takes Only Seconds…In-Store and Online").

[2]http://www.consumerreports.org/cro/magazinearchive/2010/january/shopping/producttpackaging/overview/product-packaging-ov.htm (quoting Brian Wansink, professor and director of the Cornell Food and Brand Lab, who studies shopping behavior of consumers).

[3] Dickson, P. & Sawyer, G., *Point of Purchase Behavior and price Perceptions of Supermarket Shoppers*, Marketing Science Institute Report No. 86-102, Cambridge, MA: Marketing Science Institute (1986).

[4] Raghubir, P. & Krishna, A., *Vital Dimensions in Volume Perception: Can the Eye Fool the Stomach?*, 36 Journal of Marketing Research, No. 3, 313-326 (1999).

19.     The size of the box in and of itself is a representation by Defendant as to the amount of candy contained in the box. Plaintiff and other consumers of the Product detrimentally and reasonably relied on this representation of quantity when they purchased the Product.

20.     Plaintiff and other consumers of the Product made their purchase decisions based upon a visual observation of the Product's packaging through the showcase window of a movie theater concession stand or retail outlet store shelf.

21.     Plaintiff and other consumers of the Product who purchased the Product at a movie theater did not have a reasonable opportunity to view any other representations of quantity contained on the Product's packaging, *e.g.*, net weight or serving disclosures.

22.     Even if Plaintiff and other consumers of the Product had a reasonable opportunity to review prior to the point of sale other representations of quantity like net weight or serving disclosures, such as consumers who purchased the Product at a retail outlet, they did not and would not have reasonably understood or expected it to translate to a quantity of candy product meaningfully different from their expectation of a quantity of candy product commensurate with the size of the box.

23.     Plaintiff made a one-time purchase of a box of Jujyfruits® 5 oz. candy product during a visit to a San Francisco-based location of nationwide movie theater chain in California in 2016.

24.     Plaintiff paid approximately $4.00 for the Product.

25.     At the time Plaintiff purchased the Product, the Product was in a glass showcase, behind a concession counter.

26.     Glass showcases are uniformly used for the sale of the Product at all movie theater concession counters throughout California and the United States as a security measure and for customer convenience.

27.     Therefore, Plaintiff, like all purchasers of the Product from movie theater concession stands, did not have the opportunity to inspect the Product's packaging

for other representations of quantity of candy product contained therein other than the size of the box itself.

28.   For example, Plaintiff did not have the opportunity to inspect any net weight or serving disclosures contained on the box. Instead, he observed the Product from a distance through the showcase window and pointed it out to the concession counter employee. Plaintiff then paid for the Product before he took physical possession of the Product.

29.   Research indicates that 90% of consumers make a purchase after only visually examining the front of the packaging but without physically having the product in their hands, as in this case.[5]

30.   Even if Plaintiff had been given the opportunity to review all parts of the packaging and observed other representations of quantity such as net weight or serving disclosures, Plaintiff would not have reasonably understood or expected it to translate to a quantity of candy product meaningfully different from his expectation of a quantity of candy product commensurate with the size of the box.

31.   Plaintiff reasonably and detrimentally relied on the size of the box as a representation by Defendant of the quantity of candy product contained in the Product's containers.

32.   Once Plaintiff took his seat in the movie theater, Plaintiff opened the top of the Product's box. Only then did he discover—to his disappointment—that the Product's box was only roughly half full, while the other half constituted nonfunctional slack-fill.

33.   Prior to the point of sale, the Product's packaging does not allow for a visual or audial confirmation of the contents of the Product.  The Product's opaque packaging prevents a consumer from observing the contents before opening.  Even if

---

[5] Clement, J., Visual influence on in-store buying decisions: an eye-track experiment on the visual influence of packaging design, 23 Journal of Marketing Management, 917−928 (2007).

a consumer were to "shake" the Product before opening, it is impossible for the consumer to discern the presence of any nonfunctional slack-fill.

34.   The other information that Defendant provides about quantity of candy product on the front label and back label of the Product does not enable a consumer to form any meaningful understanding about how to gauge the quantity of contents of the Product as compared to the size of the box itself.

35.   The front label of the Product indicates a net weight of 5.0 ounces (142 grams). The nutritional panel on the back of the Product reports a serving size of 15 pieces (40 grams) and total of 3.5 servings per container. True and correct representations of the Product's front and back labels are set forth below.



36.   Disclosures of net weight and serving sizes in a measurement of ounces or grams does not allow the reasonable California or American consumer to make any meaningful conclusion about the quantity of candy product contained in the Product's boxes that would be different from the reasonable consumer's expectation that the quantity of candy product is commensurate with the size of the box. Nor does a disclosure in terms of candy pieces where there is no "actual size" image pictured on the packaging, as is the case here.

