**CLARKSON LAW FIRM, P.C**.
Ryan J. Clarkson (SBN 257074)
rclarkson@clarksonlawfirm.com
Shireen M. Clarkson (SBN 237882)
sclarkson@clarksonlawfirm.com
Bahar Sodaify (SBN 289730)
bsodaify@clarksonlawfirm.com
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiff Thomas Iglesias*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS IGLESIAS, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>      vs.<br><br>FERRARA CANDY CO., and DOES 1 through 10, inclusive,<br><br>            Defendants. | Case No. 3:17-cv-00849-VC<br><br>**[CLASS ACTION]**<br><br>**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hon. Judge Vince Chabbria<br><br>Complaint filed:     February 21, 2017<br><br>Hearing Date:     June 21, 2018<br>Hearing Time:     10:00 AM<br>Hearing Location:     Courtroom 4 |

*(Left margin, rotated:)* Clarkson Law Firm, P.C. 9255 Sunset Blvd., Suite 804 Los Angeles, CA 90069

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ................................................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND.............................................3

    A. Litigation History...................................................................................3

    B. Discovery ...............................................................................................3

    C. Class Certification, Amendment, and Settlement Negotiation ................3

    D. The Proposed Settlement ........................................................................4

        1. Monetary Relief.............................................................................4

        2. Injunctive Relief............................................................................5

        3. Administrative Expenses, Attorneys' Fees and Costs, and Incentive Awards .....5

        4. Notice ...........................................................................................6

III. PRELIMINARY APPROVAL IS WARRANTED ...............................................7

    A. Relative Value of Plaintiff's Claims ......................................................8

    B. Risk, Expense, Complexity, and Likely Duration of Continuing Litigation .............9

    C. The Amount Offered in Settlement.......................................................11

    D. The Extent of Discovery Conducted and the Information Obtained .......12

    E. Experience and Views of Counsel ........................................................13

IV. THE COURT SHOULD PROVISIONALLY CERTIFY THE SETTLEMENT CLASS ...14

    A. The Nationwide Settlement Class Should Be Conditionally Certified....14

        1. Nationwide Class Members Are Victims of the Same Misconduct as Plaintiff ...14

        2. A Fifty-State Consumer Protection Class Can Be Certified............15

        3. The Plaintiff's Unjust Enrichment Claims Can Be Pursued on a Nationwide Basis ...18

    B. Nationwide Settlement Classes Are Still Permitted After *Hyundai* ........20

V. THE PROPOSED NOTICE IS ADEQUATE ....................................................22

VI. DATES FOR THE FINAL APPROVAL PROCESS............................................23

VII. CONCLUSION................................................................................................25

Page(s)

**CASES**

*Accord Porter v. Hu*,
116 Haw. 42 (Ct. App. 2007)...............................................................20

*Allen v. Bedolla*,
787 F.3d 1218 (9th Cir. 2015) ............................................................12

*Am. Towers Owners Ass'n, Inc. v. CCI Mech., Inc.*,
930 P.2d 1182 (Utah 1996)..................................................................20

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997)......................................................................14, 21

*Andren v. Alere, Inc.*,
2017 WL 6509550 (S.D. Cal. Dec. 20, 2017)................................16, 19

*Bearden v. Honeywell Int'l, Inc.*,
2010 WL 3239285 (M.D. Tenn. Aug. 16, 2010) .................................16

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) ..............................................................9

*ConAgra Brands, Inc. v. Briseno*,
138 S. Ct. 313 (2017) ............................................................................9

*Cotter v. Lyft, Inc.*,
193 F. Supp. 3d 1030 (N.D. Cal. 2016) ...........................................2, 7, 8

*Curtis-Bauer v. Morgan Stanley & Co.*,
2008 U.S. Dist. LEXIS 85028 (N.D. Cal. Oct. 22, 2008)......................9

*Daugherty v. Sony Elecs., Inc.*,
2006 WL 197090 (Tenn. Ct. App. Jan. 26, 2006) ...............................20

*Eddings v. DS Services of America, Inc.*,
2016 WL 3390477 (N.D. Cal. May 20, 2016) ......................................2

*Eisen v. Carlisle and Jacquelin*,
417 U.S. 156 (1974)............................................................................22

*Fejzulai v. Sam's West, Inc.*,
205 F. Supp. 3d 723 (D.S.C. 2015).....................................................16

*Fulford v. Logitech, Inc.*,
2010 U.S. Dist. LEXIS 29042 (N.D. Cal. Mar. 5, 2010)....................10

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

*Ham v. Hain Celestial Grp., Inc.*,
  70 F. Supp. 3d 1188 (N.D. Cal. 2014) ...................................................20

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .................................................8, 14

*Hunt v. VEP Healthcare Inc.*,
  2017 WL 3608297 (N.D. Cal., Aug. 22, 2017) ...................................2

*In re Abbott Labs. Norvir Anti-Tr. Litig.*,
  2007 WL 1689899 (N.D. Cal. June 11, 2007) ...................................18

*In re Apple Computer Sec. Litig.*,
  1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) .....................10

*In re Anthem, Inc. Data Breach Litig.*,
  162 F. Supp. 3d 953 (N.D. Cal. 2016) ...........................................20

*In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*,
  2015 WL 5166014 (E.D. Tenn. June 24, 2015) ...................................15

*In re Checking Account Overdraft Litig.*,
  307 F.R.D. 630 (S.D. Fla. 2015) .................................................18

*In re Google Referrer Header Privacy Litig.*,
  2014 WL 1266091 (N.D. Cal. Mar. 26, 2014).....................................23

*In re Hydroxycut Marketing & Sales Practices Litig.*,
  299 F.R.D. 648 (S.D. Cal. 2014) .................................................15

*In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*,
  955 F. Supp. 2d 1311 (S.D. Fla. 2013) ...........................................20

*In re Hyundai & Kia Fuel Econ. Litig.*,
  881 F.3d 679 (9th Cir. 2018) .................................................14, 20, 21

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ...................................................12

*In re Mercedes–Benz Tele Aid Contract Litig.*,
  257 F.R.D. 46 (D.N.J. 2009)...................................................18

*In re Netflix Privacy Litig.*,
  2013 WL 1120801 (N.D. Cal. Mar. 18, 2013).................................7, 10

*In re Netflix Privacy Litig.*,
  2012 WL 2598819 (N.D. Cal. July 5, 2012).....................................23

*In re Omnivision Techns., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...........................................13

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

*In re Optical Disk Drive Antitrust Litig.*,
    2012 WL 1366718 (N.D. Cal. Apr. 19, 2012) ...................................................16

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ...................................................13

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...................................................7

*In re Tobacco II Cases,*
    207 P.3d 20 (Cal. 2009) ...................................................17

*Kwikset v. Superior Court*,
    51 Cal. 4th 310 (2011) ...................................................20

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ...................................................12

*Linney v. Cellular Alaska Partnership*,
    151 F.3d 1234 (9th Cir. 1998) ...................................................11

*Lisk v. Lumber One Wood Preserving, LLC*,
    792 F.3d 1331 (11th Cir. 2015) ...................................................15

*Luskin's, Inc. v. Consumer Prot. Div.*,
    353 Md. 335 (1999) ...................................................17

*Metcap Sec. LLC v. Pearl Senior Care, Inc.*,
    2009 WL 513756 (Del. Ch. Feb. 27, 2009) ...................................................20

*Miller v. Ghirardelli Chocolate Co.*,
    2015 WL 758094 (N.D. Cal. Feb. 20, 2015) ...................................................6

*Mounce v. CHSPSC, LLC*,
    2017 WL 4392048 (W.D. Ark. Sept. 29, 2017) ...................................................15

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ................................................... *passim*

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ...................................................11

*One Step Up, Ltd. v. Webster Bus. Credit Corp.*,
    87 A.D.3d 1 (N.Y. App. Div. 2011) ...................................................19

*Patterson v. BP Am. Prod. Co.*,
    240 P.3d 456 (Colo. App. 2010) ...................................................17

*Pennsylvania Emp., Benefit Trust Fund v. Zeneca, Inc.*,
    710 F.Supp.2d 458 (D. Del. 2010) ...................................................18

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

*Peterson v. Cellco P'ship,*
    164 Cal. App. 4th 1583 (2008) ..................................................................19

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985) .................................................................................22

*Pitts v. Am. Sec. Ins. Co.,*
    144 N.C. App. 1, 14 (2001) ....................................................................17

