**CLARKSON LAW FIRM, P.C**.
Ryan J. Clarkson (SBN 257074)
rclarkson@clarksonlawfirm.com
Shireen M. Clarkson (SBN 237882)
sclarkson@clarksonlawfirm.com
Bahar Sodaify (SBN 289730)
bsodaify@clarksonlawfirm.com
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069
Tel: (213) 788-4050
Fax: (213) 788-4070

Settlement Class Counsel

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS IGLESIAS, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    vs.<br><br>FERRARA CANDY CO., and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No. 3:17-cv-00849-VC<br><br>**[CLASS ACTION]**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[Concurrently served with:<br>Declaration of Ryan J. Clarkson;<br>Declaration of Mark Schey;<br>Supporting Exhibits thereto; and<br>Proposed Order]**<br><br>Hon. Judge Vince Chabbria<br><br>Complaint filed:    February 21, 2017<br><br>Hearing Date:      October 25, 2018<br>Hearing Time:      10:00 AM<br>Hearing Location:   Courtroom 4 |

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on October 25, 2018 at 10:00 am, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Judge Vince Chhabria, United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, 17th Floor, Courtroom 4, Plaintiff Thomas Iglesias ("Plaintiff"), on behalf of himself, the general public, and all others similarly situated, by and through his counsel Ryan J. Clarkson, Shireen M. Clarkson, and Bahar Sodaify of Clarkson Law Firm, P.C., shall and hereby does move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for an order as follows:

(1)    Certifying the Settlement Class as defined in the Settlement Agreement;

(2)    Granting final approval of the class action Settlement;

(3)    Granting final approval of Plaintiff Thomas Iglesias as Class Representative;

(4)    Granting final approval of Clarkson Law Firm, P.C. as Class Counsel for the Settlement Class;

(5)    Granting final approval of a 25% benchmark award of attorneys' fees in the amount of $625,000, and reimbursement of litigation expenses in the amount of $102,172.12; and

(6)    Granting final approval of a service award of $5,000.00 to sole Class Representative and Plaintiff, Thomas Iglesias.

A more detailed proposed order granting final approval has been concurrently filed herewith.

This motion is made on the grounds that final approval of the proposed class action Settlement is proper, given that the Settlement is fair, reasonable, and adequate and that all requirements of Rule 23(e) have been met.

This motion is based on Federal Rule of Civil Procedure 23, this notice of motion, the supporting memorandum of points and authorities, the declaration of Ryan J. Clarkson, the declaration of Mark Schey and exhibits thereto, all pleadings and papers on file herein; Plaintiff's notice of motion and motion for preliminary approval of class action settlement and all supporting materials ("Preliminary Approval Motion") (Dkt. 72); the settlement agreement ("Settlement

1   Agreement" or "Settlement") (Dkt. 72-4); the Court's order granting preliminary approval to

2   proposed class action settlement (Dkt. 80); Plaintiff's motion for award of attorneys' fees,

3   expenses, and service award and all supporting materials (Dkt. 83); the court record of this action;

4   all matters of which the Court may take notice; and any oral and documentary evidence presented

5   at the hearing on the motion.

6       Pursuant to Local Rule 7-4(a)(3), the statement of issue to be decided by the Court is as

7   follows: Whether the Court should grant final approval of the proposed class action Settlement

8   pursuant to Federal Rule of Civil Procedure 23(e).

9

10  DATED: September 20, 2018                    **CLARKSON LAW FIRM, P.C.**

11                                               /s/ Ryan J. Clarkson
                                                 Ryan J. Clarkson, Esq.
12                                               Shireen M. Clarkson, Esq.
                                                 Bahar Sodaify, Esq.
13
14                                               Settlement Class Counsel

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

**TABLE OF CONTENTS**

**Page(s)**

I.   INTRODUCTION .................................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND.........................................2

    A.   Plaintiff's Claims. ....................................................................................2

    B.   Preliminary Approval of the Settlement and Conditional Class Certification...........2

    C.   Material Settlement Terms........................................................................3

        1.   The Proposed Settlement Class...................................................3

        2.   The Settlement Benefits ..............................................................3

        3.   No Reversion to Defendant..........................................................4

    D.   The Settlement Process Was Successfully Carried Out............................4

        1.   The Notice Requirements were Satisfied.....................................4

        2.   CAFA's Notice Requirement has been Satisfied .........................5

        3.   There Have Been Zero Exclusions, Zero Opt-outs, and Only Two Objections ...6

III. ARGUMENT .......................................................................................................7

    A.   The Settlement Meets the Standards Governing Final Approval .............7

        1.   The Settlement Was a Result of Arm's-Length Negotiations .............8

        2.   The Settlement Passes the Bluetooth Test and Is Not a Product of Collusion .....9

        3.   The Settlement is Fair Under the Hanlon Factors.......................9

    B.   The Best Practicable Notice of Settlement Has Been Provided to the Class.............9

    C.   Final Approval is Appropriate under Rule 23 because the Settlement is Fair, Reasonable, and Adequate ....................................................................11

        1.   The Strength of Plaintiff's Case................................................12

        2.   The Risk, Expense, Complexity, and Delay of Further Litigation Supports Final Approval ...........................................................14

        3.   The Settlement Amount Will Fairly and Adequately Compensate the Class.....15

        4.   The Settlement was Finalized after Extensive Discovery and Investigation......17

        5.   Counsel's Experience and Views Support Final Approval................18

        6.   The Parties Participated in Arm's-Length Negotiations Before an Experienced Neutral Mediator ........................................................18

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

7.   No Government Participant ............................................................19

8.   Class Members Have Reacted Extremely Positively to the Settlement.............19

D.   The Court Should Grant Final Class Certification....................................20

IV.   CONCLUSION................................................................................21

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>CASES</u>

*Allen v. Bedolla,*
    787 F.3d 1218 (9th Cir. 2015) ........................................................16

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997).........................................................................21

*Arthur v. Sallie Mae, Inc.,*
    2012 WL 4075238 (W.D. Wash. 2012).............................................7

*Barcia v. Contain-A-Way, Inc.,*
    2009 U.S. Dist. LEXIS 17118 (S.D. Cal. 2009)..............................20

*Carter v. Anderson Merchandisers, LP,*
    2010 U.S. Dist. LEXIS 55581 (C.D. Cal. 2010)................................8

*Chun-Hoon v. McKee Foods Corp.,*
    716 F. Supp. 2d 848 (N.D. Cal. 2010).............................................20

*Churchill Village, LLC v. Gen. Elec.,*
    361 F.3d 566 (9th Cir. 2004) .......................................................9, 11

*Class Plaintiffs v. Seattle,*
    955 F.2d 1268 (9th Cir. 1992) ......................................................8, 11

*Cotter v. Lyft, Inc.,*
    193 F. Supp. 3d 1030 (N.D. Cal. 2016) ................................... *passim*

