**CLARKSON LAW FIRM, P.C**.
Ryan J. Clarkson (SBN 257074)
rclarkson@clarksonlawfirm.com
Shireen M. Clarkson (SBN 237882)
sclarkson@clarksonlawfirm.com
Bahar Sodaify (SBN 289730)
bsodaify@clarksonlawfirm.com
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069
Tel: (213) 788-4050
Fax: (213) 788-4070

Settlement Class Counsel

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS IGLESIAS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>FERRARA CANDY CO., and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 3:17-cv-00849-VC<br><br>**[CLASS ACTION]**<br><br>**DECLARATION OF RYAN J. CLARKSON IN SUPPORT OF PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hon. Judge Vince Chabbria<br><br>Complaint filed:  February 21, 2017<br><br>Hearing Date:  October 25, 2018<br>Hearing Time:  10:00 AM<br>Hearing Location:  Courtroom 4 |

DECLARATION OF RYAN J. CLARKSON

**DECLARATION OF RYAN J. CLARKSON**

I, Ryan J. Clarkson, declare as follows:

1. I am managing partner at Clarkson Law Firm, P.C. and Class Counsel for the Settlement class in the above-captioned matter. I am licensed to practice in all state and federal courts in California and Michigan, and I am a member in good standing of the State Bars of California and Michigan. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would testify competently thereto.

2. I make this declaration in support of Plaintiff's motion for final approval of class action Settlement submitted to the Court pursuant to the terms of the parties' Settlement Agreement.

3. As part of the Settlement, Defendant will pay $2.5 million into a Claim Fund. Each Class Member who made a claim may obtain a cash refund of 50 cents per box purchased. Class Members were able to submit claims for an unlimited number of purchases. Up to 15 claims, for a total of $7.50, will be paid without Proof of Purchase. These amounts will increase pro rata to ensure the Claim Fund is exhausted. As of September 18, 2018, the pro rata distribution of the Claim Fund is estimated to increase by more than 50% to $.82 per box with an average of $14.28 per claim. At 50 cents per box purchased, the recovery represents a *two- to five-times multiplier* of what class members could potentially recover at trial. At the estimated 82 cents, it represents a 3- to 8-times multiplier. Further, this amount is subject to slightly change as the deadline for submitting a claim is September 20, 2018, the same date as the filing of this motion. At the preliminary approval hearing, DSG estimated the number of claims would exceed 50,000.

4. This Settlement was reached after substantial discovery, law and motion practice, including a strong class certification motion supported by four retained experts who conducted full expert reports based on a detailed slack-fill analysis and large-scale consumer survey, and after arms-length negotiations between experienced attorneys familiar with the legal and factual issues of this case, including two mediations with experienced neutrals. The Settlement is also reasonable given the risk, expense, complexity, and likely duration of further litigation.

///

5. The notice and administration costs of $522,000 does not include the cost for printing and mailing Settlement checks to claimants, which DSG has agreed to provide "at cost," which totals $100,260 as of September 18, 2018, and which is estimated to be $112,760 after the claim submission deadline of September 20, 2018.

6. The case was not settled early on. It took over a year of litigation, two full-day mediations with two experienced neutrals, and weeks of follow-up mediation discussions with the assistance of Honorable William Cahill. The Parties also conducted ample discovery to allow experienced class action attorneys representing both parties to consider the full range of possible outcomes. As such, the Parties reached the proposed Settlement only after they were capable of a full and fair understanding of their case and their opponent's case, having gone through significant discovery and motion practice.

7. In addition to monetary relief, Defendant's changed business practices will benefit Class Members, consumers, and the general public, by ensuring they receive an amount of candy commensurate with their expectation and thereby help dispel any deception.

8. Loss on any one of the following hurdles would eliminate or drastically reduce the recovery: (1) obtaining Rule 23 class certification; (2) maintaining Rule 23 class certification; (2) defeating prospective summary judgment; (3) establishing liability at trial; (4) overcoming *Daubert* challenges; (5) engaging in a "battle of the experts"; and (5) even if Plaintiff was to prevail on all of these issues, the Ninth Circuit or Supreme Court could reverse any victory.

