1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

THOMAS IGLESIAS, individually and on
behalf of all other similarly situated

Plaintiff,

vs.

FERRARA CANDY CO., and DOES 1
through 10, inclusive,

Defendants.

Case No. 3:17-CV-00849-VC

**DECLARATION OF MARK SCHEY
REGARDING CLASS NOTICE AND
ADMINISTRATION IN SUPPORT OF
PLAINTIFF'S MOTION FOR FINAL
APPROVAL**

### DECLARATION OF MARK SCHEY

I, MARK SCHEY, declare:

1.      I am a founding partner of Digital Settlement Group, LLC ("DSG"), a company that provides class action notice and claims administration. The following statements are based on my personal knowledge and information provided by other DSG principals and employees working under my supervision, and if called upon to do so, I could and would testify competently about these issues.

2.      The key purpose of this Declaration is to provide the Court with information regarding (a) DSG's implementation of the Notice Plan, including reach and efficiency, and (b) the reaction of the Settlement Class members to the Settlement.

3.      As the Class Action Settlement Administrator for the Settlement in the above-captioned case, DSG has performed the following duties: (1) arranging for the distribution of the Class Notice and Claim Forms to Settlement Class Members; (2) arranging for publication of the Publication Notice; (3) answering written inquiries from Settlement Class Members and/or forwarding such inquiries to Class Counsel or their designee; (4) receiving and maintaining on behalf of the Court and the Parties any Settlement Class Member correspondence regarding requests for exclusion from the Settlement; (5) establishing the Settlement Website that posts notices, Claim Forms, and other related documents; (6) establishing a toll-free telephone number; (7) receiving and processing claims; (8) submitting a declaration attesting to the dissemination of the Class Notice and the number of claims received; (9) distributing the CAFA noticing (10) providing timely reporting to Counsel throughout the notice and claims process to allow for thorough oversight.

4.      DSG acted in compliance with the notice procedures set forth above and as set forth in the Settlement Agreement, which the Court endorsed in its preliminary approval order. (Dkt. 80).

**CASE BACKGROUND AND TARGETED CLASS**

5.      In this case, Plaintiff alleges the Defendant packaged its boxed candy products in oversized packaging with nonfunctional empty space.

6.      The <u>Settlement Class</u> includes:  all residents of the United States who purchased one or more cardboard boxes of Jujyfruits®, Jujubes®, Now & Later®, Lemonhead®, Applehead®, Cherryhead®, Grapehead®, RedHots®, Trolli®, Chuckles®, Black Forest®, Jawbuster®, Jawbreaker®, Brach's®, Boston Baked Beans®, Super Bubble®, Rainblo®, or Atomic Fireball candy, or any flavors or varieties of them ("Settlement Class Products"), between February 21, 2013 and June 21, 2018.

**OVERVIEW OF THE NOTICE PLAN**

7.      This Litigation[1] involves Products sold predominantly at movie theater locations and retail, so the identity of purchasing Class Members is not readily known. In such cases, Internet and publication notice is the best way to inform Class Members about the Settlement. Digital Settlement Group relies heavily on recommendations from the Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide ("Claims Guide") in designing its notice plans.

8.      DSG developed a comprehensive notice program consisting of efficient media vehicles with the objective of reaching a substantial portion of Class Members.  An overview of the notice plan is outlined in this paragraph. DSG believes this provides the best practicable methods to reach potential class members and has seen successful results in similar plans with similar class members.

    a.   A Settlement Website (www.ferraracandysettlement.com), e-mail address
         (info@ferraracandysettlement.com), telephone number (877-452-8477), and address

---

[1] All defined terms contained herein shall have the same meanings as set forth in the Settlement Agreement and Release between the parties.