37.   Plaintiff would not have purchased the Product had he known the Product contained slack-fill which serves no functional or lawful purpose.

38.   During Plaintiff's investigation, Plaintiff confirmed that Defendant uniformly and substantially under-fills the Product's boxes, rendering an

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

extraordinary 41% of each box slack-fill, nearly all of which serves no functional or lawful purpose. Plaintiff shall proffer expert testimony to establish this fact once this case reaches the merits. A true and correct representation of the inside of the Jujyfruits® box is pictured below.



39.     The Product is made, formed, and filled as to be misleading.  The Product therefore is misbranded.

40.     As described herein, the slack-fill contained in the Product does not serve a legitimate or lawful purpose.

41.     As confirmed during Plaintiff's investigation, including consultation with an expert in packaging design, the slack-fill contained in the Product does not protect the contents of the packages. Plaintiff shall proffer expert testimony to establish this fact once this case reaches the merits.

42.     In fact, the greater the slack-fill, the more room the contents have to bounce around during shipping and handling, and the more likely the contents are to break and sustain damage.

43.     If, on the other hand, the amount of candy product contained in each box were commensurate with the size of the box as consumers expect, then the candy product would have less room to move around during shipping and handling, and would be less likely to sustain damage.

44.     As such, the slack-fill present in the Product makes the candy product more susceptible to damage.

///

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

45.     The Product is packaged in a box and sealed with heated glue. A true and correct representation of the heated glue seal is shown in the image below.



46.     As confirmed by Plaintiff's expert in packaging design, the equipment used to seal the carton does not breach the inside of the Product's containers during the packaging process.  The heated glue is applied to an exterior flap of the box, which is then sealed over the top by a second exterior flap.

47.     As confirmed during Plaintiff's survey of comparator boxed candy products available in the marketplace, neither the heated glue application nor the sealing equipment require slack-fill during the manufacturing process. Even if there were no slack-fill present in the Product's boxes, the machines used for enclosing the contents in the package would work without disrupting the packaging process.

48.     As confirmed by Plaintiff's expert in packaging design, the slack-fill present in the Product's container is not a result of the candy product settling during shipping and handling.  Given the Product's density, shape, and composition, any settling occurs immediately at the point of filling the box. No additional product settling occurs during subsequent shipping and handling. Plaintiff shall proffer expert testimony to establish this fact once this case reaches the merits.

49.     Contrary to a powder product, for example, the contents of the Product are of a great enough density such that any slack-fill present at the point of sale was present at the time of filling the containers and packaging the contents.

50.     As confirmed by Plaintiff's expert in packaging design, the partially perforated side tab on the Product's packaging does not perform any specific function that is inherent to the nature of the contents. A reasonable consumer can easily dispense the Product from one of the ends of its packaging, without any side

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

tab. Therefore, the Product's packaging does not require any functional slack-fill to accommodate a perforated side tab.

51.     At the side of the Product's box, at the very top, the Product's packaging bears a partially perforated tab approximately one inch in length with the word "OPEN" beneath it. A true and correct representation of the side of the box containing the partially perforated dispensing tab is shown in the image below.



52.     Defendant ostensibly places the partially perforated tab on the side of the Product as a method to dispense the contents of the Product. However, the placement and perforation pattern of the tab, *inter alia*, evidence Defendant knows or should know that the reasonable consumer does not actually use said perforated tabs to dispense the candy product. The true purpose behind Defendant's inclusion of the partially perforated tab is to conceal the nonfunctional slack-fill contained in the Product.

53.     The tab of each Product's box is not completely perforated.  Therefore, when a consumer tears along the perforated line, he has obstructed access to the candy content. Given the size of the candy content in comparison to the opening of the Product's tab, a consumer encounters difficulty when trying to dispense the Product. Undoubtedly, a reasonable consumer will opt against using the Product's partially perforated tab while watching a movie in a dark theater, as was the case for Plaintiff.

54.     Reasonable consumers instinctually open the Product by tearing open the Product's glued seal, as Plaintiff did.  Defendant's inconvenient design of the Product's side tab further incentivizes consumers to open the Product by breaking one of its glued seals, as was the case with Plaintiff.

55.     Defendant can reasonably foresee that consumers open the Product by undoing one of the glued seals of the packaging. Thus, Defendant knows that any perforated side tab it places on the Product's packaging must create an opening that accounts for the size of the Product's candy contents. The fact that Defendant fails to do this, instead of designing the tab with total perforation, demonstrates that Defendant does not genuinely intend for the side tab to be used, and that the reasonable consumer does not actually use it, as in Plaintiff's case.