*Powers v. Lycoming Engines,*
    245 F.R.D. 226, 231 (E.D. Pa. 2007) ....................................................19

*Reed v. Dynamic Pet Prods.,*
    2016 WL 3996715 (S.D. Cal. July 21, 2016) .........................................16

*Rodriguez v. W. Publ'g Corp.,*
    563 F.3d 948 (9th Cir. 2009) ..............................................................9, 13

*Rosenburg v. I.B.M.,*
    2007 WL 128232 (N.D. Cal. 2007) .......................................................22

*Schroeder v. Buchholz,*
    622 N.W.2d 202 (N.D. 2001) .................................................................20

*Schumacher v. Tyson Fresh Meats, Inc.,*
    221 F.R.D. 605, 612 (D.S.D. 2004) .......................................................18

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,*
    559 U.S. 393 (2010) .................................................................................15

*Simpao v. Gov't of Guam,*
    369 Fed. Appx. 837, 838 (9th Cir. 2010) ..............................................23

*Trustmark Ins. Co. v. Bank One, Arizona, NA,*
    202 Ariz. 535 (Ct. App. 2002) ...............................................................20

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043 (9th Cir. 2002) .................................................................6

*Wittman v. CB1 Inc.,*
    2016 WL 3093427 (D. Mont. June 1, 2016) .........................................15

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**OTHER AUTHORITIES**

7A Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 1786 (3d ed. 2008)............................22

21 C.F.R. §100.100 ...................................................................................................................14

Ark. Bus. & Com. Code § 4-88-107 ........................................................................................16

Cal. Civ. Code §1770 ...............................................................................................................16

Colo. Rev. Stat. § 6-1-105 ........................................................................................................16

Fed.R.Civ.P.12 ............................................................................................................................3

Fed.R.Civ.P.15 ............................................................................................................................3

Fed.R.Civ.P.23 .................................................................................................................. *passim*

Fed.R.Civ.P.30 ....................................................................................................................3, 13

Federal Judicial Center, Manual for Complex Litigation §21.62 (4th ed. 2004).........................9

*Manual for Complex Litig., Third,* §30.41 (1995) ......................................................................7

MS Code § 75-24-5 ...................................................................................................................16

NEWBERG ON CLASS ACTIONS §11.25 (1992)..............................................................................7

OR Rev. Stat. § 646.608 ...........................................................................................................16

Tenn. Com. Code § 47-18-104 .................................................................................................16

Tex. Bus & Com. Code § 17.46 ...............................................................................................16

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on Thursday, June 21, 2018 at 10:00 am, or as soon thereafter as the matter may be heard, in Courtroom 4, 17th Floor, before the Honorable Judge Vince Chhabria, Plaintiff Thomas Iglesias ("Plaintiff"), on behalf of himself, the general public, and all others similarly situated, by and through his counsel Ryan J. Clarkson, Shireen M. Clarkson, and Bahar Sodaify of Clarkson Law Firm, P.C., shall and hereby does move the Court, pursuant to Federal Rules of Civil Procedure 23(e), for an order as follows:

(1) Preliminarily approving the settlement of this class action as set forth in the class action settlement agreement dated May 10, 2018, attached as Exhibit 1 to the Declaration of Ryan J. Clarkson filed herewith;

(2) Preliminarily approving, for settlement purposes only, a settlement class defined as "All persons who between February 21, 2013 and the date of Preliminary Approval, purchased, in the United States, one or more candy products manufactured by Defendant and packaged for sale or resale to consumers in an opaque cardboard box (including bag-in-a-box products), including Jujyfruits®, Jujubes®, Now and Later®, Lemonhead®, Applehead®, Cherryhead®, Grapehead®, RedHots®, Trolli®, Chuckles®, Black Forest®, Jawbuster®, Jawbreaker®, Brach's®, Boston Baked Beans®, Super Bubble®, Rainblo®, Atomic Fireball®, and all flavors and varieties of those candies." Excluded Persons are: (1) the Honorable Vince Chhabria (2) Mediator Martin Quinn; (3) the Honorable William Cahill; (4) any member of their immediate family; (5) any government entity, (6) Defendant; (7) any entity in which Defendant has a controlling interest; (8) any of Defendant's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; (9) counsel for the Parties; and (10) any persons who timely opt-out of the Settlement Class;

(3) Preliminarily approving Plaintiff Thomas Iglesias as the Class Representative, and appointing Clarkson Law Firm, P.C. as Class Counsel for the Settlement Class;

(4) Directing the dissemination of notice in the form and manner set forth in the settlement agreement; and

(5) Setting a date for the final approval hearing.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

A copy of the proposed order granting preliminary approval is filed herewith.

This motion is made on the grounds that preliminary approval of the proposed class action settlement is proper, given that each requirement of Rule 23(e) has been met.

This Motion is based on Federal Rule of Civil Procedure 23, this Notice of Motion, the supporting Memorandum of Points and Authorities, the Declaration of Ryan J. Declaration, the Declaration of Mark Schey, exhibits, the pleadings and papers on file herein, and any other written and oral arguments that may be presented to the Court.

Pursuant to Local Rule 7-4(a)(3), the statement of issue to be decided by the Court is as follows: Whether the Court should preliminarily approve the proposed class action settlement pursuant to Fed. R. Civ. P. 23(e).

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The parties have reached a nationwide settlement of the putative class action filed by Plaintiff Thomas Iglesias ("Plaintiff" or "Mr. Iglesias") against Defendant Ferrara Candy Co. ("Defendant" or "Ferrara"). Ferrara manufactures confectionary products, including opaque "theater boxes" of candy sold at retail outlets and movie theaters throughout the United States.[1] On February 21, 2017, Plaintiff filed a complaint in this Court alleging that the Products' oversized opaque packaging deceives consumers into believing they are receiving more candy than they actually receive due to the presence of nonfunctional empty space, or "slack-fill." In the second amended complaint ("SAC"), Plaintiff alleges claims for unjust enrichment and violations of state and federal packaging laws and consumer protection statutes (Dkt. 71). It is appropriate to certify a nationwide class because Defendant's challenged packaging is uniform for all purchasers, and the elements of the legal claims are nearly identical in all states. The minor differences among state laws are immaterial to certification particularly because the laws of all 50 states are substantively identical to California.

Due to this litigation, Defendant has agreed to modify its fill level quality control procedures and target fill levels to at least 75% for theater box Products, and at least 50% for bag-in-a-box Products.

Defendant will also pay $2.5 million into a common fund. Each class member who makes a claim may obtain a cash refund of 50 cents per box purchased. A class member may submit claims for an unlimited number of purchases. Up to 15 claims, for a total of $7.50, will be paid without Proof of Purchase. Plaintiff may apply for a reasonable incentive award from the common fund not to exceed $5,000, and his counsel may apply for an award from the common fund to reimburse their costs, and to pay their attorneys' fees not to exceed 30% of the fund.

---

[1] The "Products" or "Covered Products" or "Settlement Class Products" means all candy products manufactured by Defendant and packaged for sale or resale to consumers in an opaque cardboard box (including bag-in-a-box products), including Jujyfruits®, Jujubes®, Now and Later®, Lemonhead®, Applehead®, Cherryhead®, Grapehead®, RedHots®, Trolli®, Chuckles®, Black Forest®, Jawbuster®, Jawbreaker®, Brach's®, Boston Baked Beans®, Super Bubble®, Rainblo®, Atomic Fireball®, and all flavors and varieties of those candies (Dkt. 71).

Notice is to be provided to the class via several methods, including (1) print publication, (2) internet impression advertising, (3) targeted search term advertising, (4) a press release, and (5) a dedicated settlement website. A well-known third-party claims administrator has designed the notice plan and has attested that notice will reach at least 70% of the class.

A copy of the settlement agreement is attached as Exhibit ("Ex.") 1 to the Declaration of Ryan J. Clarkson ("RJC Decl.") filed herewith. The proposed class notices can be found at Exhibits D and E. The proposed claim form is attached as Exhibit C.

The settlement falls within this Court's standard for preliminary approval because it is fair, reasonable, and adequate, and will survive the same rigorous level of scrutiny as this Court applied in *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1036 (N.D. Cal. 2016); *Hunt v. VEP Healthcare, Inc.*, No. 16-cv04790-VC, 2017 WL 3608297 (N.D. Cal., Aug. 22, 2017); and, *Eddings v. DS Services of America, Inc.*, No. 15-cv-02576-VC, 2016 WL 3390477 (N.D. Cal. May 20, 2016). There is a presumption of fairness because the settlement was reached after substantial discovery, law and motion practice, including a robust class certification motion supported by four retained experts who conducted full expert reports based on a detailed slack-fill analysis and 3,788-participant consumer survey, and after arms-length negotiations. *See Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).