*Curtis-Bauer v. Morgan Stanley & Co.,*
    2008 U.S. Dist. LEXIS 85028 (N.D. Cal. 2008) .............................14

*Ellis v. Naval Air Rework Facility,*
    87 F.R.D. 15, 18 (N.D. Cal. 1980)..................................................18

*Ellis v. Naval Air Rework Facility,*
    661 F.2d 939 (9th Cir. 1981) ..........................................................18

*Ford v. CEC Entm't Inc.,*
    2015 WL 11439033 (S.D. Cal. 2015) ..............................................10

*Fulford v. Logitech, Inc.,*
    2010 U.S. Dist. LEXIS 29042 (N.D. Cal. 2010) .............................14

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ................................................ *passim*

*In re Apple Computer Sec. Litig.*,
    1991 U.S. Dist. LEXIS 15608 (N.D. Cal. 1991) ................................................14

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................................................20

*In re Bluetooth Headset Products Liability Litig.*,
    654 F.3d 935 (9th Cir. 2011) ................................................8, 9

*In re Hyundai & Kia Fuel Econ. Litig.*,
    881 F.3d 679 (9th Cir. 2018) ................................................20

*In re Immune Response Sec. Litig.*,
    497 F.Supp.2d 1166 (S.D. Cal. 2007) ................................................17

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ................................................17

*In re Mfrs. Life Ins. Co. Premium Litig.*,
    1998 U.S. Dist. LEXIS 23217 (S.D. Cal. 1998) ................................................13

*In re Netflix Privacy Litig.*,
    2013 U.S. Dist. LEXIS 37286 (N.D. Cal. 2013) ................................................14

*In re Pacific Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ................................................11, 18

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ................................................11

*Lane v. Facebook, Inc.*,
    2010 U.S. Dist. LEXIS 24762 (N.D. Cal. 2010) ................................................14

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ................................................16

*Larsen v. Trader Joe's Co.*,
    2014 WL 3404531 (N.D. Cal. 2014) ................................................7

*Linney v. Cellular Alaska Partnership*,
    151 F.3d 1234 (9th Cir. 1998) ................................................9, 13, 15

*Mathein v. Pier 1 Imps. (U.S.), Inc.*,
    2018 U.S. Dist. LEXIS 71386 (E.D. Cal. 2018) ................................................19

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ................................................13, 20

*O'Keefe v. Mercedes Benz, U.S.A., LLC*,
    214 F.R.D. 266 (E.D. Pa. 2013) ................................................7

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Officers for Justice v. Civil Serv. Comm'n,*
  688 F.2d 615 (9th Cir. 1982) ..............................................................................11, 15, 18

*Ortiz v. Fibreboard Corp.,*
  527 U.S. 815 (1999) ...........................................................................................................8

*Roberts v. Electrolux Home Prod.,*
  2014 U.S. Dist. LEXIS 130163 (C.D. Cal. 2014)..............................................................7

*Rodriguez v. West Publishing Corp.,*
  563 F.3d 948 (9th Cir. 2009) ..................................................................................9, 18, 19

*Stoetzner v. U.S. Steel Corp.,*
  897 F.2d 115 (3d Cir. 1990)...............................................................................................20

*Valdez v. Neil Jones Food Co.,*
  2016 U.S. Dist. LEXIS 105839 (E.D. Cal. 2016) ..............................................................13

*Van Bronkhorst v. Safeco Corp.,*
  529 F.2d 943 (9th Cir. 1976) .............................................................................................15

## <u>OTHER AUTHORITIES</u>

4 A Conte & H. Newberg, *Newberg on Class Actions,* § 11:50 at 155 (4th ed. 2002)...................13

28 U.S.C. Section 1715 ......................................................................................................5, 6

Fed.R.Civ.P.23 ...................................................................................... *passim*

*Managing Class Action Litigation: A Pocket Guide for Judges*, Rothstein & Willging, 3B5
(4th ed. 2005) ......................................................................................................................7

*Manual for Complex Litigation, Third,* § 30.41 (1995) ....................................................7

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Thomas Iglesias ("Plaintiff" or "Mr. Iglesias") requests that this Court grant final approval of the Settlement[1], which provides significant benefits to Class Members who purchased theater box candy Products manufactured by Defendant Ferrara Candy Co. ("Defendant" or "Ferrara").[2] The Settlement is fair, reasonable, and adequate and has already been preliminarily approved by this Court (Dkt. 80).

As part of the settlement, Defendant will pay $2.5 million into a Claim Fund.  Each Class Member who made a claim may obtain a cash refund of 50 cents per box purchased. Class Members were able to submit claims for an unlimited number of purchases. Up to 15 claims, for a total of $7.50, will be paid without Proof of Purchase. These amounts will increase pro rata to ensure the Claim Fund is exhausted. As of September 18, 2018, the pro rata distribution of the Claim Fund is estimated to increase by more than 50% to $.82 per box with an average of $14.28 per claim.[3] Defendant will also modify its fill level quality control procedures and target fill levels to at least 75% for theater box Products, and at least 50% for bag-in-a-box Products.

The Class has responded very favorably to the Settlement. To date, there have been 80,208 submitted claims by Class Members. Schey Decl. ¶ 24. Indeed, the number of claims received has exceeded what DSG had estimated at the preliminary approval hearing.[4] Notably, there have been 0 opt-outs, 0 exclusions, and 2 objections.[5] Schey Decl. ¶¶ 20-23, Exs. B, C.

Furthermore, there is a presumption that the Settlement is fair and adequate because the Settlement was reached after substantial discovery, law and motion practice, including a strong class certification motion supported by four retained experts who conducted full expert reports

---

[1] Unless defined herein, all capitalized terms referenced in this motion are defined in the Settlement Agreement (Dkt. 72-4).

[2] Plaintiff and Defendant are collectively referred to as the "Parties."

[3] *See* declaration of Mark Schey of Digital Settlement Group ("DSG") ("Schey Decl.") ¶ 25. This amount is subject to slightly change as the deadline for submitting a claim is September 20, 2018, the same date as the filing of this motion. Declaration of Ryan J. Clarkson ("RJC Decl.") ¶ 3.

[4] At the preliminary approval hearing, DSG estimated the number of claims would exceed 50,000. RJC Decl. ¶ 3.

[5] This data is as of September 18, 2018. *See* Schey Decl.

1  based on a detailed slack-fill analysis and large-scale consumer survey, and after arm's-length

2  negotiations between experienced attorneys familiar with the legal and factual issues of this case,

3  including two mediations with experienced neutrals. RJC Decl. ¶ 4. The Settlement is also

4  reasonable given the risk, expense, complexity, and likely duration of further litigation.

5  Accordingly, final approval of the class action Settlement is warranted. [6]

6  ## II.     FACTUAL AND PROCEDURAL BACKGROUND[7]

7  ### A.     Plaintiff's Claims

8  This is a consumer class action brought on behalf of purchasers of various "theater box"

9  candy Products sold at retail outlets and movie theaters in California and nationwide (Dkt. 71).