9. Here, litigating the case through to trial would have been expensive, required extensive resources, involved substantial risk, and would not have been fully resolved for years. From their prior experience, Plaintiff's counsel anticipates that Defendant would oppose certification, seek interlocutory appeal pursuant to Rule 23(f), and move to decertify at a later date.

10. Furthermore, complex class actions can be expensive and time-consuming to prosecute. Indeed, the Parties' additional expert costs would quickly accumulate as a result of expert depositions, rebuttal reports, oppositions to any *Daubert* challenges, testimony, and any associated costs such as travel expenses which could quickly lead to a scenario in which

1  Settlement might not be economically feasible for either party.

2  11.   A trial would likely not commence until sometime in mid-2019 or later. Thus, any monetary and injunctive relief, which is not guaranteed and likely would not be as substantial as what Plaintiff has achieved with this Settlement, would probably be delayed by at least a year. In the meantime, Defendant would be permitted to continue to deceptively package the Products with impunity to the financial detriment of class members and consumers.

12.   Based on all available resources, this Settlement is the largest-ever slack-fill Settlement on record and provides a superior recovery for the Class.

13.   Assuming that this case went to trial, Plaintiff's counsel believes that the best-case recovery at trial would be approximately $20 million, based on applying Drs. Lenzo and Bechtel's damages analysis (Dkt. 54-13) to nationwide sales figures. However, Defendant disputes any such premium exists, and expert testimony on the subject is likely to diverge wildly.

14.   Here, the Parties engaged in formal and informal discovery, pursued extensive written discovery, and thoroughly investigated Plaintiff's claims. Indeed, Plaintiff dedicated considerable time, effort, and skill engaging in the following: (1) developing the causes of action in this case; (2) evaluating the likelihood of getting the matter certified and maintaining class status throughout the case; (3) appraising the strength of Plaintiff's liability theory, the extent and range of class recovery against the risks of not obtaining and maintaining class certification status; (4) assessing the risks posed through the normal perils of litigation, including the defenses asserted by Defendant, Defendant's proffered records, the difficulties of complex litigation, the lengthy process of establishing specific damages, and various possible delays and appeals; (5) engaging in rounds of interrogatories and requests for production; (6) reviewing over 6,000 documents totaling thousands of pages; (7) taking the depositions of Defendant's Rule 30(b)(6) corporate designees; (8) serving third party subpoenas; (9) extensive discussions with Plaintiff's four experts who conducted in-depth studies and analyses, produced thorough expert reports on product packaging design, marketing, and conjoint analysis/damages, as well as a large-scale consumer survey; and (10) significant legal research and briefing. In fact, the actual amount of discovery materials exceeds this amount because many of these documents are actually

voluminous Excel spreadsheets with multiple tabs of information and some of which are dozens if not hundreds of pages long when printed. The Parties also attended two in-person mediations in San Francisco. Accordingly, the Settlement Agreement is the result of fully-informed arm's length negotiations based on a well of information obtained through discovery.

15. Class Counsel endorses the Settlement as fair, adequate, and reasonable.

16. The proposed Settlement here is the product of arm's-length negotiations between the Parties. As previously stated, Plaintiff conducted a significant investigation of the facts and law during the prosecution of this action, including (1) extensive discovery and law and motion practice; (2) obtaining and reviewing detailed records produced by Defendant; (3) conducting a comprehensive analysis of the material issues in the case based on reports prepared by experts in survey design, damages, packaging engineering, and marketing; and (4) attending two mediations in San Francisco with the help of two experienced neutrals. The Parties considered the strengths and weaknesses of Plaintiff's claims and Defendant's defenses.

17. The Parties also considered the uncertainty and risk of the outcome of further litigation and the difficulties and delay inherent in such litigation. The Parties are also aware of the burdens of proof necessary to establish the amount of damages for the Class Members, not to mention the strong likelihood that Defendant would appeal any court decision in Plaintiff's favor. Considering the foregoing, final approval is warranted.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed on September 20, 2018 at Los Angeles, California.

_____
Ryan J. Clarkson, Esq.