(8001 Broadway, Ste 200 Merrillville, IN 46410) were set up on July 16, 2018.  This information was provided on the Settlement Website and in the print and digital notifications discussed below.

b.  The Settlement Website sets forth, in large text, the deadlines for claims, objections, and requests for exclusion from the Settlement Classes as well as the date of the Final Fairness Hearing. It also contains easily accessible links to the short- and long-form notices, Preliminary Approval Order, Settlement Agreement, Amended Settlement Agreement, Fourth Amended Class Action Complaint, and Motion for Attorneys' Fees and supporting documents.

c.  A national Press Release was distributed on July 26, 2018 through the PR Newswire Network, which reaches nearly 4,500 United States websites, distributes multimedia to more than 2,500 websites and has social media distribution across Twitter, Facebook, and LinkedIn.

d.  Three print publications ran in the August 6, 2018 issue of *Soap Opera Digest*, in the August 13, 2018 issue of *National Enquirer* and the August 6, 2018 issue of *Life & Style*, using the short-form notice approved by the Court.  These reached approximately 13.7 Million adults in the United States.

e.  The Internet notice began on July 26, 2018 and continued for a period of 30 days until August 25, 2018. This campaign achieved approximately 111,619,999 display and search impressions on top-tier networks, including *Google*, *Facebook*, *Yahoo* and Movie specific sites including *Fandango*, *MovieTickets*, *Moviefone* and *RottenTomatoes*.

f.  All Internet advertisements directed potential Class Members to the Settlement Website, where they were able to download all important documents, review frequently asked questions (in English and Spanish), and file a claim. A toll-free

number with an Interactive Voice Response ("IVR") system was and is also available to answer potential questions.

g.   Weekly reports regarding claim submissions were provided to Class Counsel one week after the Internet notice campaign began. Additional reporting will continue after Final Approval to ensure proper oversight of the noticing and claims process.

9.   One of the concerns noted in the Claims Guide is that claims administrators are "often accountants by training and may lack personal knowledge or the training to conduct reach analyses." DSG, however, has extensive expertise in marketing and media-planning that is essential to conducting reach analysis that has been approved by Courts in similar cases with a large indirect purchaser class.

10.   The notice plan is supported by "unbiased evidence supporting the plan's adequacy"[2] as recommended by the Claims Guide. DSG uses industry-standard reporting tools from GfK MRI and comScore. GfK MRI is part of the GfK Group, the fourth largest market research organization worldwide. They are a leader in supplying the audience data for almost all national print campaigns in the country, and their Survey of the American Consumer produces one of the country's largest and most current database of consumer behavior, media usage, and consumer motivations. comScore is the leading cross-platform measurement company that provides independent data, metrics, products, and services to clients in the media, advertising, and marketing industries. They provide digital media analytics that help advertisers understand the composition, reach, and frequency of consumer media audiences. The accuracy of reporting from both GfK MRI and comScore has been approved by Courts in previous notice plans we have developed.

---

[2] *See* Claims Guide.

11.     Our notice programs created the best practicable plan because they were designed in the same way a company would design an advertising campaign to sell that very same product. In addition, the methods used have been approved in multiple cases with a substantial indirect purchaser class. *See Garcia*, Final Judgment and Order of Dismissal at ¶¶9-10 [Dkt. 196].

12.     In compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. Section 1715, DSG prepared a CAFA Notification Packet which was distributed to 57 Attorney Generals on May 18, 2018. A true and correct copy of the cover letter is attached as **Exhibit A**. DSG compiled and included with each CAFA Notification mailing a CD-ROM containing the following documents: the Class Action Complaint, First Amended Complaint, Second Amended Complaint, Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Partial Settlement and Memorandum of Law in Support, Declaration of Ryan J. Clarkson in Support of Preliminary Approval of Class Action Settlement, Class Action Settlement Agreement, [Proposed] Order Granting Preliminary Approval of Class Action Settlement, & Forms of Notice i.e. the Settlement Proof of Claim Form, Long Form Notice, and the Class Action Summary Notice.

13.     DSG served the CAFA Notification Packets from the U.S. Post Office in Merrillville, Indiana to the Attorney General of the United States, the Attorneys General of each of the 50 States and the District of Columbia, and the Attorneys General of the 5 recognized U.S. Territories.