56.     A simple review of the Product's packaging establishes that the box is not part of a reusable container with any significant value to the Product independent of its function to hold the candy product.

57.     For example, the Product's container is not a commemorative item.

58.     The Product's container is a box intended to be discarded into the recycling bin immediately after the contents have been completely consumed.

59.     As confirmed by Plaintiff's expert in packaging design and Plaintiff's survey of comparator boxed candy products available in the marketplace, Defendant can easily increase the quantity of candy product contained in each Product container or, alternatively, decrease the size of the containers, by 41%. Plaintiff shall proffer expert testimony to establish this fact once this case reaches the merits.

60.     The "Nutrition Facts" panel on the back of each box states "Servings Per Container about 3.5." By arithmetic, each serving would be the equivalent of: 100% expected total fill, divided by 3.5 servings, yielding a value of 28.6% of volume per serving. Given the Product can accommodate an additional 41% of candy product, consumers are being shortchanged roughly 1.4 servings per box.

61.     Contrast Defendant's packaging of the Product with a comparator product like "Boston Baked Beans" ("Boston Beans"), a candy product also manufactured by Defendant and similarly sold at movie theaters and retail outlets located throughout California and the United States.   A true and correct representation of the front of the BBB product is shown in the image below.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069



62.     Boston Beans are sold in identical packaging to that of the Product, *i.e.*, opaque boxes of identical size, shape, volume, and material.

63.     Boston Beans are packaged using nearly identical fill and heated glue enclosing machines to those of the Product.

64.     Boston Beans are coated candies of nearly identical size, shape, and density of that of the Product.

65.     However, contrary to the Product, Boston Beans have very little slack-fill and negligible nonfunctional slack-fill.  A true and correct representation is pictured in the image below.



66.     Boston Beans' packaging provides additional evidence that the slack-fill present in the Product is nonfunctional to the tune of 41%.

67.     Boston Beans' packaging provides additional evidence that the slack-fill present in the Product is not necessary to protect and in fact does not protect the contents of the Product.

68.     Boston Beans' packaging provides additional evidence that the slack-fill present in the Product is not a requirement of the machines used for enclosing the contents of the Product.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

69.     Boston Beans' packaging provides additional evidence that the slack-fill present in the Product is not a result of unavoidable product settling during shipping and handling.

70.     Boston Beans' packaging provides additional evidence that the slack-fill present in the Product is not needed to perform a specific function.

71.     Boston Beans' packaging provides additional evidence that the slack-fill present in the Product is not part of a legitimate reusable container.

72.     Boston Beans' packaging provides additional evidence that Defendant is able to increase the level of fill.

73.     Boston Beans' packaging provides additional evidence that Defendant has reasonable alternative designs available to package its Products.

74.     Plaintiff did not expect that the Product would contain nonfunctional slack-fill, especially given that nonfunctional slack-fill, as opposed to functional slack-fill, is prohibited by California law and federal law.

75.     Defendant's conduct threatens California consumers by using intentionally deceptive and misleading slack-filled containers. Defendant's conduct also threatens other companies, large and small, who "play by the rules." Defendant's conduct stifles competition and has a negative impact on the marketplace, and reduces consumer choice.

76.     There is no practical reason for the nonfunctional slack-fill present in the Product other than to mislead consumers as to the actual volume of the Product being purchased by consumers while simultaneously providing Defendant with a financial windfall as a result of money saved from lower supply costs.

77.     Plaintiff makes the allegations herein upon personal knowledge as to himself and his own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by his attorneys.

///

///

## CLASS ALLEGATIONS

78.     Plaintiff brings this action on his own behalf and on behalf of all other persons similarly situated. Plaintiff seeks to represent a Class consisting of "All persons who purchased the Product in United States for personal use and not for resale during the time period February 21, 2013, through the present. Excluded from the Class are Defendants' officers, directors, and employees, and any individual who received remuneration from Defendants in connection with that individual's use or endorsement of the Product."

79.     In the alternative, Plaintiff seeks to represent a Class consisting of "All persons who purchased the Product in the State of California for personal use and not for resale during the time period February 21, 2013, through the present. Excluded from the Class are Defendants' officers, directors, and employees, and any individual who received remuneration from Defendants in connection with that individual's use or endorsement of the Product."

80.     The Class meets all prerequisites under Federal Rule of Civil Procedure 23(a).

81.     The Class is so numerous that their individual joinder herein is impracticable. On information and belief, the Class numbers in the hundreds of thousands or more throughout the United States and California. The Class is sufficiently numerous because hundreds of thousands of units of the Product have been sold in California during the time period February 21, 2013, through the present (the "Class Period").