Numerous other factors also strongly favor the settlement, including the risks of further litigation and the informed opinion of experienced counsel on all sides who have negotiated and approved it based upon their views of the strengths and weaknesses of the claims and defenses. *See id*. (finding that experienced counsel's views regarding settlement are entitled to great weight). The proposed Settlement is a product of extended arms-length negotiations between experienced attorneys familiar with the legal and factual issues of this case, including two mediations with experienced neutrals. As a result of these efforts, the parties are fully informed of the merits of this action and the fairness, adequacy, and reasonableness of the proposed settlement.

As detailed in Plaintiff's motion for class certification filed on March 5, 2018 (Dkt. 53-54), the proposed settlement class satisfies Rule 23(a), (b)(2) and (b)(3). Accordingly, Plaintiff's motion for preliminary approval should be granted.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Litigation History

Plaintiff filed his class action complaint on February 21, 2017, in the U.S. District Court for the Northern District of California, alleging violations of state and federal packaging laws and consumer protections laws (Dkt. 1). On April 19, 2017, Defendant filed a Rule 12(b)(6) motion to dismiss Plaintiff's complaint (Dkt. 14). On May 10, 2017, Plaintiff filed his FAC pursuant to Rule 15(a) to add additional remedies available under the statutes in lieu of an opposition (Dkt. 18).

On May 24, 2017, Defendant filed a Rule 12(b)(6) motion to dismiss the FAC, claiming the Products are not misleading and do not contain nonfunctional slack-fill (Dkt. 28), which Plaintiff opposed on June 7, 2017 (Dkt. 34), to which Defendant replied on June 14, 2017 (Dkt. 37), and the Court denied on July 25, 2017 (Dkt. 40).

On August 8, 2017, Defendant answered Plaintiff's FAC (Dkt. 41). After the completion of substantial discovery described *infra*, Plaintiff moved for class certification on (Dkt. 53-54) on March 5, 2018. The parties settled the case before Defendant filed its opposition (Dkt. 58).

### B.     Discovery

On June 27, 2017, Plaintiff served Defendant with requests for admissions, requests for production of documents, and special interrogatories. RJC Decl. ¶ 5. In connection with these requests, and Plaintiff's motion to compel further responses, which the Court granted on November 15, 2017, Defendant produced over 6,000 documents totaling tens of thousands of pages of complex information and spreadsheet data. *Id.* On November 13, 2017, Plaintiff's deposition took place in San Francisco, CA. *Id.* ¶ 6. On December 19-20, 2018, Plaintiff deposed Defendant's Rule 30(b)(6) corporate designees in Chicago, Illinois. *Id.* Plaintiff also subpoenaed third parties for sales and marketing data to support his claims. *Id.*

### C.     Class Certification, Amendment, and Settlement Negotiations

On October 10, 2017, the Parties attended a mediation in San Francisco, CA with mediator Martin Quinn. *Id.* ¶ 7.  The parties were unable to reach an agreement. *Id*. On February 2, 2018, the parties held a second mediation with the Honorable William Cahill (Ret.) in San Francisco, CA. *Id.* ¶ 8.  Although the case did not settle, Judge Cahill remained involved in ongoing

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

mediation discussions in the weeks and months that followed. *Id.* After Plaintiff filed his motion

for class certification and supporting documents on March 5, 2018, which included supporting

materials from four retained experts who conducted full expert reports based on a detailed slack-

fill analysis and 3,788-participant consumer survey, the case settled. *Id.* ¶ 9. As part of the

settlement, Defendant stipulated to the filing of Plaintiff's SAC which added a cause of action for

unjust enrichment and clarified the class definition (Dkt. 71). *Id.* ¶ 10.

### D. The Proposed Settlement

The settlement class consists of all persons who between February 21, 2013 and the date of

Preliminary Approval, purchased, in the United States, one or more candy products manufactured

by Defendant and packaged for sale or resale to consumers in an opaque cardboard box (including

bag-in-a-box products), including Jujyfruits®, Jujubes®, Now and Later®, Lemonhead®,

Applehead®, Cherryhead®, Grapehead®, RedHots®, Trolli®, Chuckles®, Black Forest®,

Jawbuster®, Jawbreaker®, Brach's®, Boston Baked Beans®, Super Bubble®, Rainblo®, Atomic

Fireball®, and all flavors and varieties of those candies. Excluded Persons from the class are: (1)

the Honorable Vince Chhabria (2) Mediator Martin Quinn; (3) the Honorable William Cahill; (4)

any member of their immediate families; (5) any government entity, (6) Defendant; (7) any entity

in which Defendant has a controlling interest; (8) any of Defendant's subsidiaries, parents,

affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; (9)

counsel for the Parties; and (10) any persons who timely opt-out of the Settlement Class. RJC

Decl. Ex. 1 ¶¶ 1.11, 1.14, 1.40.

### 1. Monetary Relief

Defendant will pay or cause payment of a total of $2.5 million in cash to a Claim Fund.

The Claim Fund will be established to pay the following: (1) class members' claims, (2) the costs

of notice and claims administration, (3) Plaintiff's attorneys' fees and costs, and (4) an incentive

award to Plaintiff. *Id.* ¶ 4.21.

Each class member who makes a claim may obtain a cash refund of 50 cents per box

purchased. *Id.* ¶ 4.2.2. A class member may submit claims for an unlimited number of purchases.

*Id.* Up to 15 claims, for a total of $7.50, will be paid without Proof of Purchase. *Id.* There is no

cap on the number or amount of claims submitted by class members with Proof of Purchase. *Id*. These amounts are subject to being increased or decreased, respectively, pro rata to ensure the Claim Fund is exhausted. *Id*. ¶ 4.2.6. Each class member may submit a claim either electronically through a settlement website or by mail. *Id*. ¶ 5.1.3.1. The claims process will include an agreed-upon verification process designed to reduce the risk of fraudulent claims. *Id*. ¶ 4.2.5. There will be no reversion of money to the Defendant. *Id*. ¶ 4.2.7.

The claim form (in English and Spanish versions) is a simple two-page form that can be completed in a few minutes either online or submitted by mail. *See* RJC Decl. Ex.1, Ex. C (Claim Form). Proof of Purchase can also be submitted electronically or via U.S. mail.

### 2. Injunctive Relief

The settlement agreement also includes changed practices. As a result of the litigation, Defendant will provide the Settlement Class injunctive relief by way of modifying its fill level quality control procedures and target fill levels to at least 75% for theater box Covered Products, excluding bag-in-a-box, and 50% for all other Covered Products, including bag-in-a-box. *Id*. ¶ 4.1. Notably, Plaintiff's packaging design engineering expert estimated the actual fill level for theater box Products to range from 42.6% to 52.5% and for Trolli bag-in-a-box Products to be 27.2% (Dkt. 54-18 p. 30 tbl. 11).

### 3. Administrative Expenses, Attorneys' Fees and Costs, Incentive Awards

All costs of notice and administration of the settlement (approximately $522,000) will be paid from the Claim Fund. In addition, Plaintiff's counsel will request payment from the Claim Fund of an incentive award of $5,000 for Plaintiff Iglesias. *Id*. ¶ 9.2. The incentive fee is designed to compensate Plaintiff for the time and risk he took in prosecuting this action (including the risk of liability for Defendant's costs). Plaintiff's counsel estimates Plaintiff has already contributed at least 45 hours to this case, including sitting for a full-day deposition. RJC Decl. ¶ 11.

The settlement agreement provides that Plaintiff's counsel may apply for reimbursement of their out of pocket expenses, plus attorneys' fees in an amount not to exceed $750,000, or 30% of the Claim Fund, subject to court approval. *Id*. Ex. 1 ¶ 9.1. Any request will be justified by a lodestar-multiplier analysis and will be in line with standard awards under other common fund

settlements, under which fees are awarded as percentage of the fund. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) (upholding award of 28% of the common fund); *Miller v. Ghirardelli Chocolate Co.*, 2015 WL 758094, at *5 (N.D. Cal. Feb. 20, 2015) (awarding 30% of the common fund in fees in food labeling class action).