10  Plaintiff alleged that Defendant unlawfully packages each of its Products in opaque boxes too

11  large for the amount of candy contained therein and contain nonfunctional empty space, or "slack-

12  fill," in violation of California and federal packaging laws, as well as California's consumer

13  protection laws. *Id*. Plaintiff alleged that Defendant's oversized packaging falsely represents to

14  consumers the quantity of candy and is a material issue to consumers which can be fixed by

15  simply shrinking the box, filling the box, or adding additional features to the box that eliminate the

16  consumer deception. *Id*.

17  ### B.     Preliminary Approval of the Settlement and Conditional Class Certification

18  On June 26, 2018, after a preliminary approval hearing, the Court ruled that the Settlement

19  was within the range of reasonableness and possible final approval (Dkt. 80). The Court

20  preliminarily approved the Settlement, conditionally certified the Settlement Class, appointed

21  Plaintiff Thomas Iglesias as Class Representative, appointed Clarkson Law Firm, P.C. as Class

22

23  [6] Pursuant to the Settlement Agreement (Dkt. 72-4) and the Court's Preliminary Approval Order
    (Dkt. 80), Plaintiff filed a separate motion for an award of attorneys' fees, expenses, and service

24  award on September 6, 2018 (Dkt. 83).

    [7] Plaintiff refers the Court to this case's detailed history and facts set out in the "Factual and

25  Procedural Background" section of Plaintiff's Motion for Attorneys' fees, Expenses, and Service
    award filed on September 6, 2018 (Dkt. 83). *See* Northern District's Procedural Guidance for

26  Class Action Settlements ("Regardless of when they are filed, requests for attorneys' fees must be
    noticed for the same date as the final approval hearing. *If the plaintiffs choose to file two separate*

27  *motions, they should not repeat the case history and background facts in both motions*. The
    motion for attorneys' fees should refer to the history and facts set out in the motion for final

28  approval") (emphasis added).

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

1    Counsel, designated DSG as the Settlement Administrator, approved the forms of class notice, and

2    set the final approval hearing (Dkt. 80).

3    **C.    Material Settlement Terms**

4        *1.    The Proposed Settlement Class*

5    The Settlement Class (or "Class") is comprised of "All persons who between February 21,

6    2013 and the date of Preliminary Approval [June 21, 2018], purchased, in the United States, one

7    or more candy Products manufactured by Defendant and packaged for sale or resale to consumers

8    in an opaque cardboard box (including bag-in-a-box Products), including Jujyfruits®, Jujubes®,

9    Now and Later®, Lemonhead®, Applehead®, Cherryhead®, Grapehead®, RedHots®, Trolli®,

10   Chuckles®, Black Forest®, Jawbuster®, Jawbreaker®, Brach's®, Boston Baked Beans®, Super

11   Bubble®, Rainblo®, Atomic Fireball®, and all flavors and varieties of those candies."[8]

12       *2.    The Settlement Benefits*

13   Pursuant to the terms of the Settlement Agreement, Defendant will pay $2.5 million into a

14   Claim Fund, which will cover, upon final approval by the Court, all settlement payments to Class

15   Members, notice and administration costs ($522,000)[9], a service award to Class Representative

16   Thomas Iglesias ($5,000), reimbursement of litigation expenses ($102,172.12), and a benchmark

17   attorneys' fee award ($625,000). The Settlement also includes Defendant providing the Class

18   injunctive relief by way of modifying its fill level quality control procedures and target fill levels

19   to at least 75% for theater box Products, excluding bag-in-a-box, and 50% for all other Products,

20   including bag-in-a-box. Dkt.  72-4 ¶ 4.1. Notably, Plaintiff's packaging design engineering expert

21   estimated the actual fill level for theater box Products to range from 42.6% to 52.5% and for Trolli

22   bag-in-a-box Products to be 27.2%. Dkt. 54-18 p. 30 tbl. 11.

23

24   [8] Excluded Persons from the Settlement Class are: (1) the Honorable Vince Chhabria (2) Mediator
     Martin Quinn; (3) the Honorable William Cahill; (4) any member of their immediate family; (5)
25   any government entity, (6) Defendant; (7) any entity in which Defendant has a controlling interest;
     (8) any of Defendant's subsidiaries, parents, affiliates, and officers, directors, employees, legal
26   representatives, heirs, successors, or assigns; (9) counsel for the Parties; and (10) any persons who
     timely opt-out of the Settlement Class.
27   [9] This amount does not include the cost for printing and mailing settlement checks to claimants,
     which DSG has agreed to provide "at cost," which totals $100,260 as of September 18, 2018, and
28   which is estimated to be $112,760 after the claim submission deadline of September 20, 2018.
     RJC Decl. ¶ 5.

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

3

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

Pursuant to the terms of the Settlement Agreement, each Class Member who made a claim would obtain a cash refund of 50 cents per box purchased. Dkt. 72-4 at ¶ 4.2.2. A Class Member was allowed to submit claims for an unlimited number of purchases. *Id.* Up to 15 claims, for a total of $7.50, will be paid without Proof of Purchase. *Id.* There is no cap on the number or amount of claims submitted by Class Members with Proof of Purchase. *Id.* These amounts have significantly increased pro rata to ensure the Claim Fund is exhausted. *Id.* ¶ 4.2.6. As of September 18, 2018, the pro rata distribution of the Claim Fund is estimated at $.82 per box with an average of $14.28 per claim. Schey Decl. ¶ 25. In other words, claimants' settlement checks will be more than 75% higher than expected. *Id.* This pro rata increase also account for the initial Administration Fees, estimated check fees, all attorney's fees, and the Plaintiff's service award, but is prior to any additional Administrative or check fees, remaining claims within deadline, and invalid, duplicate or fraudulent claims. *Id.* The deadline to submit Claim Forms is September 20, 2018 (the date of the final approval motion deadline), and the deadline to opt out or object is also September 20, 2018, which is 60 days after the initial mailing of the Notice. *See* Dkt. 80.

### 3. No Reversion to Defendant

It is an express term of the Agreement that none of the $2.5 million Claim Fund will revert to the Defendant. Dkt. 72-4 ¶ 4.2.7. Instead, as described above, the claim amounts will be increased pro rata to ensure the Claim Fund is exhausted. *Id.* at ¶ 4.2.6.; Schey Decl. ¶ 25.