14.     As of the date of this declaration, DSG has received no response to the CAFA Notification Packets from any of the recipients.

**THE REACTION OF THE CLASS AND REACH OF THE CAMPAIGN**

15.     During the Claims Period (July 16, 2018 to September 20, 2018), the telephone number established by DSG received 197 calls and 26 messages and 25 calls were placed.  This represents approximately 384 minutes of use.

16.     DSG exchanged approximately 210 e-mails through the address info@ ferraracandysettlement.com.

17.     DSG received 11 mail-in requests for more information and sent out 22 mailers, which contained Claim Forms (20), Copies of Frequently Asked Questions (1) and Copies of the Short Form Notice (1).

18.     The Internet notice campaign delivered a total of 111,619,999 impressions.

19.     The Settlement Website received 6,883,148 hits.

20.     DSG received 0 Optouts, 0 Exclusions, and 2 objections.

21.     The first objection was emailed to DSG by Anne Marquis on August 26, 2018. A true and correct copy is attached hereto as **Exhibit B.**

22.     The second objection was emailed to Class Counsel by Patrick Sweeney, pro se, on September 13, 2018, and Class Counsel immediately forwarded it to DSG. A true and correct copy is attached hereto as **Exhibit C.**

23.     The entire campaign reached at least 70 percent of the adult Internet users who fell into the targeted group, 13.7 million consumers through its print ads and 8.9 Million through the Press Release.

24.     During the Claims Period, DSG received 80,208 valid claims seeking reimbursement for 1,404,729 boxes of candy. Of those, 299 claimed to include proof of purchase. This count is before any validation or duplication practices.

25.     The pro rata distribution of the Settlement Fund is estimated at $.82 per box with an average of $14.28 per claim. This pro rata includes the initial Administration Fees, estimated check fees, all Attorney's Fees, the Plaintiff's service award, but is prior to any additional Administrative or check fees, remaining claims within deadline, invalid, duplicate or fraudulent claims.

**CONSUMER PUBLICATIONS**

26.     Three print publications were selected for their efficiency and reach with the targeted class. While the Internet has a high saturation of consumer product customers (and continues to grow), a targeted print publication element has been proposed to ensure that potential class members with limited Internet access or usage are not neglected.

27.     To develop the print notice, both proprietary data from previous notice plans and GfK MRI was used to evaluate the reach to the class. As noted earlier, the goal of the campaign is to reach adults, aged 18 and older, who have demonstrated an interest in products similar to those in this class action. In addition to raw data, an extensive marketing analysis was performed to ensure publications targeted adults aged 18 and older in the United States. The print publications proposed include:

a. Soap Opera Digest has a readership of over 2.8 million adults, and are more likely than average to have "candy consumers" as readers.  The notice was presented in a black and white format.

b. National Enquirer has a total readership of 6.6 million, and are more likely than average to have "candy consumers" as readers. It was presented in 1/3 page vertical black and white format.

c. Life & Style has a total readership of 4.3 million, and are more likely than average to have "candy consumers" as readers. It was presented in 1/3 page vertical

28.     By targeting widely read publications, the print publication portion was designed to effectively supplement the Internet notice portion of the plan. The print portion alone reached an estimated 13.7 million adults in the United States.

**INTERNET ADVERTISEMENTS**

29.     The Internet is an extremely powerful tool for reaching potential class members and driving them to the Settlement Website. According to Pew Research (2018),[3] 89 percent of all adults in the United States use the Internet, up from 76 percent in 2010. Over a decade of Internet marketing experience has been leveraged to design the most effective plan.

30.     The Internet notice program delivered 111,619,999 targeted Internet impressions, of which 411,972 were delivered via search.  The remaining display impressions were served on the most popular and highest reach sites and networks in the United states.  These Tier 1 properties included *Yahoo*, *Google* and *Facebook*. Relevant behaviors, interests, and topics were used to target consumers who were in this class.

31.     Targeted "search term" advertisements were delivered. Per the Claims Guide, this is to help satisfy "extra effort" where the class is "highly concentrated." In addition, contextual, in-market, topic and affinity targeting were used to ensure the most relevant audience.