82.     The questions of law and fact common to the Class predominate over questions which may affect individual Class members.  Common questions of law and fact include, but are not limited to, the following:

a.     Whether Defendant's conduct constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code Section 1750, *et seq*.;

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

b.      Whether Defendant misrepresented the approval of the FDA, United States Congress, and California Legislature that the Product's packaging complied with federal and California slack-fill regulations and statutes in violation of Civil Code Section 1750, *et seq.*;

c.      Whether Defendant used deceptive representations in connection with the sale of the Product in violation of Civil Code Section 1750, *et seq.*;

d.      Whether Defendant represented the Product has characteristics or quantities that it does not have in violation of Civil Code Section 1750, *et seq.*;

e.      Whether Defendant advertised the Product with intent not to sell it as advertised in violation of Civil Code Section 1750, *et seq.*;

f.      Whether Defendant represented that the Product has been supplied in accordance with a previous representation of quantity of candy product contained therein by way of its packaging when it has not, in violation of Civil Code Section 1750, *et seq.*;

g.      Whether Defendant's packaging is untrue or misleading in violation of Business and Professions Code Section 17500, *et seq.*;

h.      Whether Defendant knew or by the exercise of reasonable care should have known its packaging was and is untrue or misleading in violation of Business and Professions Code Section 17500, *et seq.*;

i.      Whether Defendant's conduct is an unfair business practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

j.      Whether Defendant's conduct is a fraudulent business practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

k.      Whether Defendant's conduct is an unlawful business practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

l.      Whether Defendant's packaging is false or misleading and therefore misbranded in violation of California Health and Safety Code sections 110660, 110665, or 110670;

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

m.      Whether the Product contain nonfunctional slack-fill in violation of 21 C.F.R. 100.100, *et seq.*;

n.      Whether the Product contains nonfunctional slack-fill in violation of California Business and Professions Code Section 12606.2, *et seq.*;

o.      Whether Plaintiff and the Class paid more money for the Product than they actually received; and

p.      How much money Plaintiff and the Class paid for the Product than they actually received.

83.    Plaintiff's claims are typical of the claims of the Class, as the representations made by Defendant are uniform and consistent and are made through packaging that was seen and relied on by Plaintiff and the Class.  Further, Plaintiff is a member of the Class he seeks to represent.

84.     Plaintiff and his counsel will fairly and adequately represent and protect the interests of the Class.  Plaintiff has retained competent and experienced counsel in class action and other complex litigation. Neither Plaintiff nor his counsel have any conflict of interest with other members of the Class.

85.    Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the Class.

86.    Prosecuting separate actions by individual class members would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

87.    Defendant has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole.

88.     Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations. Plaintiff purchased the Product under the false belief that the Product contained an amount of candy product commensurate with the size of the box. Plaintiff relied on Defendant's packaging and would not have purchased the Product if he had known that the Product contained nonfunctional slack-fill.

89.     Notice can be provided to such purchasers in a form and manner that meets Due Process requirements, including by using techniques and a form of notice similar to those customarily used in class actions, and by internet publication, radio, newspaper, and magazine.

90.     A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for the Class to prosecute their claims individually.

91.     The trial and litigation of Plaintiff's claims are manageable. Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the court system.   The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

92.     Absent a class action, Defendant will likely retain the benefits of its wrongdoing.  Because of the small size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.  Absent a representative action, the Class will continue to suffer losses and Defendant will be allowed to continue these violations of law and to retain the proceeds of their ill-gotten gains.

///

///

SECOND AMENDED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

## COUNT ONE

### Violation of California Consumers Legal Remedies Act,

### California Civil Code § 1750, *et seq.*

93.     Plaintiff repeats and realleges all allegations of the previous paragraphs, and incorporates the same as if set forth herein at length.

94.     Plaintiff brings this cause of action pursuant to Civil Code Section 1750, *et seq.*, the Consumers Legal Remedies Act ("CLRA"), on his own behalf and on behalf of all other persons similarly situated. Plaintiff seeks to represent a Class consisting of "All persons who purchased the Product in United States for personal use and not for resale during the time period February 21, 2013, through the present. Excluded from the Class are Defendants' officers, directors, and employees, and any individual who received remuneration from Defendants in connection with that individual's use or endorsement of the Product."

95.     In the alternative, Plaintiff seeks to represent a Class consisting of "All persons who purchased the Product in the State of California for personal use and not for resale during the time period February 21, 2013, through the present. Excluded from the Class are Defendants' officers, directors, and employees, and any individual who received remuneration from Defendants in connection with that individual's use or endorsement of the Product."