As of the filing of this motion, Plaintiff's counsel has spent approximately 1500 hours working on this litigation. RJC Decl. ¶ 12. Its lodestar is greater than the amount it will seek in attorneys' fees. *Id*. Counsel has additionally incurred approximately $365,000 in unreimbursed expenses. *Id*. The Court need not consider these issues at present; rather it is appropriate to defer them until the final approval hearing, after class members have had an opportunity to comment. Besides, in further consideration of the class' interests, Plaintiff's counsel may apply for an award of attorneys' fees and costs below the maximum amount allowable under the Parties' settlement agreement depending on the number of claims to the Claim Fund. *Id*. ¶ 13. The request for fees, costs, and incentive awards will be the subject of a separate motion to be filed, and posted on the settlement website, at least 42 days before the final approval hearing, which is 14 days before the deadline for class member objections.

### 4. Notice

The claims administrator (Digital Settlement Group or "DSG") will establish a settlement website, which shall contain the settlement notices, a contact information page that includes address and telephone numbers for the claim administrator and the parties, the settlement agreement, the signed order of preliminary approval, online and printable versions of the claim form and the opt out forms, answers to frequently asked questions, a Product list, and (when it becomes available) Plaintiff's counsel's application for attorneys' fees, costs, expenses and incentive awards and motion for final approval.

Notice will be published in several places, all of which will refer class members to the settlement website. *See* Declaration of Mark Schey ("Schey Decl.") Ex. A. The Published Notice will appear in *Soap Opera Digest*, *Life & Style*, and *National Enquirer;* and be distributed as a press release through PR NewsWire. *Id*. ¶¶ 19-20. Online Notice linking to the Settlement Website will be published for a total of 52 million combined impressions on various websites targeted to

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

1    individuals interested in candy. *Id.* ¶ 24. Finally, the claims administrator will operate a toll-free

2    information line to provide information about the case and settlement. *Id.* ¶ 11.

3    **III.    PRELIMINARY APPROVAL IS WARRANTED**

4            "Approval under [Rule] 23(e) involves a two-step process in which the Court first

5    determines whether a proposed class action settlement deserves preliminary approval and then,

6    after notice is given to class members, whether final approval is warranted." *DIRECTV, Inc*., 221

7    F.R.D. at 525 (citing *Manual for Complex Litig., Third*, § 30.41 (1995)). The purpose of

8    preliminary approval is for the Court to determine whether the parties should notify the putative

9    class members of the proposed settlement and proceed with a fairness hearing. See *In re*

10   *Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Notice of a settlement

11   should be disseminated where "the proposed settlement appears to be the product of serious,

12   informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant

13   preferential treatment to class representatives or segments of the class, and falls within the range

14   of possible approval." *Id.* (*quoting* NEWBERG ON CLASS ACTIONS § 11.25 (1992)).

15           Although the standard for reviewing class action settlements at the final approval stage is

16   well settled, the standard required at the preliminary approval stage is not as clear. *Cotter v. Lyft,*

17   *Inc*., 193 F. Supp. 3d 1030 * 1036, 2016 U.S. Dist. LEXIS 184931 (N.D. Cal. June 23, 2016).

18   However, this Court has clarified the standard, indicating that "district courts should review class

19   action settlements just as carefully at the initial stage as they do at the final stage. At the initial

20   stage, the inquiry should be whether the settlement is 'fair, reasonable, and adequate,' based on

21   any information the district court receives from the parties or can obtain through its own

22   research." *Id.* at *1037. "Determining whether the settlement falls in the range of reasonableness

23   also requires evaluating the relative strengths and weaknesses of the plaintiffs' case; it may be

24   reasonable to settle a weak claim for relatively little, while it is not reasonable to settle a strong

25   claim for the same amount." *Id*. Moreover, the fairness and reasonableness of a settlement

26   agreement is presumed where "that agreement was the product of non-collusive, arms' length

27   negotiations conducted by capable and experienced counsel." *In re Netflix Privacy Litig*., No.

28   5:11-CV-00379-EJD, 2013 U.S. Dist. LEXIS 37286, *11 (N.D. Cal. Mar. 18, 2013).

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

To approve a class settlement, a court must determine that the settlement is "fair, reasonable, and adequate." *Cotter,* 193 F. Supp. 3d at 1035 (quoting Fed. R. Civ. P. 23(e)(2)). This Court "review[s] class action settlements just as carefully at the initial stage" as it does "at the final stage." *Id.* at 1037. Courts look to the relative value of the settlement and consider plaintiff's expected recovery balanced against the value of the settlement offer as well as evaluate the relative strengths and weaknesses of plaintiff's case. *Id.* Moreover, the court also looks at a number of factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; (8) and the reaction of the class members to the proposed settlement. *Id.* at 1035 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

Here, as discussed *infra,* the balancing of these factors reveals the strengths and weaknesses of Plaintiff's claims and readily establishes that the proposed settlement should be preliminarily approved.

### A. Relative Value of Plaintiff's Claims

Were Plaintiff to proceed to and succeed at trial, the "best case" recovery may not be better than the settlement remedy. Plaintiff's retained experts in economics and conjoint analysis, Dr. Justin Lenzo and Dr. Michael Bechtel, respectively, calculated the price premiums attributable to the challenged packaging. Based on the results of a 3,788-participant consumer survey, which were applied to the results of a detailed slack-fill analysis of the Products completed by Plaintiff's packaging design engineering expert, Dr. Claire Sand (Dkt. 54-18), the price premium attributable to nonfunctional slack-fill in the retail channels equaled 16.1% to 26.4% across the Products (Dkt. 54-13 ¶ 145). The price premium for the movie theater channel was slightly less, ranging from 9.9% to 16.6% across the Products. *Id.* Based on an average retail price of $1.00 per unit, the per-unit price premium would equal approximately 10 cents to 26 cents. This settlement, however, provides for a generous refund of 50 cents per box purchased, or a *two- to five-times multiplier* of what class members could potentially recover at trial. RJC Decl. Ex. 1 ¶ 4.2.2. Thus, the cash

recovery is far greater on a per box basis than the amount class members could obtain at trial. Notably, the $2.5 million Claim Fund will allow for full restitution or better even in the unlikely event the Claim Fund is oversubscribed and subject to a pro rata reduction of claim payments.

The monetary relief provided by this settlement is especially beneficial in a contested proceeding like this one, where class members who lack proof of purchase—which is likely the vast majority of class members here—might get nothing at all. *See, e.g., Briseno v. ConAgra Foods, Inc.,* 844 F.3d 1121, 1132 (9th Cir.), *cert. denied sub nom. ConAgra Brands, Inc. v. Briseno*, 138 S. Ct. 313 (2017) (explaining that the post-trial claims process by which each consumers' affidavits would "force a liability determination" as to that consumer).

In addition to the monetary relief, the changed practices will benefit class members and other consumers by ensuring they receive an amount of candy commensurate with their expectations going forward. Plaintiff's experts found that consumers on average expect the Products to be filled 67% based on the size of the Products' box (Dkt. 54-13 ¶¶ 25, 99). Due to this litigation, Defendant has agreed to modify its fill level quality control procedures and target fill levels to at least 75% for theater box Products.[2] RJC Decl. Ex. 1 ¶ 4.1.

**B.  Risk, Expense, Complexity, and Likely Duration of Continuing Litigation**

Proceeding in this litigation in the absence of settlement poses significant risks, such as failing to certify a class, having summary judgment granted against Plaintiff, or losing at trial. Such considerations have been found to weigh heavily in favor of settlement. See Federal Judicial Center, Manual for Complex Litigation § 21.62, at 316 (4th ed. 2004); *Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948, 965 (9th Cir. 2009); *Curtis-Bauer v. Morgan Stanley & Co.*, No. C 06-3903 TEH, 2008 U.S. Dist. LEXIS 85028, at *13 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class."). Even assuming that Plaintiff were to survive certification, he would face the risk of establishing liability at trial if

---

[2] Defendant has agreed to modify its fill level quality control procedures and target fill levels to at least 50% for bag-in-a-box Products like Trolli (RJC Decl. Ex. 1 ¶ 4.1). Plaintiff's packaging design engineering expert estimated the actual fill level for theater box Products to range from 42.6% to 52.5% and for Trolli bag-in-a-box Products to be 27.2% (Dkt. 54-18 p. 30 tbl. 11).