### D. The Settlement Process Was Successfully Carried Out

#### 1. The Notice Requirements were Satisfied

In compliance with the Settlement Agreement (Dkt. 72-4) and the Court's Preliminary Approval Order (Dkt. 80), Plaintiff effected proper notice through DSG as class action Settlement Administrator. DSG has performed the following duties: (1) arranging for the distribution of the Class Notice and Claim Forms to Settlement Class Members; (2) arranging for publication of the Publication Notice; (3) answering written inquiries from Settlement Class Members and/or forwarding such inquiries to Class Counsel or their designee; (4) receiving and maintaining on behalf of the Court and the Parties any Settlement Class Member correspondence regarding requests for exclusion from the Settlement; (5) establishing the Settlement Website that posts

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

notices, Claim Forms, and other related documents; (6) establishing a toll-free telephone number; (7) receiving and processing claims; (8) submitting a declaration attesting to the dissemination of the Class Notice and the number of claims received; (9) distributing the CAFA notice; (10) providing timely reporting to Counsel throughout the notice and claims process to allow for thorough oversight. Schey Decl. ¶ 3.

The notice plan was designed to reach the largest target audience in a cost-efficient and timely manner. *Id*. ¶ 34. Furthermore, the notice plan provided the best notice practicable, with reach similar to other court-approved notice plans in the same product category. *Id*. The entire campaign reached at least 70 percent of the adult Internet users who fell into the targeted group, delivering 111,619,999 targeted internet impressions, an amount more than twice what DSG had originally estimated. *Id*. ¶ 18. Over 3.7 million internet notice impressions were delivered to consumers who visited or searched the following popular Movie-goer websites including *Fandango.com, Fandango App, RottenTomatoes.com, Movietickets.com* and *MovieFone.com*. *Id*. ¶ 32. The Published Notice appeared on *Soap Opera Digest*, *Life & Style*, and *National Enquirer*. *Id*. ¶ 27. The print portion alone reached an estimated 13.7 million adults in the United States. *Id*. ¶ 23. The Press Release reached another 8.9 million. *Id*. ¶ 23. Ultimately, the Settlement Website received 6,883,148 hits. *Id*. ¶ 19.

### 2. CAFA's Notice Requirement has been Satisfied

In compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. Section 1715, on May 18, 2018, DSG served CAFA Notice to the Attorney General of the United States, the Attorneys General of each of the 50 States and the District of Columbia, and the Attorneys General of the 5 recognized U.S. Territories. *Id*. ¶ 12. DSG's CAFA notice consisted of a CD-ROM containing the Complaint, FAC, SAC, Motion for Preliminary Approval of Settlement and Memorandum of Law in Support, Declaration of Ryan J. Clarkson in Support of Preliminary Approval of Class Action Settlement, Class Action Settlement Agreement, Order Granting Preliminary Approval of Class Action Settlement, & Forms of Notice i.e. the Settlement Proof of Claim Form, Long Form Notice, and the Class Action Summary Notice. *Id*. ¶ 12, *see* Ex. A.

///

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

As of September 18, 2018, DSG had not received a response to the CAFA Notice from any of the recipients. *Id.* ¶ 14. Furthermore, the final approval hearing, set for October 25, 2018, is being held more than 90 days after the issuance of the CAFA notice, such that the final approval order may be entered in accordance with CAFA's notice requirements if the Court finds that all other requirements are met. 28 U.S.C. Section 1715(d).

       *3.  There Have Been Zero Exclusions, Zero Opt-outs, and Only Two Objections*

During the Claims Period[10], DSG received 80,208 valid claims seeking reimbursement for 1,404,729 boxes of candy. Schey Decl. ¶ 24. Of those, 299 claims included proof of purchase. *Id.* DSG received zero opt-outs, zero exclusions, and two objections. *Id.* ¶ 20.

The first "objection" was emailed to info@ferraracandysettlement.com on August 26, 2018. *Id.* ¶ 21, Ex. B. This "objection" did not meet the requisite criteria to file an objection to the Settlement as indicated in the Notice and the Settlement Agreement.[11]  This "objection" was not filed with the Court, sent to Class Counsel or Defendant, and did not provide the legal grounds for the objection.

The second objection was emailed to Class Counsel by Patrick Sweeney ("Mr. Sweeney"), *pro se*, on September 13, 2018. *Id.* ¶ 22; Ex. C.  Mr. Sweeney filed his objection only to Plaintiff's request for a 25% benchmark attorneys' fee award, an amount supported by controlling Ninth

---

[10] The Claims Period is July 16, 2018 to September 20, 2018; however, these numbers do not account for any submissions made after September 18, 2018.

[11] Dkt 72-4 ¶ 8.2.1 ("Settlement Class Members shall have the right to appear and show cause, if they have any reason why the terms of this Class Action Settlement Agreement should not be given Final Approval, subject to each of the subprovisions in Paragraph 8.2. Any objection to this Class Action Settlement Agreement, including any of its terms or provisions, must be in writing, filed with the Court, with a copy sent to Class Counsel, Counsel for Defendant, and the Claims Administrator at the addresses set forth in the Class Notice, and postmarked no later than the Notice Response Deadline. Settlement Class Members may object either on their own or through an attorney hired at their own expense. Pursuant to the Court's standing order, the Court will only require substantial compliance with these requirements from Class Members who wish to object, which shall be stated in the Class Notice."); *see also Id.* at ¶ 8.2.3. ("Any objection regarding or related to the Class Action Settlement Agreement shall contain a caption or title that identifies it as "Objection to Class Settlement in *Iglesias v. Ferrara*, No. 3:17-cv-00849-VC" and also shall contain the following information… (iii) the factual basis and legal grounds for the objection, including any documents sufficient to establish the basis for their standing as a Settlement Class Member, e.g., Receipt, or verification under oath as to the approximate date(s) and location(s) of their purchase(s) of the Covered Products.")

circuit authority. *Id*. As will be discussed in greater detail in Plaintiff's response to Mr. Sweeney's objection due on October 4, 2018 (Dkt. 80), Mr. Sweeney's "canned" objection fails to provide any legal authority[12] and appears to have been filed for the sole purpose of extracting an "incentive fee" in this case. As the Federal Judicial Center warns in its Pocket Guide for Judges for managing class action litigation, "[w]atch out, though, for 'canned objections filed by professional objectors who seek out class actions to simply extract a fee by lodging generic, unhelpful protests.'" *Managing Class Action Litigation: A Pocket Guide for Judges*, Rothstein & Willging, 3B5 (4th ed. 2005) (citing *O'Keefe v. Mercedes Benz, U.S.A., LLC*, 214 F.R.D. 266, 295 (E.D. Pa. 2013). Indeed, some courts have described Mr. Sweeney as a "serial" objector who makes "canned" objections like the one here. *See e.g., Roberts v. Electrolux Home Prod*., No. 8:12-cv-01644, 2014 U.S. Dist. LEXIS 130163 (C.D. Cal. 2014) (finding that Sweeney "routinely files objections to class settlements" and is a "serial objector."); *Larsen v. Trader Joe's Co*., No. 11-cv-05188, 2014 WL 3404531, *7 (N.D. Cal. 2014) (overruling objections and recognizing that "attorney Patrick Sweeney also has a long history of representing objectors in class action proceedings"); *Arthur v. Sallie Mae, Inc*., No. 10-cv-00198, 2012 WL 4075238, at *2 (W.D. Wash. 2012) (granting final approval and overruling Sweeney's objection as "meritless").