32.     Over 3.7 Million Internet notice impressions were delivered to consumers 18+ who visited or searched the following popular Movie-goer websites including  *Fandango.com, Fandango App, RottenTomatoes.com, Movietickets.com* and *MovieFone.com*.

33.     All the notice advertisements were designed to "command class members' attention" and "were written in a clear, concise and easily understood language."[4] Clicking on the links directed the Class Member to the Settlement Website where they had quick access to a printable and online Claim Form.  True and correct examples of the Internet advertisements are attached hereto as **Exhibit D**.

---

[3] Data Source: http://www.pewinternet.org/fact-sheet/internet-broadband/

[4] *See* Claims Guide at 1, 5.

34.    The notice plan was designed to reach the largest target audience in a cost-efficient and timely manner.  Furthermore, the notice plan provided the best notice practicable, with reach similar to other court-approved notice plans in the same product category. It was designed to reach at least 70 percent of the Class, allowing for duplication across medium and utilizing third-party reporting tools that have been accepted in similar cases.

**CONCLUSION**

35.    Based on my class action notice planning experience, described above, the methods utilized in this Notice Program are consistent with other effective class action settlement notice plans that DSG has developed and in compliance with the Parties' Settlement Agreement and the Court's preliminary approval order (Dkt. 80)

36.    It is my professional opinion that the Class Action Notice Plan provided the best notice practicable and met the desire to actually inform. Furthermore, it provided the same reach and frequency evidence that Courts have approved in previous settlements.

I declare under penalty of perjury under the laws of the State of California and the United States that the above is true and correct to the best of my knowledge and that this declaration was executed this 18th of September 2018, at 12:42 p.m. PST.

_____
MARK SCHEY
Digital Settlement Group, LLC

# EXHIBIT A



**Hogan Lovells**

**CLASS ACTION FAIRNESS ACT – NOTICE TO FEDERAL AND STATE OFFICIALS**

May 18, 2018

To:     The United States Attorney General and All State and Territorial Officials listed on
        the attached Service List (Appendix A)

Re:     Iglesias v. Ferrara Candy Company
        Northern District of California Case No. 3:17-cv-00849-VC

Dear Sir or Madam:

I write on behalf of Ferrara Candy Company ("Ferrara") to provide notice of a proposed
settlement in the above-referenced putative class action pursuant to the provisions of the Class
Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715.

Plaintiff Thomas Iglesias filed the Action on February 21, 2017. He filed his First Amended
Complaint on May 10, 2017. In the FAC, Iglesias alleges that Ferrara sells its candy in opaque
cardboard boxes that are substantially underfilled. He contends that this slack-fill serves no
functional purpose and is misleading to consumers. *Id.* at ¶3, ¶39. Based on these allegations,
Iglesias asserts violations of the California Consumers Legal Remedies Act, the California False
Advertising Law, and the California Unfair Competition Law. *Id.* at ¶¶93-176. On May 10, 2018,
Iglesias filed a Second Amended Complaint clarifying the products at issue and asserting an
additional claim for unjust enrichment. Ferrara is the sole defendant in the action. On May 10,
2018, Ferrara entered into a Class Action Settlement Agreement with Plaintiff.

**Judicial Hearing Scheduled:** A hearing on the motion for preliminary approval of the
Settlement is currently scheduled for June 21, 2018 at the United States District Court for the
Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California,
Courtroom 4 – 17th Floor before United States District Judge Vince Chhabria.

**Settlement Class Definition:** The Class Action Settlement Agreement defines the
settlement class as follows:

All persons in the United States of America who purchased one or more candy products
manufactured by Ferrara and packaged for sale or resale to consumers in an opaque
cardboard box (including bag-in-a-box products), including Jujyfruits®, Jujubes®, Now and
Later®, Lemonhead®, Applehead®, Cherryhead®, Grapehead®, RedHots®, Trolli®,
Chuckles®, Black Forest®, Jawbuster®, Jawbreaker®, Brach's®, Boston Baked Beans®,
Super Bubble®, Rainblo®, Atomic Fireball®, and all flavors and varieties of those candies.
Excluded from the Settlement Class are any officers, directors, or employees of Defendant,
and the immediate family members of any such person. Also excluded is any judge who may
preside over this case.