96.     The Class consists of thousands of persons, the joinder of whom is impracticable.

97.     There are questions of law and fact common to the Class, which questions are substantially similar and predominate over questions affecting the individual Class members, including but not limited to those questions listed hereinabove.

98.     The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices" in connection with a sale of goods.

99.     The practices described herein, specifically Defendant's packaging,

SECOND AMENDED COMPLAINT

advertising, and sale of the Product, were intended to result in the sale of the Product to the consuming public and violated and continue to violate the CLRA by (1) misrepresenting the approval of the Product as compliant with 21 C.F.R Section 100.100, California Business and Professions Code Section 12606.2, and the Sherman Law; (2) using deceptive representations in connection with the Product; (3) representing the Product has characteristics and quantities that it does not have; (4) advertising and packaging the Product with intent not to sell it as advertised and packaged; and (5) representing that the Product has been supplied in accordance with a previous representation as to the quantity of candy product contained within each box, when it has not.

100.    Defendant fraudulently deceived Plaintiff and the Class by representing that the Product's packaging which includes 41% nonfunctional slack-fill actually conforms with federal and California slack-fill regulations and statutes including the Sherman Law, California Business and Professions Code Section 12606.2, and 21 C.F.R. Section 100.100.

101.    Pursuant to 21 C.F.R. Section 100.100 and California Business and Professions Code Section 12606.2: "A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill."

102.    Defendant packaged the Product in boxes which contain 41% nonfunctional slack-fill by making material misrepresentations to fraudulently deceive Plaintiff and the Class.

103.    Defendant fraudulently deceived Plaintiff and the Class by misrepresenting the Product as having characteristics and quantities which it does not have, *e.g.*, that the Product is free of nonfunctional slack-fill when it is not. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff and the Class.  Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

rights and money.

104.    Defendant fraudulently deceived Plaintiff and the Class by packaging and advertising the Product with intent not to sell it as advertised, by intentionally under-filling the Product's containers and instead replacing candy product with nonfunctional slack-fill. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

105.    Defendant fraudulently deceived Plaintiff and the Class by representing that the Product was supplied in accordance with an accurate representation as the quantity of candy product contained therein when they were not. Defendant presented the physical dimensions of the Product's packaging to Plaintiff and the Class before the point of purchase and gave Plaintiff and the Class a reasonable expectation that the quantity of candy product contained therein commensurate with the size of packaging. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff and the Class.  Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

106.    Defendant knew or should have known, through the exercise of reasonable care, that the Product's packaging was misleading.

107.    Defendant's actions as described herein were done with conscious disregard of Plaintiff's rights, and Defendant was wanton and malicious in its concealment of the same.

108.    Defendant's packaging of the Product was a material factor in Plaintiff's and the Class's decisions to purchase the Product. Based on Defendant's Product packaging, Plaintiff and the Class reasonably believed that they were getting more candy product than they actually received. Had they known the truth of the matter, Plaintiff and the Class would not have purchased the Product.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

109.    Plaintiff and the Class have suffered injury-in-fact and have lost money as a result of Defendant's unfair, unlawful, and fraudulent conduct. Specifically, Plaintiff paid for candy product he never received. Plaintiff would not have purchased the Product had he known the boxes contained nonfunctional slack-fill.

110.    Plaintiff seeks injunctive relief against Defendant, including an order that prohibits Defendant from engaging in the misconduct described herein and requires Defendant to perform a corrective advertising campaign. Defendant's false and misleading packaging should be enjoined due to the false, misleading, and/or deceptive nature of Defendant's packaging.

111.    By letter dated August 1, 2016, Plaintiff advised Defendant of its false and misleading claims pursuant to California Civil Code Section 1782(a).

## COUNT TWO

### Violation of California False Advertising Law,
### Business & Professions Code § 17500, *et seq.*

112.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, and incorporates the same as if set forth herein at length.

113.    Plaintiff brings this cause of action pursuant to Business and Professions Code Section 17500, *et seq.*, on his own behalf and on behalf of all other persons similarly situated. Plaintiff seeks to represent a Class consisting of "All persons who purchased the Product in United States for personal use and not for resale during the time period February 21, 2013, through the present. Excluded from the Class are Defendants' officers, directors, and employees, and any individual who received remuneration from Defendants in connection with that individual's use or endorsement of the Product."

114.    In the alternative, Plaintiff seeks to represent a Class consisting of "All persons who purchased the Product in the State of California for personal use and not for resale during the time period February 21, 2013, through the present. Excluded from the Class are Defendants' officers, directors, and employees, and

any individual who received remuneration from Defendants in connection with that individual's use or endorsement of the Product."