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

there is any conflicting expert testimony between his own expert witnesses and Defendant's expert witnesses. In this "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which expert version would be accepted by the jury. The experience of Plaintiff's counsel has taught them that these considerations can make the ultimate outcome of a trial highly uncertain.

Moreover, even if Plaintiff were to prevail at trial, the class would face additional risks if Defendant appeals or moves for a new trial. See *In re Apple Computer Sec. Litig.*, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) (the jury rendered a verdict for plaintiffs exceeding $100 million, however, the court overturned the verdict and ordered a new trial with respect to the corporate defendant). By settling, Plaintiff and class members avoid these risks, as well as the delays and risks of the appellate process.

Plaintiff also faces risks in certifying a class and maintaining that class status through trial. Even assuming that the Court were to grant Plaintiff's March 5, 2018 motion for class certification, the class could still be decertified at any time. See *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.") (internal citations omitted). From their prior experience, Plaintiff's counsel anticipates that Ferrara would likely move for reconsideration, attempt to appeal the Court's decision pursuant to Rule 23(f), and/or move for decertification at a later date. Here, the Settlement Agreement eliminates these risks by ensuring class members a recovery that is "certain and immediate, eliminating the risk that class members would be left without any recovery… at all." *Fulford v. Logitech, Inc.*, 2010 U.S. Dist. LEXIS 29042, at *8 (N.D. Cal. Mar. 5, 2010).

In addition, the expense to prosecute this case has been substantial in light of the need for expert testimony from multiple disciplines, including packaging design engineering, economics, conjoint analysis, and marketing. RJC Decl. ¶ 14. In order to present a robust case for class certification, Plaintiff retained an expert in each of these fields. *Id*. Undoubtedly, the quality of Plaintiff's expert declarations, expert reports, and studies proffered by his retained experts in support of class certification was a substantial factor in persuading Defendant to agree to this

settlement. *Id*. ¶ 15. Were this case to proceed, additional expert costs would quickly accumulate as a result of expert depositions, rebuttal reports, oppositions to any *Daubert* challenges, testimony, and any associated costs such as travel expenses. *Id*. ¶ 16. The additional accumulation of such costs could quickly lead to a scenario in which settlement might not be economically feasible for either party. *Id*.

Finally, given the fact that a scheduling order has not yet been entered in this case, a trial date would likely not be scheduled to commence until sometime in early 2019 or later. Thus, any monetary and injunctive relief, which is not guaranteed and likely would not be as substantial as what Plaintiff has achieved with this settlement, would probably be delayed by at least a year. RJC Decl. ¶ 17. In the meantime, Defendant would be permitted to continue to deceptively package the Products with impunity to the financial detriment of class members and consumers. *Id*.

### C.    The Amount Offered in Settlement

This factor "assess[es] the consideration obtained by the class members in a class action settlement." *DIRECTV*, 221 F.R.D. at 527. "[I]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982). "In this regard, it is well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *DIRECTV*, 221 F.R.D. at 527 (citing *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998)).

Plaintiff's best-case recovery would be the average "premium" for the alleged consumer deception attributable to the presence of alleged nonfunctional slack-fill **(**Dkt. 54-13 ¶ 145). Plaintiff believes that his likely "best case" recovery at trial would be approximately $20 million, based on applying Drs. Lenzo and Bechtel's damages analysis (Dkt. 54-13) to nationwide sales figures. RJC Decl. ¶ 18. At final approval, Plaintiff will provide further testimony from Drs. Lenzo and Bechtel to support this damages estimate. *Id*. ¶ 19.  However, Defendant disputes that any such premium exists, and expert testimony on the subject is likely to diverge wildly. *Id*.

The settlement amount of $2.5 million, which does not include the value of the changed practices, may appear to be a small portion of the total amount of damages at trial, but Plaintiff

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

believes this recovery to be fair in light of the risks discussed above, as well as the risk of not being able to collect such a large award. *Id.* ¶ 20. Further, the per-claim amount of 50 cents per box purchased, with no cap on claims with Proof of Purchase, and a 15 box/$7.50 cap on claims without Proof of Purchase, is a good result compared to the possible result in a contested proceeding, as discussed above. *Id.* Indeed, these amounts will likely result in recoveries to class members on a per-box basis well in excess of the price premium damages calculated by Plaintiff's experts to be available at trial. *See* Section III(A), *supra*. Defendant's changed practices are also likely to benefit class members. At the time of final approval, Plaintiff's economics expert, Dr. Justin Lenzo, will opine as to some amounts class members will save due to the packaging changes. The value of injunctive relief—including the benefit to consumers in the form of an improved marketplace that is not skewed by false advertising—can properly be considered when evaluating a settlement's fairness. *See, e.g., Allen v. Bedolla*, 787F.3d 1218, 1224 (9th Cir. 2015) (explaining that in evaluating the fairness of a settlement, district courts should "make express findings about the value of the injunctive relief"); *Lane v. Facebook, Inc.*, 696 F.3d 811, 825 (9th Cir. 2012) (noting that a "judicially-enforceable agreement" to maintain changed practices may be considered in a fairness inquiry).

### D. The Extent of Discovery Conducted and the Information Obtained

Class settlements are presumed fair when they are reached "following sufficient discovery and genuine arms-length negotiation." *DIRECTV*, 221 F.R.D. at 528; 4 Newberg at § 11.24. Under this factor, courts evaluate whether class counsel had sufficient information to make an informed decision about the merits of the case. See *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Here, this matter has fully progressed through class and merits discovery. Accordingly, as discussed above, Plaintiff's counsel has received, examined, and analyzed information, documents, and materials that enabled them to assess the likelihood of success on the merits. RJC Decl. ¶ 21. These efforts include rounds of interrogatories and requests for production, reviewing over 6,000 documents totaling thousands of pages,[3] taking the depositions

---

[3] In fact, the actual amount of discovery materials exceeds this amount because many of these documents are actually voluminous Excel spreadsheets with multiple tabs of information and some of which are dozens if not hundreds of pages long when printed. RJC Decl. ¶ 24.

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

of Defendant's Rule 30(b)(6) corporate designees, serving third party subpoenas, extensive

discussions with Plaintiff's four experts who conducted in-depth studies and analyses, produced

thorough expert reports on product packaging design, marketing, and conjoint analysis/damages,

as well as a large-scale survey of 3,788 participants, and significant legal research and briefing. *Id*.

¶ 22. The parties also attended two in-person mediations in San Francisco, CA. *Id*. The settlement

agreement is the result of fully-informed negotiations based on a well of information obtained

during discovery. *Id*. ¶ 23.

### E. Experience and Views of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of

reasonableness." *In re Omnivision Techns., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).

Deference to Plaintiff's counsel's evaluation of the Settlement is appropriate because "[p]arties

represented by competent counsel are better positioned than courts to produce a settlement that

fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (citing *In*

*re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

Here, the settlement was negotiated by counsel with extensive experience in consumer

class action litigation. *See* RJC Decl. Ex. 2 (CLF firm resume.). Specifically, in anticipation of the

mediation sessions with respected mediators Martin Quinn and Judge Cahill, both parties

submitted comprehensive mediation briefs extensively detailing their legal and factual support.

RJC Decl. ¶ 25. When the case still did not settle, Plaintiff filed a robust motion for class

certification and supporting materials, including four expert declarations. *Id*. ¶ 26. The case settled

shortly thereafter with the continued assistance of mediator Judge Cahill. *Id*.

The settlement reflects the realities of each side's case and the information obtained during

the discovery process. *Id*. ¶ 27. The proposed settlement is the result of extensive, informed, arms-

length negotiations between counsel with substantial litigation experience, who are fully familiar

with the legal and factual issues in this case, and who have specific experience litigating and

settling complex and class action cases. *Id*.

///

///

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Accordingly, based on their collective experience, Plaintiff's counsel concluded that the settlement agreement provides exceptional results for the class while sparing the class from the uncertainties of continued and protracted litigation. *Id*. ¶ 28.

## IV. THE COURT SHOULD PROVISIONALLY CERTIFY THE SETTLEMENT CLASS

The Ninth Circuit has recognized that certifying a settlement class to resolve consumer lawsuits is a common occurrence. *Hanlon*, 150 F.3d at 1019. When presented with a proposed settlement prior to the class certification stage, a court must determine whether the putative settlement class satisfies the requirements for class certification under Rule 23. See Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."). In assessing those class certification requirements, a court may properly consider that there will be no trial. See *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").