## III.  ARGUMENT

### A.    The Settlement Meets the Standards Governing Final Approval

Federal Rule of Civil Procedure 23(e) provides that "[a] class action shall not be dismissed or compromised without the approval of the court." Fed. R. Civ. P. 23(e). Approval under Rule 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted. *See Manual for Complex Litigation, Third,* § 30.41, at 236-37 (1995). The Court has broad discretion to grant approval of class actions and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998); *Cotter v. Lyft, Inc*., 193 F. Supp. 3d 1030, 1036, 2016 U.S. Dist. LEXIS 184931 (N.D. Cal. 2016). In determining whether a proposed

---

[12] *Id*. ¶ 8.2.3

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

The court also examines the settlement terms for overall fairness by balancing these factors: "the strength of plaintiff's case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed; the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026; *Cotter,* 193 F.Supp.3d at 1035.

Furthermore, the Ninth Circuit has articulated additional factors that must be considered, especially where, as here, a settlement has been reached prior to class certification. *In re Bluetooth Headset Products Liability Litig.* ("*Bluetooth*"), 654 F.3d 935, 946 (9th Cir. 2011). The three "red flags" *Bluetooth* instructs trial courts to look for are: "(1) When class counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but counsel is amply rewarded; (2) When the parties negotiate a 'clear sailing' arrangement providing for the payment of attorney's fees separate and apart from class funds without objection by defendant; (3) When the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund" (internal citations omitted). *Id.* at 947. Examination of each of these factors favors final approval here.

### 1.    The Settlement Was A Result of Arm's-Length Negotiations

A settlement is considered fair and reasonable if it occurred as a result of arm's-length negotiations before an experienced mediator. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999); *Carter v. Anderson Merchandisers, LP*, No. EDCV 08-0025, 2010 U.S. Dist. LEXIS 55581, at *22 (C.D. Cal. 2010) ("The Court is…satisfied the Settlement Agreement is the product of arm's-length negotiation" because it was reached through "formal mediation sessions presided over by an experienced mediator[.]")

The case was not settled early on. It took over a year of litigation, two full-day mediations with two experienced neutrals, and weeks of follow-up mediation discussions with the assistance

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

of Honorable William Cahill. RJC Decl. ¶ 6. The Parties also conducted ample discovery to allow

experienced class action attorneys representing both parties to consider the full range of possible

outcomes. *Id*. As such, the Parties reached the proposed Settlement only after they were capable of

a full and fair understanding of their case and their opponent's case, having gone through

significant discovery and motion practice. *Id.*; *See also, Rodriguez v. West Publishing Corp.,* 563

F.3d 948, 967 (9th Cir. 2009).

> 2.      *The Settlement Passes the Bluetooth Test and Is Not A Product of Collusion*

This Settlement passes the three-part *Bluetooth* test. First, the Claim Fund is substantially

larger than the 25% benchmark fee award requested by Class Counsel (Dkt. 83). Second, there is

no "clear sailing" provision in the Settlement Agreement. Defendant is free to oppose the

requested fee if it so chooses. Third, there is no reversion here.

> 3.      *The Settlement is Fair Under the Hanlon Factors*

In determining whether a settlement is fair, a court weighs the benefits for the class against

the uncertainty of litigation and the possibility that the class members would obtain no relief in the

absence of a settlement. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)

("...it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive

litigation that induce consensual settlements."); *see also*, *Hanlon*, 150 F.3d at 1026 (When

considering the fairness of a proposed class settlement, courts considers many factors, including,

the strength of a plaintiff's case against the risk, expense, complexity and likely duration of further

litigation.).  As discussed in detail in Section III(C), *infra*, the balancing of the *Hanlon* factors and

other considerations confirm the Settlement is fair, adequate, and reasonable.

**B.      The Best Practicable Notice of Settlement Has Been Provided to the Class**

Under Rule 23(e), the Court "must direct notice in a reasonable manner to all Class

Members who would be bound by the propos[ed settlement]." Fed. R. Civ. P. 23(e)(1). Class

Members are entitled to receive the "best notice practicable" under the circumstances. *Id*. Notice is

satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those

with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village, LLC*

*v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Class Notice in this case satisfies these requirements and was carried out in compliance with the notice procedures set forth in the Settlement Agreement, which the Court approved in its preliminary approval order (Dkt. 80). *See Ford v. CEC Entm't Inc.*, No. 14 Civ. 677, 2015 WL 11439033, at *3 (S.D. Cal. 2015) (finding notice standards satisfied when claims administrator provided notice in accordance with the procedures previously approved by the court in its preliminary approval order).

DSG created the best practicable notice consisting of efficient media vehicles with the objective of reaching a substantial portion of Class Members. Schey Decl. ¶ 8. In fact, DSG created the best practicable plan because it was designed in the same way a company would design an advertising campaign to sell that very same product at issue. *Id*. ¶ 11.

As discussed *supra*, notice was published in several places, all of which referred Class Members to the dedicated Settlement Website. *Id*. ¶ 27. The Settlement Website set forth, in large text, the deadlines for claims, objections, and requests for exclusion from the Settlement Classes as well as the date of the Final Fairness Hearing. *Id*. ¶ 8. It also contained easily accessible links to the short- and long-form notices, Preliminary Approval Order, Settlement Agreement, Amended Settlement Agreement, Fourth Amended Class Action Complaint, and Motion for Attorneys' Fees and supporting documents. *Id*.

Three print publications ran in the August 6, 2018 issue of *Soap Opera Digest*, in the August 13, 2018 issue of *National Enquirer* and the August 6, 2018 issue of *Life & Style*, using the short-form notice approved by the Court. *Id*. They reached approximately 13.7 Million adults in the United States. *Id*. The internet notice began on July 26, 2018 and continued for a period of 30 days until August 25, 2018. *Id*. This campaign achieved approximately 111,619,999 display and search impressions on top-tier networks, including *Google, Facebook, Yahoo* and Movie specific sites including *Fandango, MovieTickets, Moviefone and RottenTomatoes*. *Id*. The entire campaign reached at least 70 percent of the adult internet users who fell into the targeted group, 13.7 million consumers through its print ads and 8.9 million through the Press Release. *Id*.

Additionally, the claims administrator operated a toll-free information line and email address to provide information about the case and settlement. *Id.* During the Claims Period, DSG

10
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

received 80,208 valid claims seeking reimbursement for 1,404,729 boxes of candy. *Id.* ¶ 24. Notably, the number of claims received vastly exceeded the 50,000 minimum number of claims DSG had estimated at preliminary approval. RJC Decl. ¶ 3. Accordingly, the notice plan fulfilled all requirements of adequate notice and should be duly approved.