The Settlement Class Period includes purchases made between February 21, 2013 and the date of
Preliminary Approval of the proposed Settlement.

May 18, 2018

**Documents Enclosed:**  In accordance with CAFA, copies of the following documents are on the enclosed CD in Adobe Acrobat PDF format.  If you do not have Acrobat it may be obtained for free at http://www.adobe.com/products/acrobat/readstep2.html.

1. Class Action Complaint, 1. Violation of California Consumers Legal Remedies Act, Civil Code § 1750, *et seq.*, 2. Violation of California False Advertising Law, Business & Professions Code, § 17500, *et seq.*, 3. Violation of California Unfair Competition Law, Business & Professions Code § 17200, *et seq.*

2. First Amended Complaint, 1. Violation of California Consumers Legal Remedies Act, Civil Code § 1750, *et seq.*, 2. Violation of California False Advertising Law, Business & Professions Code, § 17500, *et seq.*, 3. Violation of California Unfair Competition Law, Business & Professions Code § 17200, *et seq.*

3. Second Amended Complaint, 1. Violation of California Consumers Legal Remedies Act, Civil Code § 1750, *et seq.*, 2. Violation of California False Advertising Law, Business & Professions Code, § 17500, *et seq.*, 3. Violation of California Unfair Competition Law, Business & Professions Code § 17200, *et seq.,* 4. Unjust Enrichment

4. Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Partial Settlement and Memorandum of Law in Support

5. Declaration of Ryan J. Clarkson in Support of Preliminary Approval of Class Action Settlement

6. Class Action Settlement Agreement  (attached as Exhibit 1 to Declaration of Ryan J. Clarkson in Support of Preliminary Approval of Class Action Settlement)

7. [Proposed] Order Granting Preliminary Approval of Class Action Settlement

8. Forms of Notice

   - Settlement Proof of Claim Form (attached as Exhibit C to the Class Action Settlement Agreement)

   - Long-Form Notice (attached as Exhibit D  to the Class Action Settlement Agreement)

   - The Class Action Summary Notice (attached as Exhibit E to the Class Action Settlement Agreement)

**Other:**  Because the Covered Products are sold primarily by third-party retailers, and because Ferrara does not have access to the relevant retail sales data, Ferrara cannot feasibly provide (1) the names of class members who reside in each state; (2) a reasonable estimate of the number of class members residing in each state; or (3) a reasonable estimate of the proportionate share of the claims of such members to the entire settlement.

- 3 -                                                                    May 18, 2018

        Please feel free to contact me with any questions regarding the proposed Settlement,
enclosed materials, or the underlying class action.  My contact information is listed below.

Sincerely,

J. Christopher Mitchell

HOGAN LOVELLS US LLP
80 South Eighth Street, Suite 1225
Minneapolis, Minnesota  55402
Telephone:  + 1 (612) 402-3015
chris.mitchell@hoganlovells.com

*Attorney for Defendant Ferrara Candy Company*

Enclosures

# EXHIBIT B

**Ryan Clarkson**

| | |
|---|---|
| **From:** | Anne Marquis <aamarqu@icloud.com> |
| **Sent:** | Sunday, August 26, 2018 3:38 PM |
| **To:** | info ferraracandysettlement.com |
| **Subject:** | Ferraro Settlement |

I object not only to the settlement, but to the lawsuit itself. Ferraro produces a variety of products, in a variety of packaging, from sled-consumable to varying levels of gift packaging, all designed to protect the delicate product. Each package has the candy quantity and weight clearly visible, and it is the responsibility of the consumer to choose the desired size.