115.    California's False Advertising Law, California Business and Professions Code Section 17500, *et seq*., makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, in any advertising device or in any other manner or means whatever, including over the Internet, any statement, concerning personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

116.    Defendant knowingly manipulated the physical dimensions of the Product's box, or stated another way, under-filled the amount of candy product in the Product, by including 41% nonfunctional slack-fill as a means to mislead the public about the amount of candy product contained in each package.

117.    Defendant controlled the packaging of the Product. It knew or should have known, through the exercise of reasonable care that its representations about the quantity of candy product contained in the Product were untrue and misleading.

118.    The general public bases its purchasing decisions on the dimensions of a product's packaging. Consumers generally do not look at any label information, such as net weight or serving disclosures. Instead, the general public chooses a larger box because it leads them to believe they are receiving a better value.

119.    Defendant's packaging with 41% nonfunctional slack-fill instead of including more candy product or smaller boxes is likely deceive the general public.

120.    Defendant's actions in violation of Section 17500 were false and misleading such that the general public is and was likely to be deceived.

121.    Plaintiff and the Class have suffered injury-in-fact and have lost money as a result of Defendant's false representations. Plaintiff purchased the Product in reliance upon the claims by Defendant that the Product was of the quantity

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

1 represented by Defendant's packaging and advertising. Plaintiff would not have

2 purchased the Product if she had known that the claims and advertising as described

3 herein were false.

4     122.   Pursuant to Business and Professions Code Section 17535, Plaintiff and

5 the Class seek an order of this Court enjoining Defendant from continuing to

6 engage, use, or employ their practice of under-filling the Product's' containers.

7 Likewise, Plaintiff and the Class seek an order requiring Defendant to disclose such

8 misrepresentations.

9     123.   Plaintiff and the Class have suffered injury in fact and have lost money

10 as a result of Defendant's false representations. Plaintiff purchased the Product in

11 reliance upon the claims by Defendant that the Product was of the quantity

12 represented by Defendant's packaging and advertising. Plaintiff would not have

13 purchased the Product if he had known that the claims and advertising as described

14 herein were false.

### COUNT THREE

**Violation of California Unfair Competition Law,**

**Business & Professions Code § 17200, *et seq.***

18     124.   Plaintiff repeats and realleges the allegations set forth above, and

19 incorporate the same as if set forth herein at length.

20     125.   Plaintiff brings this cause of action pursuant to Business and Professions

21 Code Section 17200, *et seq.*, on his own behalf and on behalf of all other persons

22 similarly situated. Plaintiff seeks to represent a Class consisting of "All persons

23 who purchased the Product in United States for personal use and not for resale

24 during the time period February 21, 2013, through the present. Excluded from the

25 Class are Defendants' officers, directors, and employees, and any individual who

26 received remuneration from Defendants in connection with that individual's use or

27 endorsement of the Product."

28     126.   In the alternative, Plaintiff seeks to represent a Class consisting of "All

persons who purchased the Product in the State of California for personal use and not for resale during the time period February 21, 2013, through the present. Excluded from the Class are Defendants' officers, directors, and employees, and any individual who received remuneration from Defendants in connection with that individual's use or endorsement of the Product."

127.    Congress passed the Federal Food, Drug, and Cosmetic Act ("FDCA"), and in so doing established the Federal Food and Drug Administration ("FDA") to "promote the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393.

128.    The FDA has implemented regulations to achieve this objective. *See, e.g.*, 21 C.F.R. § 101.1 *et seq*.

129.    The legislature of California has incorporated 21 C.F.R. Section 100.100, which prohibits nonfunctional slack-fill, into California's Business and Professions Code Section 12606.2, *et seq*.

130.    The FDA enforces the FDCA and accompanying regulations; "[t]here is no private right of action under the FDCA."  *Ivie v. Kraft Foods Global, Inc.*, 2013 U.S. Dist. LEXIS 25615, 2013 WL 685372, at *1 (internal citations omitted).

131.    In 1990, Congress passed an amendment to the FDCA, the Nutrition Labeling and Education Act ("NLEA"), which imposed a number of requirements specifically governing food nutritional content labeling. *See, e.g.*, *21 U.S.C. § 343 et. seq*.

132.    Plaintiff is not suing under the FDCA, but under California state law.

133.    The California Sherman Food, Drug, and Cosmetic Act ("Sherman Law"), Cal. Health & Safety Code § 109875 *et seq*., has adopted wholesale the food labeling requirements of the FDCA and NLEA as the food regulations of California. Cal. Health & Safety Code § 110100.

134.    The Sherman Law declares any food to be misbranded if it is false or misleading in any particular, if the labeling does not conform with the requirements

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

for nutrition labeling set forth in certain provisions of the NLEA. Cal. Health & Safety Code §§ 110660, 110665, 110670.