On March 5, 2018, Plaintiff filed his motion for class certification with substantial supporting materials explaining why class certification is appropriate under Rule 23(a), (b)(2), and (b)(3) (Dkt. 53-54). As set forth below, the same common questions of fact predominate nationwide, and certification of nationwide classes is consistent with *In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679, 689 (9th Cir. 2018) ("*Hyundai*").

### A. The Nationwide Settlement Class Should Be Conditionally Certified

The SAC (Dkt. 71) pleads violations of California's consumer protection statutes and unjust enrichment on behalf of a nationwide class. Common questions of law and fact predominate on these claims. To the extent there are variations in state laws, the variations are immaterial.

#### 1. Nationwide Class Members Are Victims of the Same Misconduct as Plaintiff

Defendant sold the same Products nationwide with the allegedly deceptive packaging, using the same manufacturing. Just as is the case for all Californians, the basis for the alleged misconduct is the violation of a federal regulation: 21 C.F.R. Section 100.100 which considers

opaque packaging which contains nonfunctional slack-fill deceptive as a matter of law (Dkt. 71).

And just as is the case for all Californians, the claims of false advertising will present uniform

issues of material fact for class members nationwide, including whether the labeling was likely to

deceive, whether the Products contain nonfunctional empty space, and whether a price premium

can be demonstrated using common evidence. (Dkt 71.)

## 2. A Fifty-State Consumer Protection Class Can Be Certified

In light of the uniform alleged misconduct, the elements that need to be proven under the

consumer protection laws of the fifty states and the District of Columbia (collectively, "States")

are substantively identical. To the extent differences exist, they are immaterial. Were this case to

proceed to trial, the jury could be asked to provide special verdicts as to whether Plaintiff had

proved various facts—for example, that the Products' packaging is likely to deceive reasonable

consumers or contains nonfunctional slack-fill. It would then be a relatively simple matter to

compare the proven elements to the required elements in each state, to determine whether the case

had been successful. To put it another way, Plaintiff has the incentive, in proving the violations of

his own state laws, to prove all the elements of all the state laws. Filed herewith as Appendix A

and B are, respectively, (1) a summary chart of the elements of the relevant state laws and (2) a

more detailed discussion of the same, including statutory and case citations in support thereof.

These charts demonstrate predominance of common issues. To wit:

**Right of Action.** All states have established a private right of action to challenge false

advertising.[4] In addition, class treatment is available for violations of all the state laws.[5]

---

[4] Alabama, California, Florida, Illinois Indiana, Louisiana, Maine, Maryland, Minnesota, and Tennessee require pre-suit notice. Before suing under the law of California, Plaintiff provided notice.

[5] While seven states' statutes (Arkansas, Alabama, Georgia, Louisiana, Tennessee, Montana, and South Carolina) prohibit class actions, numerous district courts have found that that these prohibitions are not enforceable in federal court and that classes may still be certified under Rule 23 in light of *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010). *See, e.g.*, *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331 (11th Cir. 2015) (allowing Alabama class actions); *Mounce v. CHSPSC, LLC,* 2017 WL 4392048, at *7 (W.D. Ark. Sept. 29, 2017) (allowing Arkansas class actions); *In re Hydroxycut Marketing & Sales Practices Litig.*, 299 F.R.D. 648 (S.D. Cal. 2014) (allowing Georgia, Louisiana, Montana, South Carolina, and Tennessee class actions); *In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*, 2015 WL 5166014 (E.D. Tenn. June 24, 2015) (allowing South Carolina and Montana class actions); *Wittman v. CB1,*

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

**Prohibition of Deceptive Conduct.** All the states prohibit the alleged misconduct in one of two ways. Forty-five states have statutes similar to the California UCL in that they have broad and general prohibitions against any kind of deceptive conduct.[6] Plaintiff will represent the interests of consumers in these states. The remaining five states—Colorado, Mississippi, Oregon, Tennessee, and Texas—have narrower statutes that, like the CLRA, prohibit specific deceptive acts, including misrepresentations as to the "characteristics . . . or quantities" or "[a]dvertising goods . . . with intent not to sell them as advertised." *See, e.g.* Cal. Civ. Code 1770(a)(5), (9); Colo. Rev. Stat. § 6-1-105 (1)(e), (i); MS Code § 75-24-5(e), (i); OR Rev. Stat. § 646.608(e), (i); Tenn. Com. Code § 47-18-104(b)(5), (9); Tex. Bus & Com. Code § 17.46(5), (9).[7] Plaintiff will prove the elements of these claims as they are at the heart of the allegations about the "quantities" of the Products.

**Knowledge and Intent.** Thirty-three states, including California, Florida, New York, and North Carolina do not require a showing of either knowledge or intent, and thus, Plaintiff can represent the interests of the class members from 28 other states that also impose no such requirement.[8] New Jersey, Arizona, and Delaware require a showing of knowledge and intent in

---

*Inc.*, 2016 WL 3093427 (D. Mont. June 1, 2016) (allowing Montana class actions); *In re Optical Disk Drive Antitrust Litig.*, 2012 WL 1366718 (N.D. Cal. Apr. 19, 2012) (allowing South Carolina class actions); *Reed v. Dynamic Pet Prods.*, 2016 WL 3996715 (S.D. Cal. July 21, 2016) (allowing Louisiana class actions); *Andren v. Alere, Inc.*, 2017 WL 6509550 (S.D. Cal. Dec. 20, 2017) (allowing Georgia class action). *But see Bearden v. Honeywell Int'l, Inc.*, 2010 WL 3239285 (M.D. Tenn. Aug. 16, 2010) (disallowing Tennessee class actions); *Fejzulai v. Sam's West, Inc.*, 205 F. Supp. 3d 723 (D.S.C. 2015) (disallowing South Carolina class actions). To the extent this Court has concerns about any states' inclusion in the class with respect to consumer protection statutory claims, they can be included in the nationwide class solely with respect to unjust enrichment claims.
[6] These states are Alabama, Alaska, Arizona, Arkansas, California, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Carolina, South Dakota, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming.
[7] Arkansas' statute also specifically prohibits most of these same activities, but goes on to note that the practices made unlawful under the act are "not limited to" the specific activities identified in the statute. Ark. Bus. & Com. Code § 4-88-107(a).
[8] These additional states are Alabama, Alaska, Connecticut, District of Columbia, Georgia, Hawaii, Idaho, Kentucky, Louisiana, Maine, Massachusetts, Michigan, Mississippi, Missouri, Montana, Nebraska, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Dakota,

16

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

cases involving a concealment of a material fact; Plaintiff has obtained in discovery evidence, including customer complaints, that demonstrate Defendant was informed of and aware of the issue and can represent these class members.[9]

**Reliance**. Differing state rules on reliance also pose no bar to certification. The statutes in New York and New Jersey, like 29 other states, do not require a showing of "reliance" but instead only proximate causation (which some states refer to as "ascertainable loss"). Here, Plaintiff's theory of loss causation is the same for each class member, namely that Defendant's misconduct led to a price premium. Plaintiff can thus represent class members on this question in the other similar 29 states.[10]

The law of California requires reliance by the named plaintiff, as do 13 other states.[11] Two of those eleven Colorado and Maryland—have expressly held, as has California, that there need not be any showing of reliance by absent class members.[12] Others have not answered the question.[13] Alternatively, consumers in these states can be excluded from the consumer protection class and permitted to pursue only their unjust enrichment claims.

---

Tennessee, Texas, Vermont, Virginia, Washington, West Virginia, and Wisconsin. Similarly, neither the UCL nor the CLRA require proof that a violation was knowing. The UCL also does not require a showing of intent, while the CLRA requires it for some of its prohibited activities, but not all.

[9] Colorado, Indiana, Kansas, Maryland, Nevada, New Hampshire, New Mexico, South Carolina, Utah, and Wyoming have statutes similar to the CLRA and like Arkansas, requiring a showing of knowledge and/or intent for some or all of the key provisions at issue in this case. Arizona, Illinois, Iowa, Minnesota, and North Dakota require a showing that the defendant intended for the plaintiff to rely on the misrepresentation, which is a lesser level of intent and thus would be necessarily proven if there is violation of the Arkansas law.

[10] Alaska, Connecticut, Delaware, District of Columbia, Hawaii, Idaho, Illinois, Kentucky, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, New Hampshire, New Jersey, New Mexico, New York, North Dakota, Ohio, Oklahoma, Rhode Island, South Dakota, Tennessee, Utah, Vermont, Washington, and Wisconsin.