### C. Final Approval is Appropriate under Rule 23 because the Settlement is Fair, Reasonable, and Adequate

The "universally applied standard" in determining whether a court should grant final approval to a class action settlement is whether the settlement is "fundamentally fair, adequate, and reasonable." 5 Moore Federal Practice, § 23.85 (Matthew Bender 3d ed.) (citing *In re Pacific Enters. Sec. Litig.,* 47 F.3d 373, 377 (9th Cir. 1995)). In making this determination, "[a]t the final approval stage, the court must balance the following non-exhaustive factors to evaluate the fairness of the proposed settlement: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Cotter,* 176 F. Supp. 3d at 931; *Hanlon,* 150 F.3d at 1026. In making an approval inquiry, the court must be mindful that the law favors the compromise and settlement of class action suits. *See, e.g., In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Churchill Village, LLC.,* 361 F.3d at 576; *Class Plaintiffs*, 955 F.2d at 1276; *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

Already applying a rigorous review at the preliminary stage, the Court found the settlement fair, reasonable, and adequate (Dkt. 80). However, because "further factual development[s]" between preliminary and final approval, as well as the comments of objectors, may reveal unfairness in the settlement, even a "rigorous inquiry" at the preliminary approval stage does not "convert final review to a mere formality." *Cotter,* 193 F. Supp. 3d at 1036. Accordingly, Plaintiff reiterates and expands on the reasons why final approval is warranted.

///

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

### 1. The Strength of Plaintiff's Case

The Parties have balanced "plaintiffs' expected recovery . . . against the value of the settlement offer," taking into account "the relative strengths and weaknesses of the plaintiffs' case." *Cotter*, 176 F. Supp. 3d at 935 (internal quotations omitted).

Plaintiff vigorously litigated this case with one goal in mind: to change Defendant's deceptive product packaging and make consumers whole. In pursuit of his goal, Plaintiff and Class Counsel exhausted significant time and resources, including substantial law and motion work, review of over 6,000 pages of documents, conducting numerous Rule 30(b)(6) depositions, and retaining four experts who conducted a large- scale consumer survey, detailed slack fill analysis, marketing analysis, and conjoint analysis, in support of Plaintiff's motion for class certification, as well as attending two mediations in San Francisco. *Id.*

In line with Plaintiff's goal, the Settlement provides Class Members both significant monetary relief and injunctive relief. In particular, the Settlement allows for a generous refund of 50 cents per box purchased, or a *two- to five-times multiplier* of what class members could potentially recover at trial. *Id.* ¶ 3, Dkt. 72-4 ¶ 4.2.2. Plaintiff's retained experts in economics and conjoint analysis, Dr. Justin Lenzo and Dr. Michael Bechtel, respectively, calculated the price premiums attributable to the challenged packaging. Dkt. 54-13. Based on the results of the 3,788-participant consumer survey, which were applied to the results of a detailed slack-fill analysis of the Products completed by Plaintiff's packaging design engineering expert, Dr. Claire Sand (Dkt. 54-18), the price premium attributable to nonfunctional slack-fill in the retail channels equaled 16.1% to 26.4% across the Products (Dkt. 54-13 ¶ 145). The price premium for the movie theater channel was slightly less, ranging from 9.9% to 16.6% across the Products. *Id.* Based on an average retail price of $1.00 per unit, the per-unit price premium would equal approximately 10 cents to 26 cents. *Id.* Accordingly, the cash recovery that the Settlement offers is far greater on a per box basis than the amount class members could obtain at trial. *Id.* In fact, the pro rata distribution of the Claim Fund is estimated at $.82 per box with an average of $14.28 per claim, which is 3- to 8-times greater than the expected recovery at trial. RJC Decl. ¶ 3; Schey Decl. ¶ 25.

///

In addition to monetary relief, Defendant's changed business practices will benefit Class Members, consumers, and the general public, by ensuring they receive an amount of candy commensurate with their expectation and thereby help dispel any deception. RJC Decl. ¶ 7. In particular, Defendant has agreed to modify its fill level quality control procedures and target fill levels to at least 75% for theater box Products. *Id.*; Dkt. 72-4 ¶ 4.1. Notably, Plaintiff's experts estimated the actual fill level for theater box Products to range from 42.6% to 52.5% and for Trolli bag-in-a-box Products to be 27.2% (Dkt. 54-18 p. 30 tbl. 11), and found consumers on average expect the Products to be filled 67% based on the size of the Products' box (Dkt. 54-13 ¶¶ 25, 99).

Although Plaintiff believes he has a strong case with substantial supporting evidence, Plaintiff would have to overcome significant potential hurdles to recover a fraction of the benefits promised under the settlement. *See Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998) (approving $6 million settlement fund as fair, adequate, and reasonable, finding risk of going to trial "significant"); *Valdez v. Neil Jones Food Co.*, No. 1:13-cv-00519, 2016 U.S. Dist. LEXIS 105839, at *21 (E.D. Cal. 2016) ("Given the uncertainty of ultimate success at trial, the proposed settlement provides the parties with a fair resolution of the issues presented which weighs in favor of settlement."); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 4 A Conte & H. Newberg, *Newberg on Class Actions,* § 11:50 at 155 (4th ed. 2002)) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."); *In re Mfrs. Life Ins. Co. Premium Litig.,* MDL No. 1109, No. 96-CV-230, 1998 U.S. Dist. LEXIS 23217, at *17 (S.D. Cal. 1998) ("There is easily enough uncertainty in the mix to support settling the dispute rather than risking no recovery in future proceeding.").

Indeed, loss on any one of the following hurdles would eliminate or drastically reduce the recovery: (1) obtaining Rule 23 class certification; (2) maintaining Rule 23 class certification; (2) defeating prospective summary judgment; (3) establishing liability at trial; (4) overcoming *Daubert* challenges; (5) engaging in a "battle of the experts"; and (5) even if Plaintiff was to prevail on all of these issues, the Ninth Circuit or Supreme Court could reverse any victory. RJC Decl. ¶ 8.

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

2. *The Risk, Expense, Complexity, and Delay of Further Litigation Supports Final Approval*

In applying this factor, a court should weigh the benefits of the settlement against the expense and delay involved in achieving an equivalent or even more favorable result at trial. *Lane v. Facebook, Inc.*, No. C 08-3845, 2010 U.S. Dist. LEXIS 24762, at *16 (N.D. Cal. 2010); *Curtis-Bauer v. Morgan Stanley & Co.*, No. C 06-3903, 2008 U.S. Dist. LEXIS 85028, at *13 (N.D. Cal. 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").

Here, litigating the case through to trial would have been expensive, required extensive resources, involved substantial risk, and would not have been fully resolved for years. RJC Decl. ¶ 9. Even if Plaintiff were to expend the time and resources litigating the case and prevailed at trial, the Class would face additional risks if Defendant appeals or moves for a new trial. *See In re Apple Computer Sec. Litig.*, No. C-84-20148(A), 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. 1991) (the jury rendered a verdict for plaintiffs exceeding $100 million, however, the court overturned the verdict and ordered a new trial with respect to the corporate defendant). In contrast, the Settlement provides significant and certain relief that is available now as opposed to a fraction of this recovery potentially and hypothetically in the distant future.