Sincerely,
Alyssa

Sent from my iPhone

# EXHIBIT C

## UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

THOMAS IGLESIAS, individually )
and on behalf of all others similarly )
situated, )
                                )
           Plaintiff, )
                                )
v. )
                                )
FERRARA CANDY CO., and )
DOES 1 through 10, inclusive, )
                                )
                                )
           Defendants. )

Case No. 3:17-cv-00849-VC
CLASS ACTION

---

## OBJECTION OF PATRICK S. SWEENEY PRO SE TO THE PROPOSED SETTLEMENT AND NOTICE OF INTENT NOT TO APPEAR

---

NOW COMES, Pro Se Objector, Patrick S. Sweeney and hereby files these objections to the proposed settlement in this matter.

### I.    <u>PROOF OF MEMBERSHIP IN CLASS</u>

Upon information and belief Patrick S. Sweeney, Pro Se ("Objector")

believes he is a member of the class as defined in that certain Legal Notice of Class

Action Settlement dated June 21, 2018 (the "Notice"). Objector's address and

telephone number are listed at the conclusion of this objection.

## II. NOTICE OF INTENT TO NOT APPEAR

Objector hereby gives notice that he does NOT intend to appear at the

Fairness Hearing at the Federal Courthouse located at the U.S. District Court for

the Northern District of California on October 25, 2018 at 10:30 a.m.

## III.   OBJECTOR IS A CLASS MEMBER

After reviewing the Notice, the Objector states that he is a class member with

standing to object to the Court's Order for Preliminary Approval of the Settlement

by virtue of his purchasing one or more items from the list of covered products.

Objector has submitted a timely claim. His Claim Number is **26515632.**

## IV. REASONS FOR OBJECTING TO THE PROPOSED SETTLEMENT

### A.       The Requested Attorney Fees are Excessive.

Plaintiff Class Counsel requests that the Court award a total of $625,000.00

dollars in attorney fees and $102,172 in costs. The Settlement Fund is valued at

$2.5 million dollars.  Class Counsel explains its request is 25% of the settlement

fund and accordingly in line with the 9th Circuits benchmark.

The percentage of the fund cases are often look at similar to other contingent fee

cases and a percent of what the plaintiff is to receive is long held to be appropriate.

A closer look, however, reveals that class action percentage fees are very different. In this case the $625,000 is **_NOT_** 25% of what the plaintiff is to receive. First, the settlement administrator is to be paid from the common settlement fund. Their fees are to be capped at $522,000 (plus postage). Then class counsel is asking to be reimbursed for its litigation costs in the amount $102,172. This leaves $1,876,828. A contingent fee representing 25% of the amount received by the cash portion available to Class Members is $469207 dollars. Class Counsel has worked hard and achieved a good settlement for the Class. However the 9th Circuit's benchmark is 25% and therefore Class Counsel should be awarded $469,207 in attorney's fees and $102,172 dollars in litigation costs.

## B. Adoption of Other Objections.

The Objector hereby adopts and joins in all other objections which are based on sufficient precedent and theories of equity and law in this case and hereby incorporates said objections by reference as if they were fully described herein.

## <u>CONCLUSION</u>

**WHEREFORE**, This Objector, for the foregoing reasons, respectfully requests that the Court, upon proper hearing:

1. Sustain these Objections;

2.  Enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement; and

3.  Award an incentive fee to this Objector for his role in improving the Settlement, if applicable.

Date: September 13, 2018                    Respectfully submitted,

Patrick S. Sweeney, Pro Se
2672 Mutchler Road
Madison, WI 53711
(424)-488-4383
patrickshanesweeney@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2018, I caused to be filed the foregoing with the Clerk of the Court of the United States District Court for Northern District of California by sending this document via First Class U.S Mail. In addition, when the Clerk files this document in the docket for this case all parties in this case who use the CM/ECF filing system will be noticed. In addition, the undersigned has sent a copy via email to the counsel as listed in the Notice.

Patrick S. Sweeney, Pro Se

# EXHIBIT D

**EXHIBIT D – INTERNET ADVERTISEMENT EXAMPLES**

  