135.    Business and Professions Code Section 12601 through 12615.5 are "designed to protect purchasers of any commodity within its provisions against deception or misrepresentation." Bus. & Prof. Code §12601. In order to achieve that goal, Business and Professions Code Section 12602 make it unlawful for any person engaged in the packaging or labeling of any commodity to distribute that commodity, or cause it to be distributed, if its packaging or labeling does not conform to the provisions set forth in Sections 12601-12615.5.

136.    Business and Professions Code Section 12606.2 specifically addresses the packaging requirements for food. The statute prohibits food containers which are "made, formed, or filled as to be misleading." Bus. & Prof. Code §12602.2(b). Further, the statute specifically defines as misleading and, therefore, unlawful, food containers which do not allow consumers to view their contents and which contain "nonfunctional slack fill." Bus. & Prof. Code § 12606.2(c).

137.    Business and Professions Code Section 12602.2(c) explains: "Nonfunctional slack fill is the empty space in a package that is filled to substantially less than its capacity for reasons other than any one or more of the following:

(1) Protection of the contents of the package.

(2) The requirements of the machines used for enclosing the contents in the package.

(3) Unavoidable product settling during shipping and handling.

(4) The need for the package to perform a specific function, such as where packaging plays a role in the preparation or consumption of a food, if that is inherent to the nature of the food and is clearly communicated to consumers.

(5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value that is

both significant in proportion to the value of the product and independent of its function to hold the food, such as a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed or durable commemorative or promotional packages.

(6) Inability to increase the level of fill or to further reduce the size of the package, such as where minimum package size is necessary to accommodate required food labeling exclusive of any vignettes or other nonmandatory designs or label information, discourage pilfering, facilitate handling, or accommodate tamper-resistant devices."

138.    The UCL prohibits "any unlawful, unfair... or fraudulent business act or practice." Cal. Bus & Prof. Code § 17200.

### A.    "Unfair" Prong

139.    Under California's False Advertising Law, California Business and Professions Code Section 17200, *et seq.*, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

140.    Defendant's action of leaving 41% nonfunctional slack-fill in its Product does not confer any benefit to consumers.

141.    Defendant's action of leaving 41% nonfunctional slack-fill in its Product causes injuries to consumers because they do not receive a quantity of candy commensurate with their reasonable expectation.

142.    Defendant's action of leaving 41% nonfunctional slack-fill in its Product causes injuries to consumers because they do not receive a level of hunger satiety commensurate with their reasonable expectation.

143.    Defendant's action of leaving 41% nonfunctional slack-fill in its Product causes injuries to consumers because they end up overpaying for the Product and receiving a quantity of candy less than what they expected to receive.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

144.    Consumers cannot avoid any of the injuries caused by the 41% nonfunctional slack-fill in Defendant's Product.

145.    Accordingly, the injuries caused by Defendant's activity of including 41% nonfunctional slack-fill in the Product outweighs any benefits.

146.    Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012).

147.    Here, Defendant's conduct of including 41% nonfunctional slack-fill in the Product's packaging has no utility and financially harms purchasers.  Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of harm.

148.    Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007).

149.    The California legislature maintains a declared policy of prohibiting nonfunctional slack-fill in consumer goods, as reflected in California's Business and Professions Code Section 12606.2 and California Health and Safety Code Section 110100.

150.    The 41% of nonfunctional slack-fill contained in the Product is tethered to a legislative policy declared in California according to California Business and Professions Code Section 12606.2 and California Health and Safety Code Section 110100.

151.    Defendant's packaging of the Product, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct.

152.    Defendant knew or should have known of its unfair conduct.

SECOND AMENDED COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

153.    As alleged in the preceding paragraphs, the misrepresentations by Defendant detailed above constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

154.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have used packaging appropriate for the amount of candy product contained within the Product.

155.    All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

156.    Pursuant to Business and Professions Code Sections 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of under-filling the Product's box.  Likewise, Plaintiff and the Class seek an order requiring Defendant to disclose such misrepresentations, and perform a corrective advertising campaign.

157.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff paid an unwarranted premium for these products. Specifically, Plaintiff paid for 41% of candy product he never received.  Plaintiff would not have purchased the Product if he had known that the Product's packaging contained nonfunctional slack-fill.

### B.    "Fraudulent" Prong

158.    California Business and Professions Code Section 17200, *et seq.*, considers conduct fraudulent and prohibits said conduct if it is likely to deceive members of the public. *Bank of Wes v. Superior Court*, 2 Cal. 4th 1254, 553 (1992).