[11] These states are Colorado, Georgia, Indiana, Maryland, Nevada, Pennsylvania, Texas, Virginia, West Virgina, and Wyoming. In addition, Michigan requires a showing of reliance for some kinds of violations.

[12] *In re Tobacco II Cases,* 207 P.3d 20 (Cal. 2009); *Patterson v. BP Am. Prod. Co.*, 240 P.3d 456, 469 (Colo. App. 2010), *aff'd*, 263 P.3d 103 (Colo. 2011); *Luskin's, Inc. v. Consumer Prot. Div.*, 353 Md. 335, 358–59, 726 A.2d 702 (1999); *Pitts v. Am. Sec. Ins. Co.*, 144 N.C. App. 1, 14 (2001), *aff'd*, 356 N.C. 292 (2002).

[13] These states are Georgia, Indiana, Virginia, West Virginia, and Wyoming.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**Remedies.** Differences among the states' remedial schemes also do not bar certification. Once the jury answers the special verdict questions, the Court can easily determine whether a violation has been proven under each state's laws, and if so, it can order the Defendant to provide the residents of that state the remedy authorized by the state law. For example, all states provide for compensatory damages, the amount of which here will be the price premium determined by the jury, i.e., the percentage by which the price was inflated due to the misconduct. Moreover, all but twelve state statutes also provide for injunctive relief; thus, if the elements found by the jury equate to a violation of these states' laws, and Plaintiff additionally shows the likelihood of future harm to consumers, the Court can fashion an injunction to prohibit the challenged conduct in these 38 states.[14]

### 3. Plaintiff's Unjust Enrichment Claim Can Be Pursued on a Nationwide Basis.

Most courts agree that the laws of the fifty states regarding unjust enrichment do not differ materially, so a nationwide class may be certified. *See, e.g., In re Abbott Labs. Norvir Anti-Tr. Litig.*, 2007 WL 1689899, at *9 (N.D. Cal. June 11, 2007) (certifying nationwide class; holding that the "variations among some States' unjust enrichment laws do not significantly alter the central issue or the manner of proof"); *In re Checking Account Overdraft Litig.,* 307 F.R.D. 630,647 (S.D. Fla. 2015) ("There is general agreement among courts that the "minor variations in the elements of unjust enrichment under the laws of the various states . . . are not material and do not create an actual conflict.") (quoting *Pennsylvania Emp., Benefit Trust Fund v. Zeneca, Inc.,* 710 F.Supp.2d 458, 477 (D. Del. 2010)); *In re Mercedes–Benz Tele Aid Contract Litig.,* 257 F.R.D. 46 (D.N.J. 2009) ("While there are minor variations in the elements of unjust enrichment under the laws of the various states, those differences are not material and do not create an actual conflict."); *Schumacher v. Tyson Fresh Meats, Inc.*, 221 F.R.D. 605, 612 (D.S.D. 2004) ("In looking at claims for unjust enrichment, we must keep in mind that the very nature of such claims requires a focus on the gains of the defendants, not the losses of the plaintiffs. That is a universal

---

[14] The state statutes that do not provide for injunctive relief in a consumer action are Alabama, Arkansas, Colorado, Louisiana, Maryland, Mississippi, Montana, North Dakota, Oregon, South Carolina, Virginia, and Wyoming. The other 38 states' statutes specifically authorize consumers to obtain injunctions.

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

1  thread throughout all common law causes of action for unjust enrichment."). In distilling the

2  various states' laws down to two common elements, one court explained:

3      At the core of each state's law are two fundamental elements—***the defendant received
        a benefit from the plaintiff and it would be inequitable for the defendant to retain***

4      ***that benefit without compensating the plaintiff.*** The focus of the inquiry is the same in
        each state. Application of another variation of the cause of action than that subscribed

5      to by a state will not frustrate or infringe upon that state's interests. In other words,
        regardless of which state's unjust enrichment elements are applied, the result is the

6      same. Thus, there is no real conflict surrounding the elements of the cause of action.

7  *Powers v. Lycoming Engines,* 245 F.R.D. 226, 231 (E.D. Pa. 2007) (emphasis added), *rev'd on*

8  *other grounds,* 2009 WL 826842, 328 Fed. Appx. 121 (3d Cir. 2009). These two elements are the

9  same for all class members, regardless of their state of residence, as all paid a price premium to

10 Defendant to purchase the Products—thus, all conferred a benefit on Defendant—and none

11 received a Product without nonfunctional slack-fill, therefore rendering it inequitable for

12 Defendant to retain the benefit. Thus, the same legal questions predominate for all class members'

13 unjust enrichment claims.

14     There are no material differences among state laws regarding unjust enrichment. Plaintiff

15 is aware of one case that found a material difference in that half the states "do not allow claims for

16 unjust enrichment where the plaintiff has received the benefit of the bargain." *Andren v. Alere,*

17 *Inc.,* 2017 WL 6509550, at *17 (S.D. Cal. Dec. 20, 2017). But that court did not explain the basis

18 for its holding, and it was mistaken, because the "benefit of the bargain" test is no different from

19 the determination in every state of whether it would be "inequitable for the defendant to retain [the

20 amount received from plaintiff] without compensating the plaintiff."[15] *See, e.g., Peterson v. Cellco*

21 *P'ship,* 164 Cal. App. 4th 1583, 1591 (2008) ("Rather, they received the benefit of their bargain,

22 having obtained the bargained for insurance at the bargained for price."); *One Step Up, Ltd. v.*

23 *Webster Bus. Credit Corp.,* 87 A.D.3d 1, 14 (N.Y. App. Div. 2011) ("Moreover, defendant was in

24 no way unjustly enriched. It merely received what it was entitled to under the express contracts at

25 issue, while plaintiff received the benefit of its bargain."). The lack of any difference is especially

26 evident here, as the essence of the claim by Plaintiff is that no purchaser got the bargained-for

27

28 ---
[15] Instead, the Court merely relied upon a lengthy chart prepared by the Defendant, that also did
not contain any discussion. *See* Case No. 16-cv-1255, Dkt. 100-2, pp. 95-122.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

product at the bargained-for price, because of the price premium. *Cf. In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 985 (N.D. Cal. 2016) (explaining that "benefit of the bargain" losses are the difference between the price you paid and the value of what you received) (citing *Kwikset v. Superior Court*, 51 Cal. 4th 310, 321-22 (2011)).[16]

There may be one difference among the laws in that seven states, including Florida, have limited the remedy of unjust enrichment to situations where the victim has no other remedy, but again, this difference does not matter. Courts in those states have barred unjust enrichment claims only where there is a contract between the parties that would give rise to claims for breach of contract.[17]

Here, there is no contract. *Cf. Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1195 (N.D. Cal. 2014) (explaining that the absence of privity prevents a plaintiff from alleging breach of contract in a food labeling lawsuit). Moreover, if Plaintiff fails to prove the elements of his consumer protection claim he will have "no other remedy" and thus will be left only with his unjust enrichment claim. Likewise, if the Court concludes, based on the jury's special verdict answers, that the elements for the consumer claim in a particular state have not been proven, then there is "no other remedy" for the class members in that state.

## B. Nationwide Settlement Classes Are Still Permitted After *Hyundai*.

This Court may be concerned that 50-state settlement classes are no longer available under the Ninth Circuit's recent ruling in *Hyundai*. It need not have that concern. *Hyundai* did not bar

---

[16] Alternatively, if this Court chose to include "did not receive benefit of the bargain" as an independent element of the unjust enrichment claim, the Plaintiff would prove that element on behalf of class members in all states with such a requirement.