Plaintiff also faces risks in certifying a class and maintaining that class status through trial. Indeed, even assuming that the Court were to grant Plaintiff's March 5, 2018 motion for class certification, the class could still be decertified at any time. *See In re Netflix Privacy Litig.*, No. 5:11-CV-00379, 2013 U.S. Dist. LEXIS 37286, at *15-16 (N.D. Cal. 2013) (internal citations omitted) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement."). From their prior experience, Plaintiff's counsel anticipates that Defendant would oppose certification, seek interlocutory appeal pursuant to Rule 23(f), and move to decertify at a later date. RJC Decl. ¶ 9. Settlement now eliminates these risks by ensuring Class Members a recovery that is "certain and immediate, and eliminates the risk that class members would be left without any recovery… at all." *Fulford v. Logitech, Inc.*, No. 08-cv-02041, 2010 U.S. Dist. LEXIS 29042, at *8 (N.D. Cal. 2010).

///

Furthermore, complex class actions can be expensive and time-consuming to prosecute. Indeed, the Parties' additional expert costs would quickly accumulate as a result of expert depositions, rebuttal reports, oppositions to any *Daubert* challenges, testimony, and any associated costs such as travel expenses which could quickly lead to a scenario in which settlement might not be economically feasible for either party. RJC Decl. ¶ 10. The alternative to a class/collective settlement – i.e., individual litigation – fares no better as it would tax private and judicial resources over a period of years. As such, the Settlement in this case is consistent with the "overriding public interest in settling and quieting litigation" that is "particularly true in class action suits" and thus, provides another reason to approve the Settlement. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

Lastly, a trial would likely not commence until sometime in mid-2019 or later. RJC Decl. ¶ 11. Thus, any monetary and injunctive relief, which is not guaranteed and likely would not be as substantial as what Plaintiff has achieved with this Settlement, would probably be delayed by at least a year. *Id*. In the meantime, Defendant would be permitted to continue to deceptively package the Products with impunity to the financial detriment of class members and consumers.

### 3. The Settlement Amount Will Fairly and Adequately Compensate the Class

The settlement amount, as with any settlement, represents a compromise between receiving full damages and penalties on the one hand, and total defeat (including possible imposition of defense costs) on the other. *See Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) ("Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the Parties each give up something they might have won had they proceeded with litigation.") Accordingly, the settlement is not to be judged against a speculative measure of what might have been achieved. *Linney*, 151 F.3d at 1242. Rather, "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. Given the risks and complexity of litigation, and the cost savings obtained through settlement, the Settlement amount here is fair and adequate.

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

As discussed *supra*, Defendant will pay a total of $2.5 million in cash to a Claim Fund whereby each Class Member who made a claim may obtain a cash refund of 50 cents per box purchased for an unlimited number of purchases. Dkt. 72-4 ¶ 4.2.2. Up to 15 claims, for a total of $7.50, will be paid without proof of purchase. *Id*. There is no cap on the number or number of claims submitted by class members with proof of purchase. *Id*. No money will revert to Defendant. *Id*. ¶ 4.2.7. Accordingly, with 80,208 valid claims as of September 18, 2018, the pro rata distribution of the Claim Fund is estimated at $.82 per box with an average of $14.28 per claim[13], which is over 75% higher than expected. Schey Decl. ¶ 25. Notably, this Settlement is the largest-ever slack-fill settlement on record and provides a superior recovery for the Class. RJC Decl. ¶ 12.

The Settlement also provides the Class with significant injunctive relief which requires Defendant to modify its fill level quality control procedures and target fill levels going forward to at least 75% for theater box Products, and 50% for all other Products, including bag-in-a-box. Dkt. 72-4 ¶ 4.1. The value of injunctive relief—including the benefit to consumers in the form of an improved marketplace that is not skewed by false advertising—can properly be considered when evaluating a settlement's fairness. *See, e.g., Allen v. Bedolla*, 787F.3d 1218, 1224 (9th Cir. 2015) (explaining that in evaluating the fairness of a settlement, district courts should "make express findings about the value of the injunctive relief"); *Lane v. Facebook*, 696 F.3d 811, 826 (9th Cir. 2012) (noting that a "judicially-enforceable agreement" to maintain changed practices may be considered in a fairness inquiry).

Assuming this case went to trial, Plaintiff's counsel believes that the best-case recovery at trial would be approximately $20 million, based on applying Drs. Lenzo and Bechtel's damages analysis (Dkt. 54-13) to nationwide sales figures. RJC Decl. ¶ 13. However, Defendant disputes any such premium exists, and expert testimony on the subject is likely to diverge wildly. *Id*.

Considering the foregoing, the Settlement fairly and adequately compensates Class Members.

---

[13] This pro rata includes the initial Administration Fees, estimated check fees, all Attorney's Fees, the Plaintiff's service award, but is prior to any additional Administrative or check fees, remaining claims within deadline, invalid, duplicate or fraudulent claims. Schey Decl. ¶ 25.

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

4.     *The Settlement was Finalized after Extensive Discovery and Investigation*

"[I]n the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (citation omitted); *see also In re Immune Response Sec. Litig.*, 497 F.Supp.2d 1166, 1174 (S.D. Cal. 2007) (approving settlement where informal discovery gave parties clear view of strength and weaknesses of their cases).

Here, the Parties engaged in formal and informal discovery, pursued extensive written discovery, and thoroughly investigated Plaintiff's claims. RJC Decl. ¶ 14. Indeed, Plaintiff dedicated considerable time, effort, and skill engaging in the following: (1) developing the causes of action in this case; (2) evaluating the likelihood of getting the matter certified and maintaining class status throughout the case; (3) appraising the strength of Plaintiff's liability theory, the extent and range of class recovery against the risks of not obtaining and maintaining class certification status; (4) assessing the risks posed through the normal perils of litigation, including the defenses asserted by Defendant, Defendant's proffered records, the difficulties of complex litigation, the lengthy process of establishing specific damages, and various possible delays and appeals; (5) engaging in rounds of interrogatories and requests for production; (6) reviewing over 6,000 documents totaling thousands of pages[14]; (7) taking the depositions of Defendant's Rule 30(b)(6) corporate designees; (8) serving third party subpoenas; (9) extensive discussions with Plaintiff's four experts who conducted in-depth studies and analyses, produced thorough expert reports on product packaging design, marketing, and conjoint analysis/damages, as well as a large-scale consumer survey; and (10) significant legal research and briefing. *Id*. The Parties also attended two in-person mediations in San Francisco. *Id*. Accordingly, the Settlement Agreement is the result of fully-informed arm's length negotiations based on a well of information obtained through discovery. *Id*.