159.    Members of the public base their purchasing decisions on the dimensions of a product's packaging. They generally do not view label information or net weight and serving disclosures. Members of the public choose a larger box because they automatically assume it has better value.

160.   Defendant's conduct of packaging the Product with 41% nonfunctional slack-fill is likely to deceive members of the public.

161.   Defendant's packaging of the Product, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes fraudulent conduct.

162.   Defendant knew or should have known of its fraudulent conduct.

163.   As alleged in the preceding paragraphs, the misrepresentations by Defendant detailed above constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

164.   There were reasonable available alternatives to further Defendant's legitimate business interests other than the conduct described herein. Defendant could have used packaging appropriate for the amount of Product contained therein.

165.   All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

166.   Pursuant to Business and Professions Code Sections 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their practice of under-filling the Product's container. Likewise, Plaintiff and the Class seek an order requiring Defendant to disclose such misrepresentations, and perform a corrective advertising campaign.

167.   Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct. Plaintiff paid an unwarranted premium for these products.  Specifically, Plaintiff paid for 41% of candy product he never received.  Plaintiff would not have purchased the Product if he had known that the boxes contained nonfunctional slack-fill.

### C.    "Unlawful" Prong

168.   California Business and Professions Code Section 17200, *et seq.,* identifies violations of other laws as "unlawful practices that the unfair competition

law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

169.     Defendant's packaging of the Product, as alleged in the preceding paragraphs, violates California Civil Code Section 1750, *et. seq.,* California Business and Professions Code Section 17500, *et. seq.,* California's Sherman Law, California Business and Professions Code Section 12606.2, *et seq.*, the FDCA, and 21 C.F.R Section 100.100.

170.     Defendant's packaging of the Product, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes unlawful conduct.

171.     Defendant knew or should have known of its unlawful conduct.

172.     As alleged in the preceding paragraphs, the misrepresentations by Defendant detailed above constitute an unlawful business practice within the meaning of California Business and Professions Code Section 17200.

173.     There were reasonable available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have used packaging appropriate for the amount of candy product contained therein.

174.     All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

175.     Pursuant to Business and Professions Code Sections 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their practice of under-filling the Product's box. Likewise, Plaintiff and the Class seek an order requiring Defendant to disclose such misrepresentations, and perform a corrective advertising campaign.

176.     Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiff paid an unwarranted premium

for these products.  Specifically, Plaintiff paid for 41% candy product he never received. Plaintiff would not have purchased the Product if he had known that the Product contained nonfunctional slack-fill.

## COUNT FOUR

### Unjust Enrichment

177.    Plaintiff repeats and realleges the allegations set forth above, and incorporate the same as if set forth herein at length.

178.    By means of Defendant's wrongful conduct alleged herein, Defendant knowingly sold the Products to Plaintiff and members of the Class in a manner that was unfair, unconscionable, and oppressive.

179.    Defendant knowingly received and retained wrongful benefits and funds from Plaintiff and members of the Class. In so doing, Defendant acted with conscious disregard for the rights of Plaintiff and members of the Class.

180.    As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

181.    Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

182.    Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, without justification, from selling the Products to Plaintiff and members of the Class in an unfair, unconscionable, and oppressive manner. Defendant's retention of such funds under such circumstances making it inequitable to do so constitutes unjust enrichment.

183.    The financial benefits derived by Defendant rightfully belong to Plaintiff and members of the Class. Defendant should be compelled to return in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by them.

184.    Plaintiff and members of the Class have no adequate remedy at law.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and on behalf of the Class defined herein, prays for judgment and relief on all Causes of Action as follows:

A.     For an order certifying the class and appointing Plaintiff as class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure, and designating Plaintiff's counsel as counsel for the Class;

B.     For all forms of relief set forth above;

C.     Damages against Defendant in an amount to be determined at trial, together with pre-judgment and post-judgment interest at the maximum rate allowable by law on any amounts awarded;

D.     Restitution and/or disgorgement in an amount to be determined at trial;

E.     Punitive damages;

F.     An order enjoining Defendant from continuing to engage in the unlawful conduct and practices described herein;

D.     An order awarding Plaintiff his costs of suit incurred herein, including expert witness fee and reasonable attorneys' fees and pre and post-judgment interest, at the legal rate; and

E.     For an order granting such other and further as may be just and proper.

**JURY TRIAL DEMANDED**

Plaintiff demands a jury trial on all triable issues.

DATED: May 10, 2018                              **CLARKSON LAW FIRM, P.C.**

_/s/ Ryan J. Clarkson_____
Ryan J. Clarkson, Esq.
Shireen M. Clarkson, Esq.
Bahar Sodaify, Esq.
Attorneys for Plaintiff

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069