[17] *See, e.g., In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1338 (S.D. Fla. 2013) (holding that Florida plaintiffs may pursue claims for unjust enrichment and false advertising because there was not "an express contract between the parties that precludes recovery"); *Metcap Sec. LLC v. Pearl Senior Care, Inc.*, 2009 WL 513756, at *6 (Del. Ch. Feb. 27, 2009), *aff'd sub nom. Metcap Sec. LLC v. Pearl Sr. Care, Inc.*, 977 A.2d 899 (Del. 2009) (holding that in Delaware, "[b]ecause there is no contract. . .[plaintiff] does not have an adequate remedy at law"). *See also Trustmark Ins. Co. v. Bank One, Arizona, NA*, 202 Ariz. 535, 542 (Ct. App. 2002), *as corrected* (June 19, 2002) (holding that the doctrine of unjust enrichment does not apply in Arizona where there is "a specific contract"). *Accord Porter v. Hu*, 116 Haw. 42, 54 (Ct. App. 2007); *Am. Towers Owners Ass'n, Inc. v. CCI Mech., Inc.*, 930 P.2d 1182, 1193 (Utah 1996); *Daugherty v. Sony Elecs., Inc.*, 2006 WL 197090, at *6 (Tenn. Ct. App. Jan. 26, 2006); *Schroeder v. Buchholz*, 622 N.W.2d 202, 207–08 (N.D. 2001).

nationwide settlement classes; and it reversed certification of the class there only because of myriad and profound factual and legal differences among class members that do not exist here. In *Hyundai*, the plaintiffs challenged allegedly fraudulent representations made by hundreds of independent new and used car dealers across the country, in connection with 76 different models of cars. 881 F.3d at 704. The evidence showed wide variations among the statements made by the dealers and among the true features of the car models. Prior to settlement, the district court denied Plaintiff's class certification motion due to these differences. *Id.* at 695. Around the same time, numerous other class actions were filed around the country alleging similar misconduct under their own states' laws. *Id.* at 697. In response, plaintiffs' counsel in the California action, where certification had been denied, conspired with the defendant to settle out from under the plaintiffs and counsel from other states, by agreeing to a nationwide settlement class, under California law. *Id.* at 697-700. Although the plaintiffs and counsel from the other states objected, the district court certified the nationwide settlement class, without making any new findings about commonality or predominance, let alone why California law should apply to class members in all states when it had previously held that it could not even apply uniformly to class members in California. *Id.* at 700. The objector plaintiffs from the other states appealed, and the Ninth Circuit reversed.

Notably, *Hyundai* does not hold that a nationwide class can never be certified. Rather, as the Ninth Circuit explained, the district court must consider "whether the consumer-protection laws of the affected States vary in **material** ways." *Id.* at 702 (internal citations omitted) (emphasis added). While the district court must undertake a choice of law analysis and look to whether "common questions outweigh individual questions," *id.*, the Ninth Circuit reconfirmed that when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Id.* at 693 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)).

This case presents none of the problems that led the Ninth Circuit to reject the approval of a nationwide settlement class in *Hyundai*. Here, unlike *Hyundai*, the Court *did not* rule on Plaintiff's class certification motion let alone deny certification. *Cf. id.* at 696. And Plaintiff is not

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

seeking to apply California law to class members in all states, but to apply the law of each state to the residents of that state; which is possible because the laws are substantively identical, and to the extent there are differences, they are immaterial. *Cf. id.* at 692.20

**V.        THE PROPOSED NOTICE IS ADEQUATE**

The proposed notice plan and claim form comport with the procedural and substantive requirements of Rule 23. Under Rule 23, due process requires that class members receive notice of the settlement and an opportunity to be heard and participate in the litigation. *See* Fed. R. Civ. Proc., Rule 23(c)(2)(B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985); *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175-76 (1974) ("individual notice must be provided to those class members who are identifiable through reasonable effort"). The mechanics of the notice process are left to the discretion of the Court, subject only to the broad "reasonableness" standards imposed by due process. *See* 7A Wright & Miller, Federal Practice & Procedure § 1786 (3d ed. 2008)*; see also Rosenburg v. I.B.M.*, 2007 WL 128232 at *5 (N.D. Cal. 2007) (notice should inform class members of essential terms of settlement including claims procedure and their rights to accept, object or opt-out of settlement).

Notice of the settlement is to be provided to the class as follows: (1) publication in the *Soap Opera Digest*; (2) publication in *Life & Style*; (3) publication in *National Enquirer*; (4) 52 million combined impressions of online advertising; (5) a press release through a national wire service; and (6) a dedicated settlement website. See Schey Decl. Ex. A. In addition, the Settlement Website shall contain the Long Form Notice in both downloadable PDF format and HTML format with a clickable table of contents; answers to frequently asked questions; a Contact Information page that includes the address for the Claims Administrator and addresses and telephone numbers for Plaintiff's Counsel and Defendant's Counsel; the Agreement; the signed order of Preliminary Approval and the publicly filed motion papers and declarations in support thereof; a downloadable and online version of the Claim Form (in English and Spanish versions); a downloadable and online version of the form by which Settlement Class Members may exclude themselves from the Settlement Class; and (when they become available) the publicly filed motion for final approval and Plaintiff's application for Attorneys' Fees, Costs and an Incentive Award, with supporting

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

declarations. *Id*. As explained in the declaration from the claims administrator, this multi-communication method is the best notice practicable and is reasonably designed to reach the settlement class members. *Id*.; *See, e.g.*, *Simpao v. Gov't of Guam*, 369 Fed. Appx. 837, 838 (9th Cir. 2010) (notice plan was "best notice practicable" where direct notice was mailed to class members and supplemented by published notice); *In re Google Referrer Header Privacy Litig.*, 2014 WL 1266091, *7 (N.D. Cal. Mar. 26, 2014) (where direct individual notice not practical, "publication or something similar is sufficient to provide notice to the individuals that will be bound by the judgment"); *see also*; *In re Netflix Privacy Litig.*, 2012 WL 2598819, *5 (N.D. Cal. July 5, 2012) (approving notice procedure that included emailing customers at last known email address, publication in People Magazine, and advertising on Facebook.com).

The proposed notices inform class members about the proposed settlement; their right to opt out or object; the need to file a claim; a summary of settlement benefits; the prospective request for attorneys' fees, costs, and incentives; and the fact that they will be bound by the judgment if they do not opt out. The notices refer class members to the settlement website where they can obtain the long-form notice, which provides more details about the case and the settlement, the procedures for opting out or objecting, and methods to obtain additional information. The settlement website will also contain a copy of the full settlement agreement and will contain the fee application when filed. RJC Decl. Ex. 1 Exs. A, C, D, E. Settlement class members who seek benefits under the Settlement need to fill out a simple Claim Form online. They also have the option to print copies and mail the Claim Form to the Claim Administrator. The claim form requires them to certify under the penalty of perjury (1) their name and address and (2) basic information about the Products purchased. RJC Decl. Ex. 1 Ex. C. The claim form can be completed in a few minutes. *Id.*

## VI.   DATES FOR THE FINAL APPROVAL PROCESS

Plaintiff requests that in connection with preliminary approval, this Court set a date for a final approval hearing to consider the fairness of the Settlement and to hear any comments from the Settlement Class Members, as well as dates for mailing and publishing Notice and deadlines for objections and opting out of the settlement class. Plaintiff proposes the following schedule:

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

| | |
|---|---|
| Deadline for Claim Administrator to cause notice to be published in *Soap Opera Digest* per the Notice Plan | August 8, 2018 issue |
| Deadline for Claim Administrator to cause notice to be published in *Life & Style* per the Notice Plan | August 8, 2018 issue |
| Deadline for Claim Administrator to cause notice to be published in *National Enquirer* per the Notice Plan | August 13, 2018 issue |
| Deadline for Claim Administrator to cause online notice to be published on internet sites per the Notice Plan | July 21, 2018 issue |
| Deadline to file motion for attorneys' fees, costs and incentive awards | September 6, 2018 |
| Deadline to file motion for final approval; response to objections | September 20, 2018 |
| Deadline for Claim Administrator to submit a declaration to the Court attesting to the number of impressions delivered and the number of click-throughs to the Settlement Website | September 20, 2018 |
| Claim deadline | September 20, 2018 |
| Opt-outs (date of online submission, or if mailed, date of receipt, not postmarking) | September 20, 2018 |
| Objections, Requests to Appear (filing date, not postmarking) | September 20, 2018 |
| Replies in support of final approval and motion for attorneys' fees, costs and incentive awards; response to objections | October 4, 2018 |
| Deadline for Plaintiff/Claims Administrator to file list of optouts, objections, and supporting documentation with the Court | October 4, 2018 |
| Deadline for the Claim Administrator to provide a declaration to the Court regarding the number and dollar amount of claims received to date | October 4, 2018 |
| Final approval hearing | October 18, 2018 |

///

///

///

///

///

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## VII.  CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that this Honorable Court GRANT preliminary approval of the proposed class action settlement.

DATED: May 10, 2018                                    **CLARKSON LAW FIRM, P.C.**

  /s/ Ryan J. Clarkson
Ryan J. Clarkson, Esq.
Shireen M. Clarkson, Esq.
Bahar Sodaify, Esq.

*Counsel for Plaintiff*