///

---

[14] In fact, the actual amount of discovery materials exceeds this amount because many of these documents are actually voluminous Excel spreadsheets with multiple tabs of information and some of which are dozens if not hundreds of pages long when printed. RJC Decl. ¶ 14.

17

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

5. *Counsel's Experience and Views Support Final Approval*

The judgment of experienced counsel regarding the settlement is entitled to great weight. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981). Reliance on such recommendations is premised on the fact that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967; *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir.1995) ("[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.")

Class Counsel endorses the Settlement as fair, adequate, and reasonable. RJC Decl. ¶ 15. Class Counsel has extensive experience in the litigation, certification, trial, and settlement of complex class action cases. *See* Dkt. 72-5. In negotiating the Settlement, Class Counsel benefited from their years of experience along with their intimate knowledge of the factual and legal issues in this case. *Id*. Thus, the experience of counsel, and the fact that counsel for both Parties support the Settlement, weighs in favor of final approval.

6. *The Parties Participated in Arm's-Length Negotiations Before an Experienced Neutral Mediator.*

As discussed *supra*, the Ninth Circuit has shown longstanding support of settlements reached through arms' length negotiation by capable opponents. In *Rodriguez, supra,* 563 F.3d 948, the Ninth circuit expressly opined that courts should defer to the "private consensual decision of the [settling] parties." *Id.* at 965 (citing *Hanlon,* 150 F.3d at 1027). The primary reason for deferring to such settlements is the experience of counsel and the participation of a neutral, both of which factors are present here:

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Id.* at 965 (quoting *Officers for Justice,* 688 F.2d at 625).

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

The *Rodriguez* court "put a good deal of stock in the product of an arm's-length, non-collusive, negotiated resolution, and [courts] have never prescribed a particular formula by which that outcome must be tested." *Rodriguez,* 563 F.3d at 965 (citations omitted). As the *Rodriguez* court explained, "In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." *Id.* (citations omitted).

The proposed Settlement here is the product of arm's-length negotiations between the Parties. RJC Decl. ¶ 16.  As previously stated, Plaintiff conducted a significant investigation of the facts and law during the prosecution of this action, including (1) extensive discovery and law and motion practice; (2) obtaining and reviewing detailed records produced by Defendant; (3) conducting a comprehensive analysis of the material issues in the case based on reports prepared by experts in survey design, damages, packaging engineering, and marketing; and (4) attending two mediations in San Francisco with the help of two experienced neutrals. *Id.* The Parties considered the strengths and weaknesses of Plaintiff's claims and Defendant's defenses. *Id.*

The Parties also considered the uncertainty and risk of the outcome of further litigation and the difficulties and delay inherent in such litigation. *Id.* ¶ 17.  The Parties are also aware of the burdens of proof necessary to establish the amount of damages for the Class Members, not to mention the strong likelihood that Defendant would appeal any court decision in Plaintiff's favor. *Id.* Considering the foregoing, final approval is warranted.

### 7.    *No Governmental Participant*

There is no governmental participant in this case. Therefore, this factor is neutral. *See Mathein v. Pier 1 Imps. (U.S.), Inc.*, No. 1:16-cv-00087, 2018 U.S. Dist. LEXIS 71386, at *21 (E.D. Cal. 2018) ("Because there are no separate governmental participants involved in the action, this factor is neutral in the court's analysis of the settlement agreement.")

### 8.    *Class Members Have Reacted Extremely Positively to the Settlement*

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1    are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D.

2    523, 528-29 (C.D. Cal. 2004); *see Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852

3    (N.D. Cal. 2010) (Walker, J.) (granting final approval where only 16 of 329 class members opted

4    out, and explaining that where exclusions and opt-outs are low, there is presumption of favorable

5    class reaction).

6        After this Court's Preliminary Approval Order, the Parties implemented the Court-

7    approved Notice Plan. Class Members had until September 20, 2018, to object to the Settlement

8    (Dkt. 80). Notably, while more than 80,000 Class Members have chosen to participate in the

9    Settlement, there have been 0 opt-outs, 0 exclusions, and only two objections (both of which are

10   procedurally and substantively deficient). Schey Decl. ¶ 20; *see National Rural Telecomm. Coop.*

11   *v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("The absence of a single objection to

12   the Proposed Settlement provides further support for final approval of the Proposed Settlement.");

13   *Barcia v. Contain-A-Way, Inc.*, No. 07cv938, 2009 U.S. Dist. LEXIS 17118, at *12 (S.D. Cal.

14   2009) (finding zero objections and 56 opt-outs out of 2,385 class members "strongly supports the

15   fairness, reasonableness, and adequacy of the settlement."); *see also In re Austrian & German*

16   *Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of

17   objections are received, that fact can be viewed as indicative of the adequacy of the settlement.");

18   *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-119 (3d Cir. 1990) (finding 29 objections out of a

19   281 member class "strongly favors settlement"). As such the overwhelmingly positive response of

20   Class Members favors final approval.

21       **D.    The Court Should Grant Final Class Certification**

22       The Court's Preliminary Approval Order provisionally certified the Settlement Class

23   pursuant to Rule 23 of the Federal Rules of Civil Procedure (Dkt. 80). The Court ruled that, for

24   purposes of settlement, the Class meets the Rule 23 requirements. *Id*. No intervening case law or

25   events have developed since then to disturb the Court's ruling.

26       As part of its ruling, the Court stated that it considered differences in state laws as part of

27   the predominance inquiry but that it need not consider "whether the case, if tried, would present

28   intractable management problems, for the proposal is that there be no trial." *In re Hyundai & Kia*

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

20

*Fuel Econ. Litig.*, 881 F.3d 679, 693 (9th Cir. 2018) ("*Hyundai*") (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)). Dkt. 80. The Court ruled that Plaintiff has submitted extensive briefing and supplemental materials in support of his motion for preliminary approval identifying the similarities and differences among state laws and setting forth why the common issues predominate and why the differences are immaterial to this litigation. *Id.*; *see* Dkt. 72 at Section IV.  For those reasons, the Court found that common issues predominate with respect to the Settlement Class. Dkt. 80. The Court also appointed Plaintiff Thomas Iglesias as Class Representative and Plaintiff's counsel, Clarkson Law Firm, P.C., as Class Counsel. *Id.*

Consistent with its preliminary findings, the Court should grant final class certification.

## IV.   CONCLUSION

For the reasons stated above, and the reasons set forth in Plaintiff's motion for preliminary approval of class action settlement (Dkt. 72), Plaintiff respectfully requests that this Honorable Court GRANT final approval of the class action Settlement.

DATED: September 20, 2018                    **CLARKSON LAW FIRM, P.C.**

   /s/ Ryan J. Clarkson
Ryan J. Clarkson, Esq.
Shireen M. Clarkson, Esq.
Bahar Sodaify, Esq.

Settlement Class Counsel

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069